MOSES E. CUSHMAN *vs.* AVERY R. CUSHMAN.

Hampshire.     September 17, 1901. — October 18, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, & BARKER, JJ.

*Negligence,* Employer's liability: Assumption of risk, Dangerous machinery.

In an action at common law by a workman in a factory against his employer for personal injuries, it appeared, that the plaintiff, a man of great experience and long service in the factory, was injured while attempting in a dim light to remove a belt from a rapidly revolving shaft. There was a safe way of removing the belt which he knew. He was using another way, when the belt caught in a space between the collar and a fixed pulley, and the plaintiff was carried up to the shafting and injured. *Held,* that if the way of removing the belt adopted by the plaintiff was dangerous, the risk was an obvious one which he must have known and chose to incur, and that he could not recover.

In an action at common law by a workman in a factory against his employer for personal injuries, it appeared, that the plaintiff was injured while attempting to remove a belt from a revolving shaft. The plaintiff offered to show, that he told the defendant, that there ought to be a shipper on the belt, to ship it over the loose pulley and to hold it there, and also to show, that the belt would not stay on the loose pulley because there was no shipper to drop into a notch to hold it. The evidence was excluded. *Held*, that the exclusion of the evidence was right, as there was no evidence that the machine ever had a shipper, and the defendant was not bound to change the condition of the machine in this respect.

TORT, at common law, for personal injuries sustained by the plaintiff while in the employ of the defendant. Writ dated August 10, 1900.

The declaration was as follows: " And the plaintiff says that he was in the employ of the defendant as his servant, and that it was the duty of the defendant to furnish him with safe and suitable tools, machinery and appliances for his work, while so in his employ; but the defendant carelessly and negligently failed so to do, but did furnish him with unsafe, defective, and dangerous tools and machinery, whereby, and while himself in the exercise of due care, the plaintiff was hurt and injured." Subsequently the plaintiff was allowed to file an amended count alleging ignorance of the danger, and want of proper instructions.

At the trial in the Superior Court, before *Pierce*, J., at the close of the plaintiff's evidence, the judge ruled that the action could not be maintained, and directed a verdict for the defendant. To this ruling and to rulings excluding certain evidence, the plaintiff alleged exceptions. The case is stated in the opinion.

*W. G. Bassett*, (*E. L. Shaw* with him,) for the plaintiff.

*W. H. Brooks*, (*W. Hamilton* with him,) for the defendant.

LATHROP, J. The machine on which the plaintiff had been working shortly before the accident was known as a trimmer. It had a loose and a fixed pulley, and a belt which communicated power from shafting about eight feet above the floor. On this shafting was a fixed pulley. About four months before the accident the shafting had been lengthened to the left as one faced the machine, and where the old and new shafting came together there was a collar consisting of two pieces of metal fastened together by set screws. The plaintiff testified that he

was there when the change was made, and knew that there was a coupling and a pulley there. It was customary, at the close of work for the day, to take the belt off the shafting; and it was while the plaintiff was engaged in this work, that the belt, which was a little wider than the space between the collar and the fixed pulley above, was caught in this space, and the plaintiff, who was standing on the floor, in some way got his hand caught, and he was carried up to the shafting and his hand and arm were injured.

The plaintiff was a man about sixty-seven years of age. He was not a machinist by trade, but had worked in the mill for forty years, substantially on the same kind of work, — making leather board, and button board since that came in about twelve years before. During these twelve years he had been a finisher of button board, and this work required the use of calender rolls and the trimming machine. For twelve or thirteen years he was foreman of the shop, but for some years before the accident he had not been foreman, owing to the fact that during this time the defendant's son was acting in that capacity.

It would be difficult to find a case where a man had had more experience than the plaintiff. He had worked for the defendant's father for ten years before the son succeeded him. He had worked for the son thirty years. So far as the running of machinery was concerned, he undoubtedly knew as much as any one, and had no need of any instructions. *Stuart* v. *West End Street Railway*, 163 Mass. 391, and cases cited. *Ruchinsky* v. *French*, 168 Mass. 68. *Wilson* v. *Massachusetts Cotton Mills*, 169 Mass. 67, 71. *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313. We may dismiss, therefore, the idea that the plaintiff has any ground of recovery based upon the need of instructions.

There is nothing in the case to show any defect in the machine or in the belt. The only point on which the plaintiff relies is that the space between the collar and the fixed pulley was not large enough to admit the belt without danger of its being caught; but he does not rely on this, in the brief of his learned counsel, as a distinct proposition, but only as coupled with the proposition that he should have been warned of the danger. As the question is however presented by the original declaration, we proceed to consider it.

It appears from the plaintiff's testimony, that before the shafting was lengthened, his practice was to get the belt off the fixed pulley on the shafting to the left; that, although there was plenty of room to the right, he continued this practice after the shaft was lengthened; and that, although he used the machine but a few times after the shaft was lengthened, yet he knew all that there was to know about it. He testified as follows: "We never had any trouble with the belt until the day I was hurt. There never was a time before when this belt got bound between the tight pulley and the machine when I had trouble in getting it out." It further appeared that back of the machine was what was called the apron, and that a person standing on the apron could lift the belt, which was slack, from the space between the fixed pulley and the collar, over the collar and on the shaft beyond; and that the reverse of this was always done when the plaintiff sought to put the belt on to the fixed pulley. It also appeared that the shafting was in front of a window, and but four or five feet above the machine. The whole thing was therefore in plain view, and the plaintiff had as much opportunity as any one to see what was there, and to judge whether the thing which he had to do could be done in safety in the way he chose to do it. There was nothing hidden or concealed from his sight, and nothing which he did not know all about. Being a man of experience and intelligence, he was allowed to do his work in his own way. While there was a safe way of removing the belt, he chose another. If this way was dangerous, the danger was an obvious one, about which he must have known as well as any one in the shop. The accident appears to have been caused solely by carelessness on his part in attempting to remove the belt, in a dim light, from a rapidly revolving shaft. *Russell* v. *Tillotson*, 140 Mass. 201.

Two exceptions were taken to the exclusion of certain evidence offered by the plaintiff, and we proceed to consider them. The plaintiff offered to show that he told the defendant that there ought to be a shipper on the belt, to ship it over to the loose pulley and to hold it there. There was no offer to show when this was said, and the evidence might have been excluded on this ground. The objection to it is however a broader one. There was no evidence that the machine ever had a shipper,

and the defendant was not bound to change the condition of the machine in this respect.

The plaintiff also offered to show that the belt would not stay on the loose pulley because there was no shipper to drop into a notch to hold it. This is disposed of by what we have already said.

*Exceptions overruled.*

# INDEX.

## ABATEMENT.

Action against attorney for conspiring to prevent certain money of his client from being taken on execution does not survive, see ACTION, SURVIVAL.

## ACTION.

Where new right is created by statute, remedy provided must be pursued, see STATUTE.

## ACTION, SURVIVAL.

If an action lies against an attorney at law for conspiring with a client under examination as a poor debtor to prevent, by false testimony of the client, certain money of the client from being taken on execution, such an action does not survive under Pub. Sts. c. 165, § 1, the injury not being "damage done to real or personal estate" within the meaning of that statute. *Jenks* v. *Hoag*, 583.

## AGENCY.

### *Mutual Rights and Liabilities.*

1. A business man employed to perform services, usually performed by a lawyer, in obtaining compensation for property taken by a city under the right of eminent domain, and who at the time he is employed says that he shall charge five per cent upon the amount of money received, is not employed as a broker, and the stipulation fixing his compensation at five per cent, if successful, leaves the compensation to be received by him, if unsuccessful, to be determined by the value of the services rendered. *Miller* v. *Haskell*, 312.

2. A real estate broker can recover a commission for services in effecting an exchange of lands, if he can show that he was the effective means of bringing about the exchange, although the transaction was completed through another broker and the bargain was modified in unessential terms. *Hall* v. *Grace*, 400.

3. Where the owner of real estate employs a broker to bring him an offer for the purchase of it without naming a price, there can be no implied

*Agency (continued).*

agreement that the broker is entitled to a reasonable time in which to procure an acceptable offer, and the owner has a right to dismiss the broker at any time. *Cadigan v. Crabtree*, 474.

4. A real estate broker who has not been successful in procuring a customer for his principal is never entitled to recover on a *quantum meruit* for work done. If his work was in fact the efficient and predominating cause of a sale concluded by another, or if the principal is unable or refuses to sell to a customer furnished by the broker in accordance with the terms of the offer, the broker is entitled to his commission; otherwise, to nothing at all. *Ibid.*

5. In an action by a real estate broker to recover a commission, it appeared, that the plaintiff was employed by the defendant, to procure a lessee for a certain hotel, and knowing the terms then acceptable to the defendant the plaintiff conducted negotiations with G. and P. on the matter, satisfying himself that they were willing to comply with the defendant's terms but getting no offer from them. The defendant then changed his mind and said he had decided not to let the hotel. Thereupon the plaintiff told the defendant that G. and P. were ready to take the hotel on the terms hitherto asked. Later the defendant dismissed the plaintiff and employed another broker who let the hotel to G. and P. substantially on the terms previously named. The jury were instructed, that if at the time the defendant changed his mind the plaintiff had gone so far in his negotiations with G. and P. that they had agreed to take a lease of the hotel on the terms named, and the defendant on being told of this had declined to let the hotel and afterwards had made substantially the same trade with G. and P. through another broker, the plaintiff could recover his commission. *Held*, that, if there had been any evidence to go to the jury that G. and P. had agreed to take a lease of the hotel on the terms named, there would have been no error in these instructions, but, there being no such evidence, an exception to the instructions was sustained. On the evidence, all that the jury would have been warranted in finding was that G. and P. were believed by the plaintiff to be ready to take the hotel on the terms named but that they never made an offer to that effect. *Whether* the plaintiff under different instructions could have recovered a commission without proving that G. and P. made an offer to take the hotel on the terms named, the court did not decide. *Ibid.*

Liability of treasurer of corporation for misappropriation of funds, see CORPORATION, 3.

### Scope of Authority.

6. An architect whose approval is a condition precedent to payments to be made under a building contract has no authority to waive an agreement by the owner as to the terms on which payment shall be made. *Leverone v. Arancio*, 439.

7. In an action against a steamboat company for injuries caused by a steamboat of the defendant coming into collision in a fog with a boat in which the plaintiff was fishing anchored close to the edge of the channel through a certain gut which was part of the steamer's regular course, there was

evidence of a conversation between the plaintiff and a wharfinger of the defendant who was on his way to strike a triangle on a point of land for the purpose of guiding the steamboat in the fog. A man in the boat with the plaintiff testified, that the plaintiff cried out to the wharfinger "Are we all right here?" and that the wharfinger said "Yes." The wharfinger testified, that the plaintiff cried out "Do you think they can see us?" and that he replied "that he thought they could, but they would n't expect anybody anchored right in the Gut." *Held*, that, whatever the conversation was, there was nothing in it which could bind the defendant, there being nothing to show that the wharfinger could give any authority to any one to anchor in the path of the approaching steamboat, or that the plaintiff had a right to rely on the wharfinger's opinion as to whether his boat could be seen. *Chesley* v. *Nantasket Beach Steamboat Co.* 469.

As to extent of auctioneer's agency for seller, see AUCTION, 1, 2.

Sufficiency of memorandum of contract to sell land signed by agent, see FRAUDS, STATUTE OF, 4.

Scope of authority of agent of foreign fire insurance company, see INSURANCE, 5.

Holder of fund advanced under building loan contract not agent of mortgagee, see ORDER.

### Ratification.

8. If an honest contract to build a schoolhouse, made by a town with a contractor who is also one of its building committee and by his vote created the majority which accepted his bid, is voidable on the ground that the agent contracted with himself, the facts, that the circumstances became fully known to the inhabitants and were discussed and voted upon at two special town meetings without any repudiation of the contract, are sufficient to warrant a finding that the town had ratified the act of the committee. *Sylvester* v. *Webb*, 236.

### ALTERATION OF INSTRUMENTS.

1. *Semble,* that under St. 1898, c. 533, § 124, where a loan of money is secured by a note and mortgage, a material alteration of the note without fraud may not cancel the debt or avoid the mortgage. *Jeffrey* v. *Rosenfeld,* 506.

2. *Semble,* that a bill in equity seeking relief on the ground that an alteration was made in a certain negotiable instrument should describe the alteration, in order that the court may see whether as matter of law it was a material alteration under St. 1898, c. 533, § 125. *Whether,* such defect could be taken advantage of on a general demurrer for want of equity, *quære. Ibid.*

3. Whether § 124 of the negotiable instruments act, St. 1898, c. 533, which is copied from § 64 of the English bills of exchange act, should be construed as the original section probably would be in England, that the effect of a material alteration by whomsoever made would be to avoid the note as to all parties except those consenting to it and subsequent in-

dorsers, or whether the rule in this Commonwealth as laid down in *Drum* v. *Drum*, 133 Mass. 566, would be applied, that a material alteration of a note by a stranger will not avoid it, *quære.*   *Jeffrey* v. *Rosenfeld*, 506.

Necessary allegations in bill for relief against altered instrument, see EQUITY JURISDICTION, 2; ALTERATION OF INSTRUMENTS, 2.

## APPEAL.
### See PRACTICE, CIVIL, 1, 2.

## ARBITRATION.
### *Submission.*

1. The decision in *Miles* v. *Schmidt*, 168 Mass. 339, that an agreement to submit all disputes to a tribunal constituted by the parties themselves is void, has no application to an agreement of submission to arbitration under Pub. Sts. c. 188.   On the contrary, submissions under the statute are favored by the court.   *Giles* v. *Royal Ins. Co.* 261.

2. One having claims against various insurance companies arising from the destruction by fire of a building and its contents may make a valid agreement with all the companies for submission to arbitration under Pub. Sts. c. 188, providing for an award adjusting all the rights of the parties. *Ibid.*

3. A submission to arbitration under Pub. Sts. c. 188 provided, that the award of the arbitrators when filed in the Superior Court should be final, that no appeal therefrom should be taken and that the benefit of any appeal from or revision of the award was expressly waived by the parties. There also was a provision, that the person to whom the award was made might take out execution thereon or might at his election procure a decree in equity for the immediate payment of the sum so awarded.   *Semble*, that, if there was any objection to the parties waiving a portion of their rights, their attempting to do so did not make the submission invalid. Moreover, that the provision in regard to waiving an appeal could not be construed to exclude an appeal to the court in case of dishonest dealing or to prevent the arbitrators from presenting a question of law to the court, and that the provision for a decree in equity was at most simply invalid. *Ibid.*

### *Award.*

4. A single award upon two submissions under Pub. Sts. c. 188 is bad. *Giles* v. *Royal Ins. Co.* 261.

5. In case of a submission to arbitration under Pub. Sts. c. 188, including claims of one plaintiff against several insurance companies who are parties to the submission, the award should state definitely the requirements imposed upon the various companies, so that a separate judgment for a sum of money may be entered against each defendant found answerable to the plaintiff.   *Ibid.*

Appeal from order or judgment on award must be founded on matter of law apparent upon record, see PRACTICE, CIVIL, 1.

## ARCHITECT.

Architect has no authority to waive provisions of building contract, see
AGENCY, 6 ; CONTRACT, 13.

Extra work ordered by owner recovered for without architect's certificate,
see CONTRACT, 14.

## ASSIGNMENT.

### *For Benefit of Creditors.*

1. In this Commonwealth the time named in a common law assignment for
the benefit of creditors within which creditors may sign is regarded as of
the essence of the contract, and the creditors who sign within that time
acquire thereby the right to have the property distributed among them.
*National Bank of Commerce* v. *Bailey*, 415.

2. An assignment for the benefit of creditors contained a provision, that no
creditor should be deemed a party to it or entitled to the benefit of its
provisions who failed to assent in writing to its terms within thirty days
from its date, provided, that one who was a creditor at the date of the
assignment might become a party after thirty days with the written con-
sent of the assignee.   The assignee by a writing indorsed on the assign-
ment extended the time within which creditors might become parties to a
period of four months from the date of the instrument.   One of the cred-
itors, knowing when the time of signing expired, neglected to sign until
after the expiration of the four months and on application to the assignee
was refused permission to sign.   In a suit in equity brought by this cred-
itor, to have the assignee ordered to give his written consent to the plain-
tiff's becoming a party to the assignment, a demurrer to the bill was
sustained, on the ground that the defendant was justified in refusing his
consent.   The fact, that the assignment contemplated a *pro rata* distribu-
tion among the creditors of the assignor and that the plaintiff was a
creditor, was not enough to entitle the plaintiff to relief.   The assignment
also contemplated that only those creditors who signed it within the re-
quired time should become parties to it, and the plaintiff had not become
a party in the manner provided.   *Ibid.*

Assignee for benefit of creditors may maintain action in his own name, see
CONTRACT, 19.

Wife may enforce as equitable assignee contract running originally to her
husband, see EQUITY JURISDICTION, 1.

Change of beneficiary of life insurance policy by assignment, see INSUR-
ANCE, 7.

Mechanic's lien assignable, see MECHANIC'S LIEN, 2.

Assignment, without novation, of contract by builder, not bar to establish-
ing lien, see MECHANIC'S LIEN, 6.

## ATTACHMENT.

### Bond to dissolve.

1. A bond to dissolve an attachment on land under Pub. Sts. c. 161, § 66, is not invalidated by a failure properly to describe the land, if the name of the action and the attachment are referred to, the description of the property necessarily appearing in the officer's return. *Berry* v. *Wasserman,* 537.

2. In a bond to dissolve an attachment, given in 1900, a reference to Pub. Sts. c. 171, § 23, and St. 1888, c. 405, in regard to special judgments in case of proceedings in insolvency, is not inapplicable, for when such bond is given it cannot be known that the bankruptcy act of 1898 will not be repealed before final judgment, and, in case of a repeal, these provisions might be important. *Ibid.*

3. A bond to dissolve an attachment of land of the principal obligor on a writ against a third person was given and accepted without first having an appraisal of the attached property under Pub. Sts. c. 161, § 126. The condition of the bond began as follows: "if the above bounden F. W. shall pay to the plaintiff in said action the amount, if any, that he may recover in the action of *B.* v. *R. W.*, within thirty days after the final judgment in said action; and after said B. shall establish his title to the land in a writ of entry against said F. W." *Held*, that by providing for the payment of the amount recovered in the final judgment "after said B. shall establish his title to the land in a writ of entry" and by executing the bond without an appraisal of the land the obligor waived the requirement for an ascertainment of the value of the land and substituted the amount of the final judgment for the appraisal, that the subsequent provisions of the bond, taken in connection with the statutes made it necessary to treat the words "within thirty days" in the condition of the bond as contradictory and immaterial, and that the bond would be binding for the payment of the judgment on the establishment by the plaintiff of his title to the land attached in a writ of entry, in accordance with the provisions of Pub. Sts. c. 181, § 128, that being a condition precedent to recovery on the bond. *Ibid.*

## AUCTION.

### Authority of Auctioneer.

1. Because an auctioneer is the agent of both seller and buyer for the purpose of signing a memorandum of a sale made by him, it does not follow that his agency for the one is coextensive in its nature and duration with that for the other. His agency for the buyer is usually conferred when the bid is accepted and begins with the fall of the hammer. Such an authority must be exercised contemporaneously with the sale. But the auctioneer's agency for the seller is generally more extensive and may cover a time both before and after the sale. When such authority exists and is not revoked, the auctioneer may bind the seller by a memorandum signed within a reasonable time. *White* v. *Dahlquist Manuf. Co.* 427.

2. At an auction sale of lots of real estate the terms of sale required a "deposit" of $100 upon each sale. In a suit in equity by a purchaser of two separate properties at the sale, to enforce the contract to convey the lots to him, it appeared, that the defendant had placed the two properties with the auctioneer for sale ; that immediately after the auction a memorandum of one of the plaintiff's purchases was given to him by the auctioneer, and the plaintiff gave to the auctioneer his check for $100, the defendant being present; that the auctioneer told the plaintiff that it would be time enough to bring the $100 for the other purchase the next day ; that the next day the plaintiff brought to the auctioneer his check for $100 upon his second purchase and received a memorandum of that purchase signed by the auctioneer ; and that the auctioneer cashed both checks and obtained the money. *Held*, that a check so given and accepted fairly might be said to be a deposit within the general understanding of the word as used at sales by auction. *Held*, *also*, that the signing of the memorandum by the auctioneer on the day after the sale was good for the purpose of satisfying the statute of frauds, his agency for the seller still existing. *White* v. *Dahlquist Manuf. Co.* 427.

### Deposit.

As to what is sufficient deposit, see *supra*, 2.

### AUDITOR.

1. Auditors' reports are made *prima facie* evidence by Pub. Sts. c. 159, § 51, and are therefore always admissible upon matters embraced in the order of appointment. *Moore* v. *Dugan*, 153.
2. The objection that certain evidence contained in an auditor's report was inadmissible is no ground for excluding the report or for striking out those portions of it on a motion made at the trial. *Leverone* v. *Arancio*, 439.

Presumption as to auditor's report after oral evidence, see EVIDENCE, 2.

### BAILMENT.

The owner of a horse, who has bailed him to another to use for a certain period in return for his board and keeping, cannot refuse to receive back the horse at the termination of the period on the ground that the bailee has injured the horse by want of proper food and care and by over use. *Keith* v. *De Bussigney*, 255.

Failure by bailee of horse to properly use and feed him does not constitute conversion, see CONVERSION, 1.

Leaving bond with broker, who in owner's presence places it in envelope and seals it, a bailment, see CONVERSION, 3.

Bailee can recover only loss or expense necessarily incurred in terminating bailment, see DAMAGES, 6.

## BANKRUPTCY.

### *Levies and Liens.*

1. The effect of section 67f of the United States bankruptcy act of 1898 is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, so that the property may pass to and be distributed by him among the creditors of the bankrupt. *Frazee* v. *Nelson*, 456.

### *Unrecorded Bill of Sale.*

2. St. 1883, c. 73, provides that an unrecorded mortgage of personal property "shall not be valid against any person other than the parties thereto." By the United States bankruptcy act of 1898 the title to all property which the bankrupt before the filing of the petition " could by any means have transferred or which might have been levied upon and sold under judicial process against him" is vested in the trustee in bankruptcy. Under these statutes the holder of an unrecorded bill of sale from a bankrupt given as security for a loan and purporting to convey machinery which remained in the bankrupt's factory has no title as against the trustee in bankruptcy. *Haskell* v. *Merrill*, 120.

What constitutes fraudulent concealment, question of fact for jury, see FRAUD, 1, 2.

No presumption that note is intended as payment in case of insolvency of maker before negotiation, see PAYMENT.

Pledge or mortgage of chattels by unrecorded bill of sale without delivery, see PLEDGE.

## BILLS AND NOTES.

That material alteration of note secured by mortgage may not cancel debt or avoid mortgage, see ALTERATION OF INSTRUMENTS, 1.

As to construction of § 124 of negotiable instruments act, St. 1898, c. 533, relating to material alterations, see ALTERATION OF INSTRUMENTS, 3.

Presumption that note is given as payment may be rebutted, see PAYMENT.

Right of stoppage *in transitu* not lost by accepting purchaser's note, see SALE, 3.

## BOARD OF HEALTH.

1. St. 1897, c. 510, does not give the State board of health exclusive jurisdiction of nuisances affecting the purity of the sources of water supply. There is nothing in that statute which takes away or limits the power of local boards of health to deal with nuisances in their respective jurisdictions. *Stone* v. *Heath*, 385.

2. Under Pub. Sts. c. 80, § 20, giving town boards of health the power to examine into, destroy, remove or prevent "all nuisances, sources of filth, and causes of sickness" within the town, those boards have jurisdiction over nuisances affecting the purity of the water supply as well as other causes of sickness. *Ibid.*

3. The jurisdiction over nuisances given to town boards of health by Pub. Sts. c. 80, §§ 20–27, is summary in its nature, and the orders made thereunder are not subject to judicial examination and revision at the instance of parties affected by them before they are carried out. After they are carried out, however, the questions whether there was a nuisance, and, if so, whether it was caused or maintained by the parties charged therewith, may be litigated. *Stone* v. *Heath*, 385.

4. Where a town board of health adjudged certain deposits on land of the plaintiff to be a nuisance, and the plaintiff's land and deposits thereon of the character complained of lay partly in the town to which the board belonged and partly in an adjoining town, it was *held*, that the order of the board must be taken as limited in its scope to the town to which the board belonged, and an objection that it was in excess of their jurisdiction was not well founded. *Ibid.*

5. When a town board of health has adjudged that a nuisance exists, the question what influences or motives may have set the board in motion is immaterial. *Ibid.*

6. It furnishes no ground for interference with a town board of health, who have adjudged certain deposits on land of the plaintiff to be a nuisance as creating danger of pollution to the water supply of the town, that the action of the board was taken with a view to affecting proceedings in a suit pending in the Superior Court between the plaintiff and the company supplying the town with water. *Ibid.*

No jurisdiction of Superior Court to restrain town board of health abating nuisance, see SUPERIOR COURT.

BOND.

As to what is sufficient designation of land in bond to dissolve attachment, see ATTACHMENT, 1.

Reference to suspended insolvency laws in bond to dissolve attachment, see ATTACHMENT, 2.

Construction of bond to dissolve attachment on real estate, see ATTACHMENT, 3.

Effect of judgment in action on bond on petition to vacate judgment, see JUDGMENT, 1.

Holder of mechanic's lien taking bond to dissolve not estopped to contest validity of bond or interest of party giving it, see MECHANIC'S LIEN, 11, 12.

Surety on replevin bond can show that defendant in replevin was mere bailee, see REPLEVIN, 1, 2.

BOSTON.

Plan of, to buy certain land evasion of statute limiting indebtedness, see MUNICIPAL CORPORATIONS, 1.

Held liable for flooding plaintiff's cellar constructed in violation of law, see NEGLIGENCE, 3.

## BOSTON AND MAINE RAILROAD.

Construction of St. 1900, c. 426, authorizing lease of Fitchburg Railroad, see CORPORATION, 4, 5.

## BROKER.

Business man employed to effect settlement for land taken not employed as broker, see AGENCY, 1.

When real estate broker entitled to commission, see AGENCY, 2, 5.

No implied agreement that real estate broker is entitled to reasonable time to get acceptance of principal's offer to sell, see AGENCY, 3.

Real estate broker failing to procure customer cannot recover on *quantum meruit* for work done, see AGENCY, 4.

## CARRIER.

One maintaining a passenger elevator in an office building is not a common carrier of passengers within the meaning of Pub. Sts. c. 73, § 6, giving a remedy for the loss of life of a passenger by reason of the negligence of "common carriers of passengers." *Seaver* v. *Bradley*, 329.

Passenger in street car assumes risk of collision with drunken passenger being properly removed from car by conductor, see NEGLIGENCE, 8.

Railroad ticket may be more than symbol of contract between carrier and passenger, see RAILROAD, 1.

Right of railroad company to refuse ticket not in condition required by rules, see RAILROAD, 2, 3.

## CHARITABLE TRUST.

Construction of devise as gift to charity, see TRUST, 2.

## CHILD.

Statutory legitimation of child by simple fiat, see LEGITIMACY.

## CIVIL SERVICE ACT.

St. 1896, c. 517, § 5, forbidding the removal or suspension except after hearing of any "veteran holding an office or employment in the public service of any city or town," does not apply to a veteran, certified by the civil service commissioners for employment as a plumber, who is employed by the chief of the repair division of the public buildings department of a city to do plumbing by the job from time to time when plumbing work is needed. *Clark* v. *Boston*, 409.

## COLLATERAL INHERITANCE TAX.
See TAX, 13–17.

## CONDITION.

Certain requirements in building contract held to be conditions preceden to right of contractor to sue, see CONTRACT, 12.

What constitutes violation of restriction on land; waiver of right to enforce, see EASEMENT, 3, 4.

## CONFLICT OF LAWS.

1. A statute of Virginia legalizing the marriages of colored persons living together as husband and wife on February 27, 1866, provided, that, where the parties had ceased to cohabit before that date, all the children of the woman recognized by the man to be his should be deemed legitimate. Before the date named in the statute a man slave left his slave wife in Virginia and acquired a domicil in Massachusetts. Later he visited Virginia and there recognized as his a child of his slave marriage domiciled there. The father died intestate, domiciled in Massachusetts and leaving property here. *Whether* the Virginia child was entitled to the distributive share of a legitimate child in Massachusetts, or whether in order that the statute should have such exterritorial effect both parties must have been domiciled in Virginia when the act of recognition was performed, even if the domicil of the child and the bodily presence of the father would be sufficient to make the statute operative in Virginia, *quære.* *Irving* v. *Ford*, 216.

2. The defendant agreed to convey to the plaintiff for the price of $6,000 certain land and buildings in Massachusetts, and the contents of the buildings. The contract was made in New York and the deed was to be delivered and the money paid at the office of the defendant's agent there. The defendant was unable to give a good title, but made the contract in good faith being unaware of the defect. By the law of New York the plaintiff could recover in such a case only nominal damages and expenses, while in Massachusetts he could recover his loss of profit. *Held,* that the measure of damages was to be determined by the law of New York where the contract was made and to be performed, and that there was nothing in our procedure or mode of administering remedies to make these damages more or less. *Atwood* v. *Walker*, 514.

Marriage in this Commonwealth of fugitive slave lawful while he remained here, see MARRIAGE, 1.

## CONSTITUTIONAL LAW.

### *Personal Liberty.*

1. Assuming, that the constitutional provisions securing personal liberty apply to proceedings for the protection of persons alleged to be insane, and that a law authorizing the appointment of a permanent guardian of an insane person without notice would be void, — St. 1900, c. 345, providing for the appointment of temporary guardians of insane persons without notice is constitutional. Such an appointment is founded on necessity and is limited to the time necessary to determine whether a permanent guardian should be appointed. *Bumpus* v. *French*, 131.

Constitutional Law (*continued*).

### Eminent Domain.

Whether water rights can be taken by eminent domain without a writing, see ESTOPPEL, 4.

### Police Power.

2. St. 1889, c. 454, and St. 1894, c. 309, giving damages for sheep killed or injured by dogs, are constitutional. *Johnson* v. *Griswold*, 580.

### Class Legislation.

3. The clause of St. 1888, c. 390, § 57, giving mortgagees of record the right to redeem from a tax sale within two years after actual notice of the sale, is not unconstitutional as class legislation. *Barry* v. *Lancy*, 112.

### Due Process of Law.

4. The statutes of this Commonwealth relating to the assessment of taxes are not unconstitutional because they do not give the party assessed an opportunity to be heard. He has a full opportunity to be heard before the assessing board, if he desires it, before the demand becomes conclusive against him, and that is enough. *Harrington* v. *Glidden*, 486.

### School Expenditures.

5. Article 18 of the Amendments to the Constitution is as follows: " All moneys raised by taxation in the towns and cities for the support of public schools, and all moneys which may be appropriated by the State for the support of common schools, shall be applied to, and expended in, no other schools than those which are conducted according to law, under the order and superintendence of the authorities of the town or city in which the money is to be expended; and such moneys shall never be appropriated to any religious sect for the maintenance, exclusively, of its own school." St. 1898, c. 496, § 3, provides that " Any town of less than five hundred families or householders in which a public high school or a school of corresponding grade is not maintained shall pay for the tuition of any child who resides in said town and who attends the high school of another town or city, provided the approval of such attendance by the school committee of the town in which the child resides is first obtained. If any town in which a public high school or a school of corresponding grade is not maintained neglects or refuses to pay for tuition as provided in this section such town shall be liable therefor to the parent or guardian of the child furnished with such tuition, if the parent or guardian has paid for the same, and otherwise to the town or city furnishing the same, in an action of contract." There is a further provision making the town liable if the school committee refuses its approval of such attendance in a case covered by the statute. *Held*, that the statute is constitutional. The words of the amendment requiring expenditures to be confined to schools " which are conducted according to law, under the order and superintendence of the authorities of the town or city in which the money is to be expended " as applied to this statute mean the town or city in which the school is where the tuition is given and where payment for it is to be made. *Fiske* v. *Huntington*, 571.

Rule of construction for statutes of limitation, see LIMITATIONS, STATUTE OF, 1.

## CONTRACT.

### *What constitutes.*

1. The plaintiff, a dealer in nursery stock, wrote to the defendant in England, who had previously filled orders for him, stating that he should want certain rhododendrons and other plants for the coming season, enumerating the sizes of the plants and the number of each size wanted, adding "Kindly inform us by return mail the cost of these plants and we will cable as to filling order." The defendant answered giving the prices of the plants wanted, except of one size of rhododendrons which he could not supply. In this letter the defendant suggested a cable code by which, if the plaintiff should cable the words "Light," "Medium" and "Extra," he would be understood to order respectively three of the sizes of rhododendrons at the prices named in the letter. In reply the plaintiff cabled "Ship as ordered." The defendant made no reply and shipped no goods. The plaintiff procured rhododendrons in this country at higher prices than those named by the defendant, and sued the defendant for failure to ship the rhododendrons named in the defendant's letter. *Held*, that there was no contract, that the message was not equivalent to an order to the defendant to ship such of the rhododendrons mentioned in the plaintiff's letter as the defendant had stated prices for, and there had been no order to which the message "Ship as ordered" might refer, and it naturally might refer to an order by mail on its way or to be sent. *Shady Hill Nursery Co.* v. *Waterer*, 318.

For case of indivisible offer to sell and acceptance thereof, see SALE, 2.

### *Parties.*

2. A binding subscription to pay such sums as a committee appointed by a certain association may require is a contract made with such a committee subsequently appointed. *Martin* v. *Meles*, 114.

Agreement not to sell proprietary medicine below certain price enforceable only against parties to agreement, see EQUITY JURISDICTION, 3.

### *Consideration.*

3. Comment by HOLMES, C. J., on the fact that the repudiation of the notion, that the subscription of others than the plaintiff might be a consideration for the subscription of the defendant, seems not to have been extended to agreements of creditors to accept a composition. *Martin* v. *Meles*, 114.

4. The defendants, being leather manufacturers, signed the following agreement which also was signed by nine other leather manufacturers : "We, the undersigned, manufacturers of leather, promise to contribute the sum of $500 each, and such additional sums as a committee appointed by the Massachusetts Morocco Manufacturers Association may require ; in no case shall the committee demand from any manufacturer or firm a total of subscriptions to exceed the sum of $2,000, such sum to be employed for legal and other expenses under the direction of the committee in defending

Contract (*continued*).

and protecting our interests against any demands or suits growing out of Letters Patent for Chrome Tanning, and in case of suit against any of us the committee shall take charge thereof and apply as much of the fund as may be needed to the expense of the same." The plaintiffs were the committee referred to in the agreement and subscribers to it. They did some work before the agreement and after its execution did more, undertook the defence of suits and levied assessments, which were paid, the defendants paying $750. Thereafter the defendants' firm was dissolved and went out of business, and the defendants notified the plaintiffs thereof. Later upon a demand for the rest of their subscription the defendants refused to pay it. *Held*, that the committee by signing the agreement promised not only to accept the subscribers' money but to perform the duties named, and that either this promise or the subsequent work of the committee invited by the agreement was a good consideration for the defendants' subscription, the court inclining to the view, that the plaintiffs' promise alone was the consideration, but declaring that, if the acts and not the promise constituted the consideration, the defendants' promise became binding upon the first substantial act done by the committee, and, that the defendants' promise was entire and not a series of promises to pay successive sums upon successive steps by the committee. *Held, also*, on the question of damages, that the defendants did not notify the plaintiffs to stop performance until the defendants' liability had been fixed by a demand under the contract, and, even if such a notice had been given in advance, the plaintiffs would have had the right to go on with this contract where there was a common interest in the performance and where the part done and that which remained to be done appeared to be largely interdependent. *Martin* v. *Meles*, 114.

Sufficiency of consideration of agreement to return pledged stock, see EQUITY JURISDICTION, 6.

### *Validity.*

5. If one signs a lawful contract in the absence of fraud, duress or imposition he is bound, whatever his voluntary ignorance or involuntary misinterpretation of its words. *Clark* v. *Boston*, 409.

6. A contract for the building of a schoolhouse, made by a town with a contractor, who is also one of the building committee of the town and by his vote created the majority which accepted his bid, if free from fraud and corruption, is not void as against public policy. *Sylvester* v. *Webb*, 236.

That such contract if voidable may be ratified, see AGENCY, 8.

Validity of agreement of submission to arbitration under statute, see ARBITRATION, 1–3.

Contract invalid as made in pursuance of ordinance violating city charter, see MUNICIPAL CORPORATIONS, 4.

Agreement by city of Boston to purchase certain land invalid as an evasion of statute limiting indebtedness, see MUNICIPAL CORPORATIONS, 1.

Sale of liquor to one known to be proprietor of bar room in prohibition State not necessarily invalid, see SALE, 1.

*Construction.*

Of agreement to convey land.

7. In an agreement to convey " a good title " to certain land "free and clear
from all mortgage encumbrances, taxes and mechanics liens " the word
" taxes " includes a sewer assessment. *Williams* v. *Monk*, 22.

Of agreement for building loan.

8. A mortgage note read as follows : " For Value Received, I promise to
pay to A. B. or order, $30,500, in three months from this date, with inter-
est to be paid monthly at the rate of one and one-half per centum per
month, during the said term, and until the said sum is paid in full." The
note was secured by a mortgage on land on which the promisor was about
to erect a block of buildings, and the consideration for the note was a
written agreement for a building loan whereby the mortgagee agreed to
advance to the mortgagor the sum of $30,500 in specified instalments from
time to time *as the work on the buildings progressed. The agreement*
provided that the mortgagee should not in any case be liable to make any
of the stipulated payments after foreclosure of the mortgage. The note,
mortgage and agreement were all delivered as one transaction about a
month after the date of the note. Thereafter advances were made from
time to time in accordance with the agreement until the mortgagor made
default and the mortgage was foreclosed. *Held*, that the legal effect of
the contract was that the mortgagee should have interest upon the full
amount of the principal of the note from the date of the note and so long
as he was under a legal obligation to furnish the money, whether it was
set apart or not, and that this obligation ceased only upon the foreclosure
of the mortgage. *Bangs* v. *Fallon*, 77.

Of agreement to pay for sign.

9. A letter, in which a retail liquor dealer asked a brewing company to
erect on the building occupied by him a sign stating it to be the head-
quarters for the sale of the brewing company's beer, contained the follow-
ing : " It is, of course, understood that I draw no other domestic lager beer
than that brewed by the Rochester Brewing Co. during the period of my
present license. I also understand that this sign, as well as all other signs
placed on or in the building occupied by me, advertising Rochester beer,
remain the property of your company and can be removed by you or them
at any time which you may elect. Should you find it necessary at any time,
by reason of my not drawing your beer, to remove the special board sign
in question, and should objections of any kind be raised by the owners of
the building to having said sign torn down, I hereby agree to reimburse
you or your company to the amount of the cost of the labor and lumber
required in the building of such a sign, and hereby grant you the privilege
to obliterate the sign matter by repainting." A postscript added " In
reference to my reimbursing your company for the labor and lumber used
in the within mentioned sign, I mean to convey the idea that *only* in case
I should use the board for new sign or advertising purposes, that you
are then to be reimbursed to the extent of its cost as above stated." The

Contract (*continued*).

sign having been erected, the dealer, after the expiration of his license for that year, ceased to sell Rochester beer and used the signboard to advertise the beer of another company. *Held*, that the dealer's promise to reimburse the brewing company for the cost of the sign was not contingent on his ceasing to sell their beer within the period of his then existing license, and that the labor mentioned was not limited to the labor of carpenters. *Held, also*, that in an action against the dealer on his promise, evidence offered by him, to show that the sign was of benefit to the brewing company and not to him, and that the cost of the sign had been charged off by the company on its account books, rightly was excluded as immaterial. *Rochester Brewing Co.* v. *Killian*, 158.

Of option of corporation to take its stock at appraised value.

10. The following provision, omitting unessential words, was printed on the back of all the certificates of stock of a certain company : " Should the person to whom this certificate is issued desire to sell any of his shares of stock, he shall cause such shares to be appraised by the directors of this company, which it shall be their duty to do on request, and shall thereupon offer the same to them for the use of the company at such appraised value ; and if said directors shall choose to take such shares for the use of the company, such person shall, upon the payment or tender to him of such appraised value thereof, and the dividends due thereon, transfer and assign such share or shares to said company; provided that the said directors shall not be obliged to take such shares at the appraised value aforesaid, unless they shall think it for the interests of the company ; and if they shall not, within fifteen days after such shares are offered to them in writing, take the same and pay such person therefor the price at which the same shall have been appraised, such person shall be at liberty to sell and dispose of the same shares to any person whomsoever." One of the original stockholders requested the directors of the company to appraise his shares under the foregoing provision. They refused to do so, whereupon the stockholder sold his shares at auction and sued the company on its alleged contract to have the shares appraised on such request, alleging that by reason of the refusal of the directors to appraise his shares they had sold for much less than their true value. *Held*, on demurrer, that the defendant had not made the agreement alleged, but that the plaintiff had agreed to cause his shares to be appraised by the directors, and, what the declaration alleged had not been done, was the thing that the plaintiff agreed to cause to be done. *Held, also*, that the purpose of the appraisal was to fix the price to be paid for the stock, if the company should elect to take it, and that the stockholder had no right to an appraisal unless the stock was to be taken for the company. *Whiton* v. *Batchelder & Lincoln Corp.* 169.

Of agreement concerning execution of trust.

11. Six heirs at law and legatees of a certain testator, three of whom were the trustees under his will, made an agreement in writing containing the following : " The amount of income from said Estate which has never yet been paid to us, and which is still remaining in the hands of the Trustees

of said Estate undivided, appears on the books of account of said Estâte as 'undivided income account,' and is the property of us individually free and clear of any trust, in equal proportions, to wit one fifth part of said undivided income belonging to each one of us, and forms no part of said Trust Estate and shall not go to the last survivor of us, but shall be paid to each of us upon demand or to our Executors or Administrators; and if any share of said 'undivided income' as aforesaid or any other accrued income shall be paid after the decease of any one of us, it shall carry interest from the day of the death of that one of us, to be paid out of the said trust estate; the share of said G. being applied upon his promissory notes now held by said Trustees agreeably with the terms of an agreement signed by him, dated March 8th, 1872, and now in the hands of said Trustees." Also "that the whole income from said trust estate for the year 1874 and for each and every year subsequent thereto, shall each year be paid over by the said Trustees to the person or persons entitled to receive the same by the terms of said Will"; and "that the trust Estate which shall pass to the last survivor of us shall be, and shall be limited to the capital sum which said Trustees received in trust at the death of said D. H. with the natural increase thereof, but not any income derived therefrom up to the time when the last survivor shall become entitled to the whole of said estate by the terms of said will." In a suit in equity against the trustees, to enforce the trust arising from this agreement, the trustees set up the statute of limitations. *Held,* that the effect of the agreement was not to convert the relation between the plaintiff and the trustees into that of debtor and creditor, but to provide for the execution and carrying out of the trust in accordance with the terms thus established; that the defendants were to continue to hold the property in trust and to account for it as trustees; and consequently that the claim was not barred by the statute of limitations. *Pearson v. Treadwell,* 462.

Of building contract, see *post,* 12, 13, 15, 16.

Of agreement between pledgor of stock and pledgee relating to return of stock pledged, see EQUITY JURISDICTION, 6.

Of order drawn on trustee of certain fund, see ORDER.

Of agreement by Boston to purchase certain land, see MUNICIPAL CORPORATIONS, 1.

*Performance and Breach.*

Damages after notice by defendant of intended breach, see DAMAGES, 3.

Liability for consequential damages contemplated by both parties to contract, see DAMAGES, 4, 5.

*Rescission.*

That city having made agreement not to impose sewer assessment in consideration of conveyance of certain land for sewer, could not rescind agreement while still holding the land, see ESTOPPEL, 1.

Right to rescind contract on failure to deliver article ordered, see SALE, 5.

*Building Contracts.*

12. The specifications of a building contract contained the following provisions: "Before any final estimate shall be allowed by the architect in

Contract (*continued*).

charge, the contractor will be required to sign a certificate on said estimate that he will accept the same as a settlement in full for all claims against the owner on account of work done under this specification and contract. The contractor shall also sign and duly attest a statement, before final payment is made, that all claims for materials provided or labor performed on this property are paid and satisfied in full, and that there are no claims whatsoever against the owner of this property." *Held*, that the foregoing requirements were conditions precedent which the contractor must fulfil before he could sue on the contract. *Leverone* v. *Arancio*, 439.

13. A building contract provided, that ."the contractor under the direction and to the satisfaction of C., architect, acting for the purposes of this contract as agent of the said owner, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings." *Held*, that this did not go further than to make the architect the agent of the owner in the matter of deciding whether the work done fulfilled the requirements of the specifications and drawings, and did not give him authority to waive, in behalf of the owner, the terms on which the owner had stipulated that the payments were to be made when the work described had been done to the architect's satisfaction. *Ibid*.

14. A contractor, who has altered a house under a contract requiring the work to be performed to the satisfaction of the architect of the owner, and requiring a certificate of the architect's approval before payment, may recover for items of extra work specially ordered by the owner without the knowledge of the architect, although the architect has given no certificate of approval. *Ibid*.

15. The mason's specifications of a building contract contained the provision, " All needed permits must be obtained from the proper authorities." The construction of a bay window was included under the mason's specifications, and it appeared, that a permit for a bay window would be issued only upon a personal application by the owner of the property. It further appeared, that before the making of the contract the owner had applied twice for such a permit and had failed to obtain one, and that the permit was obtained by him six weeks after the contract was signed. The owner being sued on the contract sought to be allowed in recoupment for damages caused by the work being suspended for six weeks immediately after it was begun on account of the want of the bay window permit and also the amount of $22 expended by him in finally procuring such a permit. *Held*, that, if by the proper construction of the above provision of the specifications it was made the duty of the plaintiff to obtain the bay window permit, he had not undertaken, by agreeing to perform the work prescribed in the specifications, to insure that the permit would be issued without delay. *Held*, *also*, that the defendant was not entitled to be allowed the $22 paid by him, as the provision did not throw upon the plaintiff the duty of obtaining the bay window permit, which had to be obtained on the personal application of the owner. *Quære*, whether the requirement went any further than to provide that no work should be done until a permit had been obtained. *Ibid*.

16. In the performance of specifications for plumbing in a building contract

for altering and putting an additional story upon a four story house in Boston, each story being a separate tenement, the work disclosed the existence of an old kitchen sink waste pipe smaller than the three inch pipe required by law for buildings of the height which this one when altered would be, and which ran where new bay windows were to be constructed. The contractor, at the request of the owner and his architect, put in a new three inch waste pipe in a place not to interfere with the bay windows, and connected the sinks with it. Before this was done, there was a discussion between the parties as to whether the new pipe would be an extra, and the architect with the consent of the defendant gave the plaintiff a written order " to proceed at once and finish plumbing according to contract, and if there is any additional cost for three inch pipe and connections, the same will be allowed." In a suit by the contractor in which he was not allowed to recover on the contract on account of his non-performance of conditions precedent, it was *held*, that the plaintiff was entitled to recover for putting in the new waste pipe and connecting the kitchen sinks with it as extra work outside of the contract. *Held, also*, that the trial judge did not err in leaving to the jury the question whether this plumbing was covered by the contract, as it was not a question of the construction of a contract, but depended upon what plumbing was in the building before the alterations were made, a question of fact for the jury. *Held, also*, that this extra work was covered by the written order, and that extrinsic evidence was competent to identify the " three inch pipe and connections " mentioned in the order. *Leverone* v. *Arancio*, 439.

Architect no authority to waive provisions of building contract, see AGENCY, 6.
Recoupment of damages in action for conversion of articles of plumbing, see DAMAGES, 8.

### Implied Contract : Common Counts.

17. One cannot be held liable on an implied contract to pay for that which he declined to permit to be done on his account, except that when one refuses to perform an obligation which the law imposes upon him, the law in some cases treats performance by another as performance for him and implies a contract on his part to pay for it. Per KNOWLTON, J. *Keith* v. *De Bussigney*, 255.

18. In an action on an account annexed to recover for services rendered at the request of the defendant in the settlement of a claim against a city for damages for land taken under the right of eminent domain, if the amount named in the declaration is the amount which it was agreed the plaintiff should receive, if successful in making the settlement, this does not prevent him from recovering the reasonable value of his services although the settlement was not made by him, if on the evidence the jury could have found that he was entitled to be paid for his services if they were not successful. *Miller* v. *Haskell*, 312.

19. M., having a mechanic's lien upon certain real estate of Y. and no claim against Y. other than the debt secured by the lien, executed an assignment to the plaintiff of all his claims against Y. and all his interest in any suits to enforce such demands. Later M. made a general assignment to

the defendant for the benefit of creditors, informing the defendant of his assignment to the plaintiff. Thereafter Y. paid the amount of the debt secured by the lien to the defendant, and the plaintiff sued the defendant for money had and received. *Held*, that the payment by Y. to the defendant discharged the lien, that the defendant received the money with notice of the plaintiff's claim, and that under St. 1897, c. 402, the plaintiff could recover the amount in an action in his own name for money had and received. *Wiley* v. *Connelly*, 360.

Business man employed to effect settlement for land taken not employed as broker and may recover fair value of unsuccessful services, see AGENCY, 1.

No implied agreement that real estate broker is entitled to reasonable time in which to get acceptance of principal's offer to sell, see AGENCY, 3.

Real estate broker failing to procure customer for principal not entitled to recover on *quantum meruit* for work done, see AGENCY, 4.

Payee of void note may recover on common counts, see PRACTICE, CIVIL, 6.

Extra work on building ordered by owner recovered for without architect's certificate, see *ante*, 14.

Goods bargained and sold or goods sold and delivered, after acceptance of indivisible offer to sell, see SALE, 2.

## CONVERSION.

### *What constitutes.*

1. If one, who takes a horse to keep and board for a certain period, having the use of him as compensation, fails properly to use and feed him, this is not exercising dominion over the horse adverse to the owner, so as to make the bailee liable for a conversion, even if his acts are such as to make him liable for negligence or breach of contract. *Keith* v. *De Bussigney*, 255.

2. If the owner of a registered city bond transferable only at the office of the city treasurer, having upon its back an assignment in blank executed and acknowledged by its former owner, intrusts it to another for safe keeping, in a city where a usage exists to treat such bonds thus indorsed and acknowledged as the property of the bearer, and the person to whom it is so intrusted embezzles the bond and pledges it for his own debt, whereby it passes into the hands of a *bona fide* purchaser for value, *semble*, that the person thus intrusting the bond to another cannot recover its value from the *bona fide* purchaser. *Scollans* v. *Rollins*, 346.

3. The owner of a registered city bond transferable only at the office of the city treasurer, having upon its back an assignment in blank executed and acknowledged by its former owner, handed it to a stock broker, whom he was employing in buying and selling stocks, saying that he should like to leave it with him for safe keeping. The broker went with the bond into the next room where the safe was, and returned in a short time with a large envelope upon which were written the name of the owner of the bond and the words "Private Property." The broker then put the bond into the envelope and also at the owner's request put in an insurance policy, sealed the envelope in the owner's presence and carried it into the vault. Later the broker dishonestly pledged the bond for his own debt,

and it came into the hands of a *bona fide* purchaser for value. *Held*, that there was no evidence of an intrusting of the bond to the broker, but that the transaction resulted in a bailment of a sealed envelope, the broker having no right to open the envelope after he had sealed it in the owner's presence and with his consent ; therefore, that the owner was not estopped from asserting his title against the *bona fide* purchaser for value. HOLMES, C. J., not concurring on this point, although delivering the opinion of the court. *Scollans* v. *Rollins*, 346.

Conversion of funds of corporation by treasurer, see CORPORATION, 3.

Rental value of house during delay caused by conversion of articles of plumbing recoverable, see DAMAGES, 7.

Recoupment of damages for conversion of articles of plumbing, see DAMAGES, 8.

Rate of interest recoverable for conversion of four per cent bond, see INTEREST, 1.

## CORPORATION.

### *Capital Stock divided into Shares.*

1. A gas company which has issued and received payment for the shares of capital stock authorized by its charter without obtaining the approval of the board of gas and electric light commissioners required by St. 1894, c. 450, is not a corporation "having a capital stock divided into shares" and therefore not liable to the franchise tax imposed by Pub. Sts. c. 13, §§ 38–40. Certificates thus issued are void and the money received for them has been paid without consideration and does not constitute assets of the corporation. *Attorney General* v. *Mass., etc. Gas Co.* 15.

### *Officers and Agents.*

2. Pub. Sts. c. 106, § 24, providing for officers of corporations holding over until their successors are chosen and qualified, does not prevent the termination of the holding by mutual understanding before a permanent successor is appointed. *Marlborough Association* v. *Peters*, 61.

3. A treasurer of a corporation is bound to keep the money of the corporation distinct, and, if he appropriates it and makes himself a debtor by wrong instead of an agent, he may be sued by the corporation at once, whether his office continues or not. *Ibid.*

Officer of corporation interrogated under Pub. Sts. c. 167, § 53, required to answer as to matters not within his personal knowledge, see INTERROGATORIES.

### *Rights of dissenting Stockholders under Statute compelling Purchase.*

4. St. 1900, c. 426, ratifying the lease of the road of the Fitchburg Railroad Company to the Boston and Maine Railroad, provided in § 3, that dissenting stockholders of either the lessor or the lessee might file with the clerk of the lessee writings declaring their dissent and that the shares of such dissenting stockholders should be acquired by the lessee, being valued as required by the act. It further provided that "Within thirty days from the filing of any stockholder's dissent, as above provided, the lessee shall file its petition with the supreme judicial court sitting within

Corporation (*continued*).

and for the county of Suffolk, setting forth the material facts and praying that the value of such dissenting stockholder's shares may be determined," and that thereupon after notice the court shall require the dissenting stockholder's certificate of stock to be deposited with the clerk of the court and shall appoint three commissioners to ascertain and report the value of the shares. Under this provision, the lessee filed petitions against certain holders of the preferred .stock of the lessor who had filed their written dissent under the above provision, alleging that the respondents or the persons whose shares they held voted for the approval of the lease and were not entitled to the rights of dissenting stockholders, and prayed for a decree that the respondents were not entitled to have their shares purchased by the lessee under the above provisions or, in the alternative, if the respondents were so entitled, that they might be ordered to deposit their certificates and that commissioners might be appointed to appraise the value of their shares for purchase by the lessee. *Held*, that under the provisions of the section above named the court had jurisdiction to declare that the respondents were not entitled to the rights of dissenting stockholders under the act, as well as to grant the alternative relief in case they were so entitled, it being more convenient to allow the petitioner to try all questions in one proceeding than to require it to file a separate additional bill, the petitioner having to proceed within thirty days by the terms of the statute and there not being time to try first the one question and then the other. *Boston & Maine Railroad* v. *Graham*, 62.

5. St. 1900, c. 426, ratifying the lease of the road of the Fitchburg Railroad Company to the Boston and Maine Railroad, provided in § 3 as follows: " Every stockholder of either the lessor or the lessee shall be deemed to assent to the contract of lease authorized by this act, unless within ninety days from the first day of July in the year nineteen hundred he shall file with the clerk of the lessee a writing declaring his dissent therefrom. . . . The shares of any stockholder dissenting as above specified shall be acquired by the lessee and shall be valued and the value thereof be paid or tendered or deposited to or for the account of such stockholder." *Held*, that this provision did not require the lessee to buy the shares of stockholders who voted for the lease and then after the passage of the statute filed written declarations of dissent. *Ibid*.

Powers of Gloucester Water Supply Company, see GLOUCESTER WATER SUPPLY, 1–3.

Liability for tax on franchise not avoided by omitting to do business or by failure to file certificate required by statute, see TAX, 18.

## COSTS.

Double costs imposed for frivolous exceptions, see PRACTICE, CIVIL, 4.

## DAMAGES.

### *For Property taken under Statutory Authority.*

1. Upon a petition for damages for land taken to widen a street under the betterment acts, the petitioner cannot show the amount of the betterments

assessed upon his remaining land, the increase in value from the widening having no bearing on the value of the petitioner's land before the taking. *Green* v. *Everett*, 147.

2. A town is entitled to have allowed as an item of expense incurred by it in carrying out a decree for the abolition of a grade crossing, under St. 1890, c. 428, the value of a portion of its gas and electric light plant taken for a highway under the decree and any resulting damage to the remaining plant, and this right can be enforced by a petition filed by the town in the proceedings in the Superior Court for the abolition of the grade crossing. *Middleborough* v. *New York, etc. Railroad*, 520.

Agreement of settlement of pending petition for damages for land taken not admissible to show value of land, see MUNICIPAL CORPORATIONS, 2.

### In Contract.

3. *Semble*, that, where a defendant has announced his intention of breaking a contract and ordered the plaintiff to stop work under it, in cases where the continuance of the work would be merely a useless enhancement of damages, the plaintiff cannot recover damages occasioned by his continuing work after the order to stop. *Martin* v. *Meles*, 114.

4. If goods sold and paid for are not delivered, the measure of damages usually is their market value at the time and place at which they should have been delivered, but special circumstances may make the vendee's actual loss greater than the sum given by this common rule. When the special circumstances are known to both parties and each has contracted with reference to them, the party in fault justly may be held to make good to the other whatever damages he has sustained as the reasonable and natural consequences of a breach under the circumstances contemplated by the parties. *Semble*, that a vendor may always avoid such consequential liability by expressly declining to assume it, as in order to hold him his assent must be found from the facts. Whether one who like a common carrier is compelled to render the service for which he contracts would be held to the same liability from his undertaking to do the service with knowledge of the special circumstances and without a protest, *quære*. *Lonergan* v. *Waldo*, 135.

5. One who agrees to deliver drain pipe to a contractor for use in a ditch already dug, and who is notified that delay in delivery will result in the washing in of the ditch in case of rain, may be found liable for the expense incurred by the contractor in re-digging the ditch, which by reason of delay caused by non-delivery of the pipe had been washed in by rain as anticipated. *Ibid.*

6. The bailee of a horse who has had the use of him for his board and keeping for a certain period, after the wrongful refusal of the owner to receive back the horse at the termination of the period, cannot recover from the owner the amount of the horse's board recovered from the bailee by a livery stable keeper with whom he placed the horse after notifying the owner that he was about to do so at his expense. The bailee can recover only the loss or expense necessarily incurred in ridding himself of the horse in a reasonable way, and he is bound to make such disposition of

Damages (*continued*).

the horse as will terminate the owner's liability for damages or expenses as soon as he reasonably can.   *Keith* v. *De Bussigney*, 255.

To be determined by law of State where contract was made and to be performed, see CONFLICT OF LAWS, 2.

After notice of intended breach, see CONTRACT, 4.

Surety on replevin bond can show that defendant in replevin was mere bailee, see REPLEVIN, 1, 2.

*In Tort.*

7.  In an action of tort for the conversion of articles of plumbing taken from a house, which is in process of erection for the purpose of letting it to tenants, the plaintiff may recover the rental value of the house during any period of delay which was caused by the acts of the defendant.   *Munroe* v. *Armstrong*, 165.

Assessment of damages for sheep killed or injured by dogs, see DOG, 1, 2.

Materiality of evidence to show damages in action for false representations concerning credit of another, see EVIDENCE, 8.

Rate of interest recoverable for conversion of four per cent bond, see INTEREST, 1.

What damages recoverable in action for seduction of child, see SEDUCTION.

*Recoupment.*

8.  In an action of tort for the conversion of articles of plumbing taken from an unfinished house of the plaintiff by a plumber on the failure of the contractor who employed him, it appeared that, after work upon the house had been abandoned by the contractor, the plaintiff caused the house to be completed, and that $1,500 of the contract price had not been paid by the plaintiff to the contractor.   The defendant offered to show, that all the cost of plumbing work done under the plaintiff's direction after he took possession, including the replacing of the articles removed by the defendant, was paid for out of this $1,500.   The evidence was excluded. The defendant contended that the plaintiff by the application of the $1,500 to the plumbing had recouped his damage from the contractor and could not recover it again.   *Held*, that the evidence rightly was excluded. The $1,500 belonged to the plaintiff and not to the contractor and its application to one purpose or another was immaterial.   *Munroe* v. *Armstrong*, 165.

DECEIT.

1.  For the purpose of supporting an action of deceit refraining from action to the plaintiff's loss in reliance upon the false representations of the defendant in legal effect is acting upon the falsehood.   It makes no difference whether a plaintiff has been induced to buy property or to refrain from selling it.   *Fottler* v. *Moseley*, 295.

2.  The question whether certain reported sales of the stock of a corporation are fictitious may have an important bearing upon the conduct of a man holding some of the shares and thinking of selling them, and a false representation knowingly made by a broker, that the reported sales were

genuine, which induced such stockholder to retain his shares to his loss instead of selling them, will support an action of deceit, if the jury find that on the facts the representation was material. *Fottler* v. *Moseley*, 295.

3. Whether the loss suffered by a director of a corporation from his retaining certain shares of the stock of the corporation which he had intended to sell, after a broker falsely and fraudulently had represented to him that certain reported sales of the stock were genuine, is attributable to the fraud, is a question of fact for the jury. *Ibid.*

Materiality of evidence to show damages in action for false representations concerning credit of another, see EVIDENCE, 8.

When oral misrepresentations concerning credit of another are actionable, see FRAUDS, STATUTE OF, 3.

DEED.

1. In 1682 the town of Gloucester voted at a town meeting that " Jacob Davis and others joyninge along with him hath liberty of the streame at the head of the Little River to sett up a saw milne." *Held*, that by this grant, though without words of inheritance, a fee in the easement passed to the grantees. The rigid rules of construction applicable to modern conveyances are not to be applied to transactions of this kind, which took place soon after the settlement of the country when conveyancing was little understood. For the same reason the easement granted was not limited to damming the waters of the stream for the purpose of running a saw mill. *Gloucester Water Supply Co.* v. *Gloucester*, 365.

2. In 1860 and thereafter two brothers P. and A. held each one undivided quarter of certain land. J. the son of P. acquired a mortgage on this land. In 1891 P. died leaving his interest to J. Four years later J. produced an unrecorded release from A. to P. dated February 1, 1880, by which he contended that A. had conveyed to P. all his interest in the land. J. recorded this release in 1895, and entered to foreclose his mortgage. In 1896 A. died, and thereafter his heirs brought a bill against J. to redeem from the mortgage. J. set up the release of February 1, 1880, in defence to the bill. The release, after referring to a deed of other land not material, referred to a certain deed from one G. to A., the grantor, dated December 19, 1854, and continued as follows : " Now therefore the said P. did verbally agree to and with A. now of said Everett that if he the said A. would pay one half of the purchase money with all other incidental expenses connected with said parcels, and pay one half the costs of all improvements connected with or on said parcels he would convey to him an undivided half part of his interest in the same, I, the said A., having failed in every particular to perform my part of the conditions to be done and performed by me to entitle me to the same do hereby absolutely release all my right, title and interest in and to said parcels of real estate that I may have acquired in any way whatever, and I do hereby remise, release and quitclaim unto the said P. and his heirs and assigns and do absolve him from all obligations under his promise." There was a deed from G.

to A. dated December 19, 1854, but it did not convey the land in question. The mortgaged land was conveyed by another deed from G. to A. dated June 1, 1854, not named in the release. It appeared, that the recitals in the release were not in accordance with the facts; also, that after the date of the release no change was made in the treatment of the property and that after that date as before A. was treated as the owner of a one quarter interest in the land, for eleven years during which P. lived, and for four years after P.'s death during which P.'s clerk was living, and that in 1891 J. in a letter to certain park commissioners offered to sell the land, stating that he was duly authorized by the owners, P. one quarter interest, A. one quarter interest, and two others mentioned. *Held*, that the release of February 1, 1880, if it ever took effect at all, applied to the land conveyed to A. by the deed of December 19, 1854, and not to the land sought to be redeemed from the mortgage, which was conveyed to him by the deed of June 1, 1854. *Stone* v. *Stone*, 555.

What constitutes violation of terms of restriction on land, see EASEMENT, 4.

Deed under valid tax sale passes new title and seisin from time of conveyance, see TAX, 5.

## DEVISE AND LEGACY.

1. A devise to the testator's children gives a vested interest unless the will shows a contrary intention. *Stanwood* v. *Stanwood*, 223.
2. When by a will real property is given to several persons by name to be shared equally among them, they take as tenants in common, and not as joint tenants or as a class, and if one of them dies before the testator his share lapses and does not go to the survivors, unless they are the heirs at law of the testator. *Ibid.*
3. A testator devised all his real estate to a trustee, for the equal benefit of his five children named who were to receive the net income equally during a certain period, at the termination of which, the trustee was to divide the property held by him under the trust equally among the testator's " said children and their respective heirs and assigns." One of the children died before the testator, and another of them died after the testator but before the time of distribution. *Held*, that the gift was not to the children as a class with right of survivorship, but that the children took a vested interest as tenants in common. Consequently, that the share of the child who died after the testator went to the executor of that child, and that the share of the child who died before the testator lapsed, and was held by the trustee upon a resulting trust for the benefit of the testator's heirs at law. *Ibid.*
4. *Semble*, that a provision in a will, that the trustees thereunder shall have no power to sell any part of certain land devised for a charitable use, would not be construed as an attempt to limit the power of the court to authorize a sale, even if it is possible to limit it and thus make specific land inalienable forever. Per HOLMES, C. J. *Amory* v. *Attorney General*, 89.
5. A testatrix, having by her will directed that all her real estate, consisting of an estate called Seven Oaks, should be devoted to a certain charitable

use, and that the trustees should have no power to sell any part of Seven Oaks, made in a codicil the following provision : " I hereby cancel everything in my said will, which limits the charitable uses to which my real estate and other property in B. shall be put by the beneficiaries therein named and described ; and I now direct that said beneficiaries may use such estate and the income of the trust fund, for all and any such purposes as shall be approved and sanctioned by the trustees holding for them," and authorized the trustees to lease or sell any portion of the real estate with the assent of the beneficiaries and to use the proceeds " for improvements or other needs of same charity." *Held*, that the above directions in the codicil did not mean that the fund might be used for any purpose, whether charitable or not, which the trustees might approve, but only that it might be used for such charitable uses as they approved, the words " any such purposes " referring back to the words " charitable uses." *Amory* v. *Attorney General*, 89.

6. A testator left the residue of his estate to his wife " to have and to hold at her free will and disposal during the remainder of her life," and, at her death, left " such portions of the estate as may remain " to his daughter. In an action by the widow of the testator to recover damages for a refusal to purchase from her certain land on the ground that she could not give a good title under her husband's will, it was *held*, that the testator left the plaintiff the disposal of his estate and the determination of how much of it should remain, and therefore that she had at least a power to convey a fee. *Sawin* v. *Cormier*, 420.

7. A will contained this provision : " I do hereby give and bequeath to my legal heirs all my estate of every description with the exclusion of my brother L.'s heirs, and it is my will that they shall have no part or parcel of my estate ; also that part that would legally belong to my brother S. I do hereby order to be held in trust by my said executor and the income to be paid by my said trustee to the said S. yearly, and when in the opinion of my said trustee that the said S. or any of his family need it for their necessary support then my said trustee is at liberty to pay over the whole· or any part of the principal as he may deem best." At the time of the testator's death he held three notes against S. the earliest of them dated after the execution of the will. There was nothing to show that when the will was executed S. was indebted to the testator or that it was expected that he would be. *Held*, that, in ascertaining the " part that would legally belong " to S., the word " legally " should not be interpreted in its strict and technical sense, and that the indebtedness of S. to the testator should not be deducted. *Bigelow* v. *Pierce*, 331.

8. A testator died seised of four parcels of land, leaving a widow, one son and one daughter. One half of one parcel of land, on which was his house, he gave to his son when he should arrive at the age of twenty-one years and gave him the remaining half on the death of the testator's widow. He also gave his son another parcel either outright or on the same terms. The remaining two parcels he gave to his daughter when she should arrive at the age of twenty years. Then followed this clause : " My personal estate to be divided in the manner following after my estate

is settled, my wife to have one half, and my two children the remainder in equal shares, if they live to the age of twenty-one years, and if my children should die childless what remains of my estate both real and personal, after the decease of my wife, to descend to the heirs of G. D." Both the son and daughter survived the widow and both died childless after reaching the age of twenty-one years. *Held*, that the contingency intended to be described was the event of the testator's children dying childless before reaching the age of twenty-one years, and that G. D. took nothing. *Donnell* v. *Newburyport Hospital*, 187.

Execution of power of appointment, see Power, 1, 2.

Exemption of legacies not exceeding $500 from collateral inheritance tax, see Tax, 13.

Future and contingent interests subject to collateral inheritance tax, see Tax, 14.

Valuation of future and contingent interests for purposes of collateral inheritance tax, see Tax, 15–17.

New trustee under will, appointed by court, has powers of original trustee, see Trust, 1.

Construction of devise as gift to charity, see Trust, 2.

## DISCRETION OF COURT.

Sufficiency of identification of rules of railroad company is for presiding judge, see Evidence, 12.

Whether witness is qualified as expert is within discretion of presiding judge, see Evidence, 25; Railroad, 6.

## DOG.

1. Under St. 1889, c. 454, giving damages for sheep killed or injured by dogs, the return under § 1 of a certificate of damages which contains a slight inaccuracy as to the ownership of the sheep but complies with the essential requirement of an oath as a preliminary to the appraisal, and which contains enough to identify the proceedings and justify the introduction of oral testimony to correct the error as to the title, does not leave the case as if there were no certificate but satisfies the statutory requirement that a certificate shall be returned. *Johnson* v. *Griswold*, 580.

2. In St. 1889, c. 454, giving damages for sheep killed or injured by dogs, § 1 provides, that when the damages are appraised, the county treasurer shall submit the certificate of damages to the county commissioners, who within thirty days shall examine the bill for damages and make such investigation as they think proper, and issue an order upon the county treasurer for all or any part of the damage. *Held*, that the requirement in regard to the time of the examination is for the benefit of persons claiming damages, and, in the absence of a request by an interested party for an early examination, is only directory, and the failure of the commission-

ers to act within thirty days does not render their subsequent action in favor of an injured party invalid.  *Johnson* v. *Griswold*, 580.

St. 1889, c. 454, and St. 1894, c. 309, giving damages for sheep killed or injured by dogs, constitutional, see CONSTITUTIONAL LAW, 2.

## EASEMENT.

1.  An easement created by grant is not lost by non-user.  *Gloucester Water Supply Co.* v. *Gloucester*, 365.
2.  One owning a raceway crossing the land of another lawfully may remove in a reasonable way all obstructions to the usual flow of the water.  *Cobb* v. *Massachusetts Chemical Co.* 423.

### *Equitable Restriction.*

3.  Where a grantor in pursuance of a common scheme imposes restrictions on land sold to various grantees, he can waive his own right to enforce the restrictions but not that of any of his grantees.  *Ivarson* v. *Mulvey*, 141.
4.  A restriction on suburban land to continue for eight years only, that no dwelling house placed thereon " shall contain more than two tenants, or be constructed for more than two families," is violated by the construction of a house of three stories containing seventeen rooms available for three families although the owner does not intend to use it for more than two families until the eight year limit of the restriction has expired. *Ibid.*
5.  Where an owner divides a tract of land into building lots and as part of a general scheme for its improvement inserts in the deeds of sale restrictions as to the purposes for which the land may be used, if it sufficiently appears that the intent of the grantor was to benefit the lot owners generally, it is not necessary, in order that the restrictions should be enforceable, that they should be exactly the same in all the deeds, if the differences are not substantial.  *Also*, the fact that two of the lots, one sold before the plan was made, and the other a very small one, were sold without restrictions is not inconsistent with a general scheme of the grantor imposing restrictions on the remaining lots.  *Bacon* v. *Sandberg*, 396.
6.  It appears to be settled in this Commonwealth, that a plaintiff is not prevented from enforcing in equity a building restriction by the fact that he has not objected to a violation of the restriction by some one in the neighborhood other than the defendant.  But, when the plaintiff has violated the restriction himself, the question whether he is entitled to relief depends largely on whether the plaintiff's breach of the restriction was so material and substantial as to enable the court to say that it ought not to interfere in his behalf.  *Ibid.*
7.  In a suit to enforce an equitable restriction in the deed of the defendant, that no building or structure should be placed within thirteen feet of a certain street, it appeared, that the defendant had put up a one story building the whole of which was within the prohibited thirteen feet, and that the plaintiffs had violated the same restriction in their own deeds by projecting from their respective houses bay windows, piazzas and steps into the  .

restricted space. *Held*, that, although the plaintiffs could not invoke the aid of a court of equity to prevent the defendant from erecting a piazza, bay window or steps extending into the restricted space, the building of a separate house in this space was something which they had not done, and they were entitled to a decree ordering the defendant to remove the structure thus erected by him. *Bacon* v. *Sandberg*, 396.

Whether certain acts constitute defence of laches to bill to enforce equitable restriction, see EQUITY JURISDICTION, 8.

Ancient grant of mill privilege without words of inheritance, see DEED, 1.

Owner of easement in fee not "person having a freehold estate" under St. 1889, c. 442, see INCUMBRANCES; nor owner of a legal estate within meaning of land registration act, see LAND REGISTRATION ACT.

As to extent of mill privilege, see MILLS, 1, 2.

### ELEVATOR.

One operating elevator not common carrier within meaning of Pub. Sts. c. 73, § 6, see CARRIER.

### EMINENT DOMAIN.

1. When land is taken for a reservoir " to take and hold water," all water which gathers in the reservoir from springs or by percolation, not flowing in a stream, by necessary implication also is taken. *Gloucester Water Supply Co.* v. *Gloucester*, 365.

2. A corporation created for the purpose of supplying a city with water was given the right to take water from ponds. The charter contained a provision, that the corporation within a certain time " after the taking of any land or water rights" should file in the registry of deeds " a description of any land so taken" and a further provision, that no application should be made for the assessment of water rights until the water was " actually taken and diverted" by the corporation. The corporation took and diverted the water of a certain pond for less than a year, supplying the city with water therefrom while its principal reservoirs were in process of construction and then abandoned the use of the water of the pond and never resumed it. No description of the water taken was filed in the registry of deeds. *Held*, that, without deciding whether the actual diversion of water would be a legal taking of it within the meaning of the statute authorizing the taking, such a temporary use of the water for less than a year, then abandoned and never resumed, was not a legal taking of the water within the meaning of the act as against a person who had rights in that water and who had not elected to treat it as a taking of it. *Ibid.*

Whether water rights can be taken by eminent domain without a writing, see ESTOPPEL, 4.

### EMPLOYERS' LIABILITY.

See NEGLIGENCE, 15–19.

## EQUITY JURISDICTION.

### *Equitable Assignment.*

1. A deed was given by an administrator in obedience to a decree of the Probate Court, under Pub. Sts. c. 142, § 4, for the specific performance of an agreement to convey the land. All parties acted in good faith, but the deed was void, because the decree was made without notice to persons interested. The grantee paid the purchase money in accordance with the agreement, occupied the premises for about twelve years with the knowledge of the heirs at law of the grantor's intestate and, without objection from anybody, made substantial repairs and additions and paid the taxes. In a writ of entry brought by one claiming under an heir at law of the grantor's intestate, to recover the premises, it was *held*, that, as an equitable defence under St. 1883, c. 223, § 14, the tenant had a title in the property that would be enforced in equity, being in the position of an equitable assignee of the original contract of sale. *In this case* the original contract of sale ran to the husband of the tenant. *Held*, that the tenant's rights as equitable assignee were not affected by the marital relation. *Nazro* v. *Long*, 451.

### *To restrain Foreclosure of Mortgage.*

2. A bill in equity, to restrain the foreclosure of a mortgage on the ground, that after the delivery of the mortgage and note there was a material alteration of the note without the plaintiff's assent, contained no allegation of fraud or of fault on the part of the mortgagee, and no allegation that the note or the debt which the mortgage was given to secure had been paid or that there was any tender or offer of payment. *Held*, that the bill did not state a case which entitled the plaintiff to relief in equity. *Jeffrey* v. *Rosenfeld*, 506.

### *To restrain Sale below Agreed Price.*

3. In a suit in equity by the owner and manufacturer of a proprietary medicine, the trade-mark of which was registered in the patent office of the United States and in the office of the secretary of this Commonwealth, against a retail dealer in drugs and medicines, to restrain him from selling the medicine below a certain price, it appeared, that the medicine was sold by the plaintiff under a written contract by which the purchaser agreed that he would not sell nor allow any one in his employ to sell the medicine at less than a certain price per box, which was a higher price than that at which the defendant was selling it to the public, that the defendant bought the medicine knowing the conditions on which it was sold by the plaintiff, but did not buy it from the plaintiff or from one who purchased it from him. There was nothing to show that the defendant had faudulently induced or procured the breach of a contract between the plaintiff and any of his vendees. *Held*, that the contracts made with the plaintiff by the original purchasers could be enforced only against them, and that a purchaser from a purchaser had an absolute right to dispose of the property as he pleased. *Garst* v. *Hall & Lyon Co.* 588.

Equity Jurisdiction (*continued*).

*Continuing Trespass.*

4. The defendant, a manufacturing corporation, owned a strip of land eleven feet wide running through the land of the plaintiff and had the right to use it as a raceway for its mill. The defendant in clearing out the raceway widened it to twenty feet or more, thus making an unlawful use of the plaintiff's land which it intended to continue. In a suit in equity seeking an injunction and also an order to the defendant to restore the plaintiff's land to its condition before the trespass, it was *held*, that the plaintiff was entitled to an injunction against such a continuing trespass, but, as the value of the land interfered with was very small and the advantage to the plaintiff of restoring it to its former condition would be very slight, and the expense to the defendant would be much greater than the advantage to the plaintiff, that justice and equity did not require that the defendant should be ordered to restore the land to its former condition, but that the damages suffered by the plaintiff from the acts already done should be assessed, and the defendant be enjoined from further unlawful acts. *Cobb* v. *Massachusetts Chemical Co.* 423.

*Specific Performance.*

Of agreement to leave property by will.

5. A woman eighty-five years old offered in writing to give to her sister, seventy years old, all the property she should leave at her decease, if the sister and her daughter would come and stay with her during the remainder of her life. The younger sister accepted the offer and with her daughter came from a distant State and stayed with the older sister until her death thirty-eight hours after their arrival. She died intestate, leaving real estate worth about $4,000 and personal property worth about $2,000. In a suit in equity brought by the surviving sister against the administrator of the estate of the deceased sister and the heirs at law of the deceased, it was *held*, that the contract was fair and equal, and, although it could not have been specifically enforced against the plaintiff, was of such a nature that the time for performance by the defendant could not come until the plaintiff's part had been fully performed, that the plaintiff had fully performed her part of the contract, and that, considering the situation of the parties and their relation to each other and the moderate size of the estate, the plaintiff should not be relegated to her rights in an action at law, but was entitled to a decree ordering that the real estate be conveyed to her and that the administrator pay over to her all personal property remaining in his possession after satisfying all claims against the estate. *Howe* v. *Watson*, 30.

Of oral agreement to redeliver pledged stock.

6. The plaintiff had transferred certain stocks to the defendant, a bank, as security for his note for $5,000. Thereafter the plaintiff was adjudged an insolvent. The defendant on its own petition was ordered by the Court of Insolvency to sell the securities and apply the proceeds upon the note. Thereupon the plaintiff and defendant made an oral agreement, that the plaintiff should procure some one to purchase certain of the securities for

$1,000, which sum when paid should be credited upon the note, that the defendant should bid in the remaining securities for $2,700 in all if no higher bid was made for them and the amount of the bids should be indorsed upon the note, that the defendant should hold and carry the securities thus bid in, and, upon receiving from the plaintiff the amount of its bids with interest, and the balance of the $5,000 of the note with interest, should convey the securities to the plaintiff. In pursuance of this agreement the plaintiff procured a purchaser who paid $1,000 for the securities to be sold for that sum, and the defendant delivered those securities and indorsed the payment on the note and on the same day bid in at auction the remaining securities for $2,700 and indorsed that amount on the note. The defendant proved for the balance of its claim in insolvency and received a dividend. The plaintiff received his discharge. In a bill for a specific enforcement of this contract, by ordering the defendant to deliver the securities to the plaintiff on his paying to the defendant the balance of his indebtedness, it was *held*, that the contract was entire, embodying a single scheme, each part having reference to the others, by which the plaintiff might save his collateral ; that, assuming the contract to be within the statute of frauds, the statute was satisfied by the payment of the $1,000 by the purchaser procured by the plaintiff and the acceptance and receipt by him of the securities thereby purchased ; that the plaintiff's agreeing to procure and procuring such purchaser could be found to be a good consideration for the promise of the defendant ; and that the contract was one which the court would specifically enforce in spite of there being no mutuality of remedy when the contract was made, as the plaintiff must perform his part of the contract by tendering the balance of his indebtedness before the time for performance by the defendant could arise. *French* v. *Boston National Bank*, 404.

As to power of Probate Court to decree specific performance against administrator, see PROBATE COURT, 1.

### *Laches.*

7. An executor of a *cestui que trust* seven and a half years after his appointment brought a bill in equity against the trustees to enforce a trust arising from a written agreement in force before his appointment. The delay of the executor appeared to have been principally if not wholly due to a desire on his part to avoid litigation, some of the trustees apparently taking the ground at one time that they were not liable. *Held*, that under such circumstances laches could not be imputed to the executor. *Pearson* v. *Treadwell*, 462.

8. In a suit to enforce an equitable restriction in the deed of the defendant, as to the place and manner in which he might build upon his lot, it appeared, that the defendant obtained a permit to build on May 9, and that the building was finished about June 10 or 12, that on May 17 a petition was circulated to stop the work and presented to the mayor of the city, that about May 20 one of the plaintiffs had a conversation with the defendant and objected to the building on the ground of restrictions, that on May 27 and June 1 letters complaining of the building were written to

the defendant, that on June 5 or 6 the plaintiffs' attorney had an interview with the defendant in which the defendant said he would let the plaintiffs know in a short time whether he would remove the building or not, that the building was not removed, and on June 14 the bill was filed. *Held*, that there was nothing in these facts to show unreasonable delay on the part of the plaintiffs in bringing their bill, or anything showing either actual consent or passive acquiescence on their part, and that the defence of laches was wholly unsupported. *Bacon* v. *Sandberg*, 396.

Effect of violation of restriction of land by plaintiff upon his right to enforce it against others, see EASEMENT, 6, 7.

For case of relief against special statute of limitation, see LIMITATIONS, STATUTE OF, 2, 3.

Restrictions imposed in grant of location to street railway enforceable in equity, see STREET RAILWAY, 3.

Superior Court no jurisdiction to restrain town board of health abating nuisance, see SUPERIOR COURT.

Mortgagee's lien on surplus of proceeds of sale of mortgaged premises for taxes enforceable in equity, see TAX, 8, 9.

## EQUITY PLEADING AND PRACTICE.

### *Averments in Bill.*

1.  Where a bill in equity contains no averment of any fraudulent act or conduct on the part of the defendant, the use of the word "fraudulently" in characterizing his acts, adds nothing to the averments of fact in the bill. *Garst* v. *Hall & Lyon Co.* 588.

### *Answer under Chancery Rules.*

2.  Under the Chancery Rules adopted by this court in 1884 and still in force, all answers, except in case of bills for discovery, are to be treated as pleadings merely and cannot be excepted to for insufficiency. Rules 17 and 18 are to be construed as applying only to bills for discovery. *Pearson* v. *Treadwell*, 462.

### *Remedy at Law.*

3.  The objection to jurisdiction in equity that the plaintiff has an adequate remedy at law cannot first be taken after a master's report has been filed. *Haskell* v. *Merrill*, 120.

### *Master's Report.*

4.  Exceptions to a master's report based on evidence cannot be considered unless the evidence is reported. *Haskell* v. *Merrill*, 120.

5.  Exceptions will not lie to a master's report on the ground that he used the words "loan," "security" and "delivery" in his findings thereby stating conclusions of law from facts. Such words by stating a conclusion allege by implication that facts exist which justify it. If it becomes material to separate the pure facts, the party wishing this can ask for a ruling. *Ibid.*

### Construction of Petition.

6. A petition, under St. 1889, c. 442, to determine the nature and extent of the rights of way claimed by the respondents, under a certain deed, in and over a private way called Townsend Place in Boston, alleged, that the petitioners were the owners of certain lots of land situated on Townsend Place with the buildings thereon together with a right of way and of drainage in, upon, and over said Townsend Place as appurtenant to said lands. *Held*, that it was the title to the right of way and not the title to the land of Townsend Place · that was intended to be and was the subject of the petition. *Minot* v. *Cotting*, 325.

Degree of particularity required in bill for relief against special statute of limitation, see LIMITATIONS, STATUTE OF, 2, 3.

Bill for relief on ground that alteration was made in certain negotiable instrument should describe alteration, see ALTERATION OF INSTRUMENTS, 2.

## ESTOPPEL.

### By Representations.

1. One owning land on the line of a proposed sewer in Boston agreed with the street commissioners and the head of the sewer department that he would convey to the city his land within the lines of a new street where the sewer was to run, in consideration that nothing should be paid for sewer assessments on his adjoining property or for the right to enter the sewer therefrom, and conveyed the land. Subsequently it was voted by the aldermen, with the approval of the mayor, that the assessments for this sewer be assumed by the city on account of the adjoining estates not being benefited by the sewer. A permit to connect the premises with the sewer was issued by the sewer department and the connection was made. A purchaser of this land, on inquiring before his purchase at the collector's office and the sewer department, was informed that there were no assessments or charges against the land. Later this purchaser sued the city for injuries from an overflow of the sewer caused by the alleged negligence of the city. The defence relied upon was that the plaintiff's drain was not lawfully connected, because there was no payment before entering the drain at the rate of two cents per square foot of all land benefited by the connection, as required by the Rev. Ord. of Boston of 1885, c. 27, § 15. *Held*, that, even if for any reason the city had a right to repudiate its bargain, and if the issue of the permit was beyond the power of the sewer department, the city could not repudiate its agreement while still holding the land conveyed to it, and that until he had notice to the contrary the plaintiff had a right to rely on the information which he had received from the city and to assume that he was entitled to protection as one lawfully connected with the sewer. *Hendrie* v. *Boston*, 59.

### By Conduct.

2. In a suit by a woman to enforce against the estate of her deceased sister an agreement of the deceased to leave all her property to the plaintiff, it is

Estoppel (*continued*).

no bar to the plaintiff's recovery that in ignorance of her rights she accepted payments of money from the administrator as a part of her distributive share of her sister's estate. *Howe* v. *Watson*, 30.

3. In an action to enforce a contract of the defendant to convey certain land to the plaintiff, it appeared, that the plaintiff visited the office of the defendant's counsel who in the presence of the defendant gave the plaintiff a draft of a deed of the land prepared for execution by the defendant and by his wife as releasing dower, to take to the plaintiff's conveyancer who was to examine the title. Later the plaintiff demanded a deed of the land which the defendant refused. Neither the plaintiff nor his attorney had returned the draft and so far as appeared had retained it in their possession. *Held*, that the plaintiff by his retention of the draft in no way lost his right to require a deed. *White* v. *Dahlquist Manuf. Co.* 427.

4. Cases holding that the owner of water rights may treat the actual diversion of the water by a municipality or corporation having a statutory right to take water as a legal taking of it, may rest upon the ground that the defendant is estopped to deny that there has been a legal taking, and are not decisive of the question, whether a man can be deprived of his property by an act *in pais* purporting to be done under the right of eminent domain unaccompanied by a writing or other declaration defining the measure of interference with his ownership of the property. Per LORING, J. *Gloucester Water Supply Co.* v. *Gloucester*, 365.

When owner of non-negotiable security indorsed in blank estopped from asserting title against *bona fide* purchaser, see CONVERSION, 2, 3.

Holder of mechanic's lien taking bond to dissolve not estopped to contest validity of bond or interest of party giving it, see MECHANIC'S LIEN, 11.

## EVERETT.

Powers of city council of, see MUNICIPAL CORPORATIONS, 2, 3.

## EVIDENCE.

### *Presumptions and Burden of Proof.*

1. The fact, that the demandant in a real action has made out a case sufficient to entitle him to go to the jury, does not throw the burden of proof upon the tenant. *Jaquith* v. *Rogers*, 192.

2. An auditor's report without changing the burden of proof makes it incumbent upon the other party to go forward with evidence to rebut and control it, but, after evidence has been put in on both sides upon the matters dealt with by the auditor, it would be error to instruct a jury, that there was a presumption of fact that the auditor's report was right. In such a case it is for the jury to consider the evidence anew and to settle for themselves how far they should be influenced by the report. *Wyman* v. *Whicher*, 276.

Auditor's report is *prima facie* evidence, see AUDITOR, 1.

No presumption that common law of Virginia in 1846 gave any effect to slave marriages, see MARRIAGE, 2.

Presumption that note is given as payment may be rebutted, see PAYMENT.

Presumption that possession followed conveyance under tax sale, see TAX, 6.

### Relevancy and Materiality.

Of checks to show indebtedness.

3. In an action for the conversion of a bond, the defendant introduced evidence for the purpose of showing that the bond was pledged as security by the plaintiff to certain brokers under whom the defendant claimed, and that the plaintiff's account with the brokers at that time was short. The plaintiff testified, that at no time had he been indebted to the brokers and that on one or two occasions during the period in question he lent the brokers money which was repaid by their checks. The plaintiff against the defendant's objection was allowed to put in evidence five checks from the brokers to him dated during the period in question. *Held*, that the checks tended as far as they went to corroborate the plaintiff's case and were admissible as against a merely general objection. *Scollans* v. *Rollins*, 346.

In action by broker for commission.

4. In an action by a real estate broker to recover a commission for services in effecting an exchange of lands, finally completed by other brokers and with certain changes in the bargain which the plaintiff contended were unessential details, it is proper to exclude evidence, offered by the defendant, as to the particular steps taken and the trouble experienced by the other brokers in carrying out the new features of the modified bargain, with which the plaintiff did not pretend to have anything to do and which he contended were not essential parts of the transaction ; even if under any circumstances it would be pertinent, whether the plaintiff could have done the things which were done by the other brokers, and if the trouble of others would have been a criterion of what the plaintiff could have done. *Hall* v. *Grace*, 400.

5. In an action by a real estate broker to recover a commission for services in effecting an exchange of lands which was finally completed by other brokers, a letter from one of these other brokers to another of them, offered by the defendant as "a part of the history of the transaction which culminated in the sale," may be excluded as immaterial besides being *res inter alios*. *Ibid*.

In action for unlawful arrest.

6. In an action by a passenger against a railroad company for alleged unlawful arrest of the plaintiff on the charge of evading the payment of fare, evidence of the rules of the defendant as to punching tickets and as to allowing passengers to stop over and the use of stop-over checks is admissible. *Dixon* v. *New England Railroad*, 242.

In action for malicious prosecution.

7. In an action against a pawnbroker for alleged malicious prosecution and causing the unlawful arrest of the plaintiff, it appeared, that the plaintiff represented herself to the defendant as the owner of certain articles which she pledged to him, whereas she held them under a contract of conditional

Evidence (*continued*).

sale, the title being in the vendor, and that the defendant learning of the facts called in a police inspector and informed him of them. The plaintiff offered to show that the defendant held other property of hers more than sufficient to cover all loans which the defendant had made to her and which he had a right to apply to the payment of the loans, and that the defendant did not investigate and report to the officer the state of the general account between him and the plaintiff. *Held*, that the evidence properly was excluded as immaterial, having no bearing whatever upon the pledging of the property of another which was the only thing that the defendant was reporting to the officer. *Held, also*, that evidence to show an offer of the plaintiff to pay the defendant after her discharge from arrest was likewise immaterial, as also was evidence that the plaintiff gave the pawn ticket to the owner of the pledged articles and had no intention of committing a fraud, neither of these facts being known to the defendant at the time he called in the officer. *Burnham* v. *Collateral Loan Co.* 268.

To show damages in action of deceit.

8. In an action for false representations of the defendant whereby the plaintiff was induced to place $5,000 in the defendant's hands for investment, it appeared, that the plaintiff intrusted the sum named to the defendant for investment and thereafter received from him certificates purporting to represent shares in an investment association. The plaintiff was allowed to testify that she received $20 in July, $100 in October, and $100 the next January on her investment, and nothing more ; also that she had endeavored in every manner to realize on her investment, by way of collection, without success. She was also allowed to testify, that thereafter the defendant advised her to employ a New York lawyer to compel one S. to return to her her money, this evidence being admitted to show an admission by the defendant as to the value of the certificates. *Held*, that, on the question of damages, it was competent for the plaintiff to show what she had paid the defendant and what she had received in return, and that the admission of the defendant was competent on the question of the value of the certificates. *Stannard* v. *Kingsbury*, 174.

To show fraud against creditors.

9. In a real action to recover land conveyed to the tenant through a third person by her husband, on the ground that the conveyance was fraudulent as against creditors, the demandant asked the tenant's husband " How much were you indebted in 1898 at the time of your examination as a poor debtor ? " and stated that his offer was, to show that the witness at the time of the examination referred to had no debts other than the claim of the bank represented by the demandant. *Held*, that the question properly was excluded, the fact sought to be proved having no legitimate bearing on the question in issue. *Jaquith* v. *Rogers*, 192.

In action on contract to pay for sign, evidence that sign was of benefit to plaintiff immaterial, see CONTRACT, 9.

Amount of betterments assessed upon remaining land immaterial to show value of land taken, see DAMAGES, 1.

Relevancy of certain evidence on trial of complaint for being "lewd, wanton and lascivious person," see LEWDNESS, 2.

Relevancy of certain evidence in rebuttal in action against railroad for fire, see RAILROAD, 6.

### Best and Secondary.

10. A writ and an execution and the officer's return thereon, material to show the demandant's title in a real action, may be proved by certified copies without producing the originals. *Frazee* v. *Nelson*, 456.

11. In this Commonwealth a certified copy from a registry of deeds is sufficient evidence of the execution of the deed of which it is a copy. A copy of a certificate of entry to foreclose comes under the same rule. *Ibid.*

12. Rules of a railroad company in regard to the collection of tickets are not records and are sufficiently identified if it is shown that they were issued by those who conduct the business of the company for the government of its servants. The sufficiency of identification is a question for the presiding judge upon which his finding is conclusive, unless all the evidence is reported and the finding is not warranted by it. *Dixon* v. *New England Railroad*, 242.

Recital of judgment in execution not best evidence to prove demandant's title claiming under execution sale, see REAL ACTION, 3.

### Proof of Foreign Law.

13. What is the law of a foreign State is primarily a question of fact, but, so far as it appears in statutes and decisions which are not conflicting, the construction of the language is for the court. *Cook* v. *Bartlett*, 576.

### Proof of Acknowledgment.

14. By the law of Vermont an instrument of adoption of a child is required to be acknowledged before the judge of probate of the district where it is filed. A certified copy of such an instrument, introduced as evidence of adoption, showed the certificate of acknowledgment to be signed as follows: "Before me, Fred. G. Field, Notary Public" and below and a little to the left "Hugh Henry, Judge of Probate, Dist. of Windsor." The Vermont statute provides, that the instrument shall be recorded, "if it appears to the Probate Court that the provisions of the statute have been complied with." This instrument was recorded. *Held*, that there was nothing in the statute or in the record to give to the signature of the judge of probate any other meaning than that which it should have as evidence that the paper was acknowledged before him as required by the statute, and that the natural inference was that the judge knew that the law had been complied with by an acknowledgment before him. *Cook* v. *Bartlett*, 576.

### Parol and Extrinsic affecting Writings.

15. The words "about thirty-two feet to D.'s land," used in describing a boundary in a deed, are ambiguous and suggest the existence of some monument or abuttal, which extrinsic evidence is admissible to fix. The

**Evidence** (*continued*).

practical construction put upon the deed by the parties in treating a certain fence as the boundary is such evidence. *O'Connell* v. *Cox*, 250.

16. In an action by an actress against the proprietor of a theatre, to recover for the breach of an oral agreement to employ the plaintiff during the fall and winter season of a certain year, the plaintiff was allowed to testify to a conversation with the defendant, which resulted in her signing a written contract for the summer season containing a provision that it might be terminated by either party by two weeks' notice in writing, and also resulted in an oral agreement for the following fall and winter season from which the two weeks' notice clause was by special agreement omitted. *Held*, that the defendant was in no way harmed by the admission of the evidence of the conversation, by which the plaintiff did not seek to vary or control the written contract, but merely to show the circumstances under which the ôral agreement was made. *Drake* v. *Allen*, 197.

Parol evidence admissible to identify certain extra work mentioned in written order, see CONTRACT, 16.

#### Res Gestæ.

17. When a transaction is competent in evidence, declarations which are part of and characterize it are competent for the same purpose for which the transaction itself is competent. *O'Connell* v. *Cox*, 250.

18. In an action of tort in the nature of trespass *quare clausum*, to determine a disputed boundary, the defendant testified that his deed was delivered to him elsewhere than on the premises, but that a few days before its delivery, he went upon the premises and through the house and yard in company with his grantor who then pointed out to him a fence as a boundary. This was admitted, not as evidence of boundary, but as evidence of seisin of the defendant's grantor. *Held*, that the evidence was competent to prove seisin, the pointing out of the fence as the boundary being part of the *res gestæ*. *Ibid*.

#### Admissions and Confessions.

19. In a criminal case the defendant's failure to reply to a statement made in his presence concerning a material matter and under such circumstances as to call for a reply or denial, is evidence against him. *Commonwealth* v. *O'Brien*, 533.

20. One who claimed under a deed of release, wishing to show that it conveyed a certain lot of land belonging to the grantor which was not expressly described in it, testified as follows: "I showed him [the grantor] that release, and asked him what it meant, and he said, 'I don't know.' I said, 'That is your signature.' He said, 'Yes,' and I said, 'You made it out,' and he said, 'Yes, I made it out,' and then said, 'I don't remember about it.'" It appeared, that at this time the grantor seemed to be failing and his memory to be very poor. *Held*, that the evidence did not warrant a finding of a master, that when the deed was shown to the grantor " he did not attempt to repudiate it or deny that it applied to the property " which was the subject of the suit, as there was nothing in the evidence which showed that the question, whether the release applied to the land in dispute, was ever presented to the mind of the grantor. *Stone* v. *Stone*, 555.

*Declarations of Deceased Persons.*

21. On an exception to the admission of the declarations of a deceased person under St. 1898, c. 535, if it appears that the declarant was dead at the time of the trial, the admission of the evidence shows that the presiding judge was satisfied that the declarations were made in good faith before the beginning of the suit and upon the personal knowledge of the declarant. *Dixon* v. *New England Railroad*, 242.

22. In an action by a bank for money lent upon a note held to be void because made by the defendant to her husband, the defendant died between two trials of the case. At the new trial, the administrator of her estate, then the defendant, offered in evidence the declarations made by his intestate after the action was brought, to the effect that she never borrowed any money of the plaintiff. The declarations were offered under St. 1896, c. 445, as in an action against the administrator of a deceased declarant in which the cause of action was supported by oral testimony of a promise or statement made by the deceased person. *Held*, that the declarations were not admissible under St. 1896, c. 445, because it did not appear that the action was supported by oral testimony of a promise or statement made by the intestate. *Whether*, the declarations were admissible under St. 1898, c. 535, was not considered, because they were not so offered. *National Granite Bank* v. *Tyndale*, 390.

*Opinion : Experts.*

23. On the issue of the soundness of mind of a testatrix, each of four witnesses was asked whether he or she, during the time mentioned, observed in the testatrix "any peculiarity of manner, speech or conduct." The witnesses answered " No " or " Never." *Held*, that the question did not call for an opinion but for a fact, and was admissible. *Hogan* v. *Roche*, 510.

24. In an action by a bank for money lent, the cashier of the plaintiff was asked, what transaction took place between the plaintiff and the defendant, and answered " We on December 29th made a loan to " the defendant, and further stated that he personally attended to the transaction. The answer was objected to on the ground that the witness was permitted to state a conclusion in describing the transaction as a loan, and that whether a loan was made was a question solely for the jury. *Held*, that the answer was the statement of a fact within the personal cognizance of the witness, and properly admitted. *National Granite Bank* v. *Tyndale*, 390.

25. In an action to recover for injuries occasioned by the plaintiff, who had gone into the defendant's shop to purchase furniture, catching her foot in the curled up edge of a worn rubber mat of poor quality, a salesman for fifteen years of the rubber company which supplied the matting in question, who had seen rubber mattings in various stages of wear and part of whose work had been to replace rubber matting that was worn out and who to a certain extent was familiar with the effect of various degrees of wear on rubber mattings, was allowed against objection to testify as to the effect of wear upon such rubber matting as that in which the plaintiff caught her foot under the conditions assumed to exist in the case. *Held*,

**Evidence** (*continued*).

that whether a witness called as an expert has the requisite qualifications and knowledge is largely a matter for the trial judge and his finding thereon will not be interfered with unless it clearly appears to be erroneous, and that under this rule the court could not say that allowing the witness to testify as an expert was erroneous, or that what he testified to was matter of common knowledge. *Toland* v. *Paine Furniture Co.* 501.

Whether witness qualified as expert question for presiding judge, see RAILROAD, 6.

### Discretion of Court.

26. Where a deed was proved by a certified copy from the registry of deeds and a copy of a plan referred to in the deed was permitted to be used at the trial, it was assumed that it was used to show the general locality of the premises, and thus was matter within the discretion of the presiding judge. *Frazee* v. *Nelson*, 456.

Sufficiency of identification of rules of railroad company for presiding judge, see *ante*, 12.

Whether witness qualified as expert within discretion of presiding judge, see *ante*, 25; RAILROAD, 6.

### Res inter alios.

In action by real estate broker to recover commission, see *ante*, 5.

### Collateral Issues : Remoteness.

27. In an action to recover for injuries caused by the plaintiff, who had gone into the defendant's shop to purchase furniture, catching her foot in the curled up edge of a worn rubber mat of poor quality, evidence of the condition of the mat four hours after the accident, there being no evidence of any change in the meantime, is admissible to show its condition at the time of the accident. *Toland* v. *Paine Furniture Co.* 501.

As to objection that auditor's report contains inadmissible evidence, see AUDITOR, 2.

Agreement of settlement of pending petition for damages for land taken not admissible to show value of land, see MUNICIPAL CORPORATION, 2.

Scope of cross-examination, see WITNESS, 1–3.

Assumption as to treatment by trial judge of evidence admissible for one purpose, but inadmissible for another, see WITNESS, 2.

## EXCEPTIONS.

See PRACTICE, CIVIL, 7–9.

## EXECUTION.

### Validity of Levy and Sale.

1. An obvious mistake in an officer's return on a levy of execution does not defeat the levy. *Frazee* v. *Nelson*, 456.

2. Where all of a debtor's right, title and interest in certain land is sold on execution and a deed is given by the officer to the purchaser at the sale, it need not appear either in the officer's return or in the deed, whether the property sold was free from or subject to incumbrances. *Frazee* v. *Nelson*, 456.

3. An officer levied an execution on six different parcels of land and afterwards abandoned the levies on all the lots but one, which he sold on execution. He gave no notice before the time of the sale of the abandonment of the liens on the other lots. *Held*, that the failure to give notice of the abandonment was no ground for invalidating the sale, as it could not have operated to the prejudice of the debtor. More bidders rather than fewer would have been present in consequence of the failure to give such notice. *Ibid*.

### Notice to Debtor of Sale.

4. Pub. Sts. c. 172, § 46, provides that, in giving notice to a debtor of a sale of his property on execution, if the debtor does not reside within the precinct of the officer serving the execution and is not found by him therein, such officer shall send by mail post-paid a copy of the notice addressed to the debtor at his place of residence as described in the execution. An execution served by a deputy sheriff of Middlesex County described the debtor as having a usual place of business in Boston. The return of the officer showed that he made diligent search for the debtor within his precinct but was unable to find him or that he had any agent or attorney or any abode last and usual or otherwise therein, and that he sent by mail post-paid a notice of the time and place of the sale and a copy of the execution to the debtor addressed to a certain number on a certain street in South Boston, but did not state that the debtor resided at the street and number named. The debtor was present at the time and place appointed for the sale and at the successive adjournments thereof. *Semble*, that if the notice had been addressed to the debtor at Boston, without adding the street and number, it probably would have been good. *Whether*, if so, the addition of the street and number and the part of Boston would invalidate the notice, the court did not consider, as the return could be amended by stating, if that was the fact, that the debtor resided at the street and number in South Boston named. *Frazee* v. *Nelson*, 456.

### Adjournment of Sale.

5. Where an officer's return sets out that a sale on execution was adjourned from time to time by direction of the plaintiff's attorney, the court cannot say that such adjournments were not adjournments for "good cause" within the meaning of Pub. Sts. c. 172, § 30. *Frazee* v. *Nelson*, 456.

### Validity of Deed to Purchaser.

6. A deed to a purchaser at a sale on execution conveying "all the right, title and interest which the said D. had, at the time when the same was attached as aforesaid," is not bad on the ground that it does not appear that there was any attachment, if earlier in the deed the right, title and interest of the debtor in certain land is spoken of as having been seized on execution. *Frazee* v. *Nelson*, 456.

## EXECUTOR AND ADMINISTRATOR.

Admissibility of declarations of deceased declarant under St. 1896, c. 445, in action against administrator, see EVIDENCE, 22.

Relief in equity from special statute of limitations, see LIMITATIONS, STATUTE OF, 2, 3.

Action against attorney for conspiring to prevent certain money of his client from being taken on execution, does not survive, see ACTION, SURVIVAL.

As to power of Probate Court to compel specific performance by administrator of agreement to convey real estate, see PROBATE COURT, 1.

## FALSE IMPRISONMENT.

One who, believing that crime has been committed, discloses facts to police inspector for investigation, not liable for malicious prosecution, see MALICIOUS PROSECUTION.

What may be shown under general denial in action for, see PLEADING, CIVIL, 3, 4.

Good faith of officer making arrest may be material, see PLEADING, CIVIL, 4.

## FENCE.

Fence exceeding six feet in height, maliciously erected, but not on or near division line, not a nuisance, see NUISANCE.

## FITCHBURG RAILROAD.

Construction of St. 1900, c. 426, authorizing lease of Fitchburg Railroad, see CORPORATION, 4, 5.

## FIXTURES.

Where, as part of the construction of a new house, articles of plumbing are affixed to the structure by a plumber, under a contract to put in the plumbing, they become a part of the realty and cannot be removed by the plumber on the failure of the contractor who employed him. *Munroe* v. *Armstrong*, 165.

## FLATS.

Construction of deed relating to flats in Mystic River, see DEED, 2.

## FOREIGN LAWS.

Construction of, by court after proof, see EVIDENCE, 13.

## FRAUD.

### *As against Creditors.*

1. It is not as a matter of law fraudulent as against a creditor, for the owner of certain land who has no other real estate of sufficient value to satisfy the creditor's claim, but who has other property consisting of stocks,

bonds or money in his possession, to convey the land to his wife without informing the creditor of his ownership of the personal property. The law does not compel him to go to his creditor and tell him just what bonds and securities he has. Whether in such a case there was any fraudulent concealment is a question of fact for the jury. *Jaquith v. Rogers*, 192.

2. In a real action, by a judgment creditor representing a debt established by a suit in Kansas, to recover land conveyed to the tenant through a third person by her husband, on the ground that the conveyance was fraudulent as against creditors, there was evidence, that at the time of the conveyance the grantor had other property worth several times the amount of the claim of the demandant's predecessor in title, that his other indebtedness was small, that some of his property worth several thousand dollars stood recorded in his name, and that the conveyance was made in pursuance of a promise to his wife, given before the bringing of the original suit in Kansas by the demandant's predecessor, at which time the land stood in the grantor's name and could have been attached here, the demandant's predecessor electing to sue in Kansas and to attach the grantor's real estate there. *Held*, that, on this evidence, a request for a ruling that the demandant was entitled to a verdict as a matter of law rightly was refused, the question of fraud being one not of law but of fact for the jury. *Ibid.*

Whether false representations are material; acting upon falsehood; loss attributable to deceit, see DECEIT, 1–3.

Relevancy of certain evidence in real action for land conveyed in fraud of creditors, see EVIDENCE, 9.

## FRAUDS, STATUTE OF.

### *Agreement to leave Property by Will.*

1. A letter began: "Dear sister Ellen" and contained the following: "Will you and Minnie come and stay with me as long as I live I will pay all your expenses, and what property I have left will be yours Ellen, my expenses are very large but all that I leave shall be yours." The letter was signed in the name of the person making the offer and the offer was accepted orally by the person addressed who was the only sister Ellen of the writer. In a suit to enforce the contract contained in the letter, it was *held*, that the letter satisfied the requirements of the statute of frauds and of St. 1888, c. 372, requiring an agreement to leave property by will to be in writing, that the description of the person addressed was sufficient, and also the description of the property, as the amount of all the property which the writer should leave at her decease could be made certain. *Howe v. Watson*, 30.

### *Representations concerning Credit of another.*

2. The requirement by Pub. Sts. c. 78, § 4, of a writing, to charge one upon a representation concerning the character or credit of another, applies

Frauds, Statute of (continued).

only when the purpose of the representation is to enable the person recommended to obtain credit, money or goods.   *Stannard* v. *Kingsbury*, 174.

3. An action can be maintained for oral misrepresentations made by an investment broker concerning the credit of a certain investment association in order to induce the plaintiff to place a sum of money in the defendant's hands for investment.   *Ibid.*

*Memorandum.*

4. In order to satisfy the statute of frauds, a memorandum of a contract for the sale of lands, need not name or describe the vendor, if it is signed by an agent acting for him.   *White* v. *Dahlquist Manuf. Co.* 427.

5. Under Pub. Sts. c. 78, § 1, cl. 4, and § 2, the consideration for the promise sought to be enforced need not be stated in the memorandum, even in the case of a contract for the sale of lands.   *Ibid.*

Auctioneer as agent for seller may bind him by memorandum signed within reasonable time, see AUCTION, 1, 2.

*Part Payment : Acceptance and Receipt of Part.*

6. A part payment made by a purchaser procured by one of the parties to an oral contract of sale in accordance with the terms of the contract satisfies the statute of frauds as much as if made by one of the parties to the contract.   So also of an acceptance and receipt of part of the goods by such purchaser.   *French* v. *Boston National Bank*, 404.

Part payment and acceptance and receipt of part of goods by purchaser not party to contract, see EQUITY JURISDICTION, 6.

FREEHOLD  ESTATE.

Owner of easement in fee in private way not "person having a freehold estate " under St. 1889, c. 442, see INCUMBRANCES.

GLOUCESTER  WATER  SUPPLY.

1. St. 1881, c. 167, created a corporation for the purpose of supplying the city of Gloucester with water.   Section 3 required the corporation, after the taking of any land or water rights under the provisions of the act " otherwise than by purchase " to file in the registry of deeds a description of the land so taken.   *Held*, that the corporation had the power, recognized as above, to acquire land and water rights by purchase, as an incident to its business of securing and selling water, and that under this power it could purchase and hold a privilege of damming and flooding formerly used by a saw mill, although the running of a mill was beyond its charter powers.   *Gloucester Water Supply Co.* v. *Gloucester*, 365.

2. St. 1895, c. 451, § 16, provided for the purchase by the city of Gloucester from the Gloucester Water Supply Company of all the corporate property rights, privileges, easements, lands, waters, water rights, dams, reservoirs and appliances owned by that company and used in supplying the city with

water.. The water company had acquired by deed a mill privilege in a certain stream and a pond created by damming it. It had used the waters of the pond temporarily to supply the city with water while constructing its reservoirs, and had then discontinued the use. It did not own the land under the pond. The city objected to paying for the mill privilege on the grounds, that the waters of the pond were not in actual use when the property of the water company was transferred to the city, that the mill privilege did not give the right to use the pond as a water supply and that the waters of the pond could not so be used without acquiring a fee in the bottom of the pond. *Held*, that the city had the right to acquire the fee in the bottom of the pond, that without acquiring the mill privilege the pond could not be used as a water supply, that the mill privilege was of value as a step towards the ownership of the pond as an auxiliary water supply, and that the mill privilege was the property of the water company owned and used by it within the meaning of the section above named. *Gloucester Water Supply Co.* v. *Gloucester*, 365.

3. St. 1895, c. 451, an act enabling the city of Gloucester to supply itself and its inhabitants with water, by § 16 made that right conditional on the city's purchasing the property of the Gloucester Water Supply Company, if that company should elect to sell its property to the city, and in that case provided, that "said city shall pay to said company the fair value thereof" and that "such value shall be estimated without enhancement on account of the future earning capacity, or future good will, or on account of the franchise of said company." Commissioners, appointed to value the property under the provisions of the act, excluded evidence of past earnings of the water company, and allowed the sum of $75,000 in addition to the cost of duplication of the plant less depreciation, in consideration of the fact that the plant was a going concern and in full operation at the time of the transfer. They allowed nothing for the powers of the water company which had never been exercised, to take additional sources of water supply, but considered the existence of such supplementary sources so far as they prevented impairment of the property on the ground that the company's sources shortly might be exhausted. The commissioners found " the fair value " of the property transferred by the company to the city September 24, 1895, " to be the sum of $600,500, with interest from September 24, 1895." They fixed the amount of costs, including their own fees, and apportioned them between the parties. *Held*, that the evidence of past earnings rightly was excluded. The franchise of the water company was not exclusive, but so long as it had no competitor it was practically in the enjoyment of an exclusive franchise, so that the earnings during this period were not proper evidence of the " fair value " of the property. *Held, also*, that the allowance above the cost of duplication, less depreciation because the corporation was sold as a going concern was justified, and that there was nothing in St. 1895, c. 451, forbidding it. Whether the provisions of the act, excluding future earning capacity and future good will, would allow present earning capacity and present good will to be taken into account or not, the element of value that came from the property being sold as a going concern was not excluded from consid-

eration by the provisions of the act. *Held, also,* that the commissioners rightly allowed nothing for the unused powers of the water company to acquire additional sources of water supply. These rights could be revoked and were in fact revoked by St. 1895, c. 451. *Held, also,* that the commissioners properly could adopt, as a basis of their valuation, the value of the property at the date of its transfer to the city adding interest to the date of payment. *Held, also,* that any objection to the reasonableness of the fees charged by the commissioners must be made before a single justice. *Gloucester Water Supply Co.* v. *Gloucester,* 365.

Construction of ancient grant of mill privilege by town of Gloucester, see DEED, 1.

Construction of taking of land by Gloucester for reservoir, see EMINENT DOMAIN, 1.

Whether temporary use of water in pond by Gloucester constituted taking, see EMINENT DOMAIN, 2.

## GRADE CROSSING ACT.

What may be allowed as an item of expense to town in abolishing grade crossing, see DAMAGES, 2.

## GRANT.

Construction of ancient grant of mill privilege by town of Gloucester, see DEED, 1.

## GUARDIAN.

St. 1900, c. 345, providing for appointment of temporary guardian of insane person constitutional, see CONSTITUTIONAL LAW, 1 ; INSANE PERSON.

## HIGHWAY.

See WAY.

## HUSBAND AND WIFE.

Wife may enforce as equitable assignee contract which ran originally to her husband, see EQUITY JURISDICTION, 1.

## INCUMBRANCES.

The owner of an easement in fee in a private way adjoining his land is not a " person having a freehold estate " within the meaning of St. 1889, c. 442, giving such person a remedy to determine the validity, nature or extent of certain incumbrances " when the title to land " appears to be affected. *Minot* v. *Cotting,* 325.

Construction of petition for determining extent and validity of incumbrances, see EQUITY PLEADING AND PRACTICE, 6.

## INSANE PERSON.

*Semble*, that under St. 1900, c. 345, providing for the appointment of temporary guardians of insane persons, although the appointment may be made without notice, it cannot take effect without the knowledge of the party concerned, who may apply at once to have the decree revoked and is entitled to a hearing if he wants it — a right implied from the nature of the case. *Bumpus* v. *French*, 131.

St. 1900, c. 345, providing for appointment of temporary guardian of insane person constitutional, see CONSTITUTIONAL LAW, 1.

## INSOLVENCY.

The assent of an assignee in insolvency to the maintenance of a suit by the insolvent after his discharge, to enforce a contract to deliver to him certain securities, is sufficiently shown by the assignee acting as counsel for the plaintiff. *French* v. *Boston National Bank*, 404.

No presumption that note operates as payment in case of insolvency of maker before negotiation, see PAYMENT.

## INSURANCE.

### *Fire.*

Mutual insurance company : Validity of assessment.

1. The receiver of an insolvent mutual fire insurance company filed a petition to levy an assessment on policy holders including the defendant, a former policy holder whose policy had expired more than one year but less than two years before he was notified of the assessment. When the petition for an assessment was filed the provision of St. 1894, c. 522, § 48, was in force, that no assessment should be valid against a person who had not been notified thereof within two years after the expiration or cancellation of his policy. While the matter of the assessment was before an auditor, St. 1897, c. 197, § 2 was passed amending this provision by changing the words "two years" to "one year." *Held*, that the change in the limitation could not have been intended to apply to pending assessments and that this assessment could be enforced. *Sanford* v. *Hampden Paint & Chemical Co.* 10.

Provision prohibiting sale of property.

2. The provision in the standard form of fire insurance policy, that the property shall not be sold without the assent in writing of the company, is violated by a temporary alienation of the property. *Stuart* v. *Reliance Ins. Co.* 434.

3. Whether the prohibition of the sale of the insured property without the assent in writing of the company in the standard form of fire insurance policy, prescribed by St. 1894, c. 522, § 60, applies to a sale on execution or to a foreclosure sale not within the control of the policy holder or of the company, *quære. Ibid.*

Insurance (*continued*).

4. Assuming that a sale on execution of property insured against fire, and the expiration of the time for redemption, might be a violation of the provision in the standard form of policy, that the property shall not be sold without the assent in writing of the company, there is no violation of the provision so long as there is a right of redemption leaving an insurable interest in the policy holder. *Stuart* v. *Reliance Ins. Co.* 434.

5. A fire insurance policy in the standard form, containing the usual prohibition of the sale of the property insured without the assent in writing of the company, was made payable in case of loss to a mortgagee named. A creditor of the assured mortgagor sold the property on execution. Thereafter the mortgagee foreclosed and through another conveyed the property back to the assured mortgagor. The insurance company did not assent in writing to the sale on execution or to the foreclosure sale. After the sale on execution and again after the foreclosure sale the assured notified the agent of the insurance company through whom the policy was issued of the respective sales and requested him to notify the company and keep the policy in force. After foreclosure the mortgagee released his interest as mortgagee in the policy, and the agent assented in writing to the release. Thereafter the assured made a new mortgage of the property and the policy was made payable to the new mortgagee. To this the agent assented in writing in behalf of the company. The company was organized in another State and the agent held a certificate as agent of the company issued by the insurance commissioner under St. 1894, c. 522, § 91. In an action on the policy, it was *held*, that, whether the sales were within the prohibition of the policy or not, the circumstances would warrant a jury in finding, that the recognition of the policy thereafter by the agent as a valid and subsisting policy was within the scope of his authority, and that under the statute named the company was bound by it; *also*, that the agent's action well might have been found to have been taken with the knowledge and acquiescence of the company or at least with such notice on its part as required it to exercise its right to avoid the policy within a reasonable time, or to be regarded as having waived it. *Ibid.*

Sworn statement "forthwith rendered."

6. Buildings insured against fire under a policy in the Massachusetts standard form were destroyed by fire on October 3. The sworn statement required to be "forthwith rendered to the company" was mailed to it by the assured on December 8, and was received on December 10 or 12. The assured was a woman whose husband was "somewhat of an invalid." On October 7, she was called to visit a sick grandchild who died on October 9. The severe illness of the child's mother detained her until the latter part of October. She returned to a village near her destroyed home and remained until the day after election in November. She then moved to another State and was ill there for about two weeks. In an action on the policy, it was *held*, that there was no evidence that would warrant a jury in finding that she used due diligence in sending the statement as soon as she reasonably could, which was a condition precedent to recovering on the policy. Assuming that the illness and death of the plaintiff's grand-

child, the illness of her daughter and her own illness excused her from doing anything about preparing and sending the statement during the entire period of each illness, there was nothing to show that she used due diligence to send the statement during the intervals. *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382 explained. *Parker* v. *Middlesex Mutual Assur. Co.* 528.

Agreement of submission to arbitration of claims arising under insurance policies in several different companies valid, see ARBITRATION, 2.

### *Life.*

Substitution of beneficiary.

7. A life insurance policy, made payable on the death of B. L., the assured, to M., H. and J., contained a provision permitting the substitution of a new beneficiary with the consent of the company, and provided that no such change should be valid unless signed by the president, secretary or treasurer of the company. The following instrument executed by the assured was assented to by the company in letters signed by its secretary: "I hereby transfer, assign and turn over unto A. G., creditor and relative, all my right, title and interest in Policy No. 2032 issued by the A. M. Life Insurance Company on the life of B. L. and all benefit and advantage to be derived therefrom subject to all the conditions of the contract." The assignee was a creditor to a large amount and the nearest relative of B. L., the assured. *Held*, that the assignment with the assent of the company constituted a change of beneficiary and the substitution of a new one. *Atlantic Mutual Life Ins. Co.* v. *Gannon*, 291.

### INTEREST.

1. A plaintiff recovering judgment for the conversion of a four per cent bond is entitled to interest at the rate of six per cent per annum from the date of the writ. *Scollans* v. *Rollins*, 346.

2. An agreement among the heirs at law and legatees of a certain estate, that certain income of the estate should be divisible among them upon demand and should not go to the survivor of them, provided, that if any share of such income should be paid after the death of any of them, it should "carry interest from the day of the death of that one of us, to be paid out of the said trust estate." *Held*, that in the absence of any stipulation to the contrary, the rate of interest must be taken to be six per cent per annum as established by law. *Pearson* v. *Treadwell*, 462.

Mortgagee liable for interest on surplus proceeds of foreclosure sale, see MORTGAGE, 4.

Rate of interest in mortgage ascertained by reference to mortgage note, see MORTGAGE, 5.

### INTERROGATORIES.

Under Pub. Sts. c. 167, § 53, providing that by interrogatories, if the party to the suit is a corporation, the opposite party may examine the president, treasurer, clerk, or any director or other officer thereof, in the same

manner as if he were a party to the suit, a president so interrogated may be compelled not only to answer as to matters within his personal knowledge but also to inquire of his officers, servants and agents, and to state the information received from them. *Toland* v. *Paine Furniture Co.* 501.

## JOINT TENANTS : TENANTS IN COMMON.

1. By the great weight of authority, every co-tenant is entitled as a matter of right to a partition. Per HAMMOND, J. *O'Brien* v. *Mahoney*, 200.
2. The general rule is that a tenant in common is entitled to partition as a matter of right, and the facts, that the estate of an ancestor, whose two heirs at law hold as tenants in common, is in course of settlement, that the uncontested charges against the estate exceed the amount of personal property shown by the inventory, and that one of the heirs at law has a pending claim against the estate greater, if sustained in full, than the inventoried value of both the real and personal property of the estate, afford no ground for denying a partition to the other heir at law. *Ibid.*

Devise to several persons by name taking as tenants in common, see DEVISE AND LEGACY, 2, 3.

Writ of partition still may be used in this Commonwealth, see PARTITION.

Jurisdiction of Probate Court of petitions for partition, see PROBATE COURT, 2, 3.

## JUDGMENT.

1. In an action on a bond given under St. 1895, c. 234, § 4, upon a petition to vacate a judgment, the judgment against the principal in the absence of fraud or collusion is conclusive evidence of the amount of the judgment debt against both principal and surety. *Law* v. *O'Regan*, 107.
2. In the case of *Gerrish* v. *Gary*, 120 Mass. 132, the true boundary on the southeast of the " Penny Ferry lot " in Charlestown, mentioned therein and in this case, was not in issue, and for that reason it may be doubted whether the statement by the court in *Gerrish* v. *Gary* as to that boundary line is decisive of the rights of the parties to that suit; but, however that may be, neither Amos nor Phineas Stone, whose rights were involved in the present case, was a party to *Gerrish* v. *Gary* or concluded by the decision therein, if it can be taken as concluding anybody as to the southeasterly boundary line of the " Penny Ferry lot." *Stone* v. *Stone*, 555.

## JURY.

Expression of opinion in charge to jury, see PRACTICE, CIVIL, 3.

Construction of finding of jury, see PRACTICE, CIVIL, 5.

## LACHES.

Delay of executor of *cestui que trust* in bringing bill to enforce trust held not to constitute laches, see EQUITY JURISDICTION, 7.

Whether certain acts constitute defence of laches to bill to enforce equitable restriction, see EQUITY JURISDICTION, 8.

## LAND REGISTRATION ACT.

*Semble,* that the provision of the Land Registration Act, St. 1898, c. 562, § 19, that a person claiming " to own the legal estate in fee simple " may apply for registration of his title, does not include one claiming to own an easement in fee simple. *Minot* v. *Cotting,* 325.

## LEGITIMACY.

The statutory legitimation of a child can be brought about without the fact or fiction of a marriage, by a simple fiat. Per HOLMES, C. J. *Irving* v. *Ford,* 216.

Exterritorial effect of law as to legitimacy of child, see CONFLICT OF LAWS, 1.

## LEWDNESS.

1. Where on a complaint, under Pub. Sts. c. 207, § 29, charging the defendant with being a " lewd, wanton and lascivious person in speech and behavior " the proof is confined to the conduct of the defendant on a single occasion, the conduct proved is not the offence but only a ground of inference that the defendant is a person of the kind described, and everything that bears upon the inference to be drawn from his conduct should be admitted. If, therefore, a defendant is shown to have been guilty of lascivious conduct in a room with women, he is entitled to prove that he went to the room with innocent intent. *Commonwealth* v. *O'Brien,* 533.

2. On the trial of a complaint, under Pub. Sts. c. 207, § 29, against a married man for being a " lewd, wanton and lascivious person," the evidence related to the conduct of the defendant on a single occasion and warranted the inference that he was then practising personal familiarities or having intercourse with a certain woman. *Whether* he should have been allowed to show a judgment of his acquittal upon an indictment for adultery on this same occasion, *quære. Ibid.*

## LIEN.

Pub. Sts. c. 192, § 24, providing for the enforcement of certain liens by petition, requires a demand in writing to be " delivered to the debtor or left at his usual place of abode, if within this commonwealth, or made by letter addressed to him at his usual place of abode without the commonwealth and deposited in the post-office to be sent to him." On a petition under this statute to enforce a lien for keeping certain horses, it appeared, that the petitioner mailed a demand for the payment of the debt to the respondent at his residence in this Commonwealth and that the respondent received it the next morning. *Held,* that the delivery of the demand was good. The statute contemplates a delivery by the creditor himself or by any one for him, and the paper may be left at the usual place of abode of the respondent by a postal carrier as well as by an officer qualified to serve civil process. The provision for mailing a demand to a debtor without the Commonwealth merely prescribes a convenient method of

making a demand on such a debtor, and does not imply that a demand actually delivered through the post-office is ineffectual if the debtor resides within the Commonwealth. *Blanchard* v. *Ely*, 586.

See also MECHANIC'S LIEN.

## LIMITATIONS, STATUTE OF.

### *Construction.*

1. It is the uniform rule of construction for statutes of limitation, that a statute shortening the period for enforcing a liability is not held applicable where the result would be to deprive one of the right to enforce a claim without a reasonable time to act before being barred. Per HAMMOND, J. *Sanford* v. *Hampden Paint & Chemical Co.* 10.

### *Relief from Special Limitation.*

2. A creditor of the estate of a deceased intestate, who has failed to bring suit on his claim within two years from the time that the administrator of the estate gave bond for the discharge of the trust, is not entitled to relief under Pub. Sts. c. 136, § 10 on the ground that he refrained from bringing suit at the suggestion of the administrator of the estate relying on certain statements made in good faith by the administrator. *Powow River National Bank* v. *Abbott*, 336.

3. In a bill in equity under Pub. Sts. c. 136, § 10, seeking to enforce a claim against the estate of a deceased person on which suit had not been brought within two years from the time the administrator gave his bond, an allegation, that through mutual mistake of the administrator and the plaintiff a representation of the estate as insolvent was made so late that it was impossible for the plaintiff to present his claim to the commissioners until after the expiration of the two years, is bad, on special demurrer, for failing to allege with sufficient particularity in what the alleged mutual mistake of the plaintiff and the administrator consisted. *Ibid.*

Change in limitation of time for levying assessments on policy holders of mutual fire insurance company, see INSURANCE, 1.

Statute of limitations begins to run against tax collector three months after tax committed to collector, see TAX, 4.

Whether general statute of limitations applicable to suit by treasurer of Commonwealth for tax on collateral legacies, see TAX, 16.

## LOWELL.

Validity of ordinance regulating contracts for city printing, see MUNICIPAL CORPORATIONS, 4.

## MALICIOUS PROSECUTION.

One who, believing that a crime has been committed, sends for a police inspector and fairly and truthfully discloses to him all matters within the speaker's knowledge which he supposes to have a material bearing upon

the question of the innocence or guilt of the person suspected, and leaves it to the officer to act upon his own judgment and responsibility as to whether or not there shall be a criminal prosecution, and does no more, cannot be held answerable in an action for malicious prosecution, in case the officer comes to the wrong conclusion and prosecutes when he ought not to do so. It makes no difference that the person who sends for the officer and gives him the information is in the habit of doing this in similar cases. *Burnham* v. *Collateral Loan Co.* 268.

## MARRIAGE.

1. Before the abolition of slavery a marriage in this Commonwealth of a fugitive slave was lawful while he remained here, whatever effect recapture might have had upon it. Such a marriage continuing after the abolition of slavery is not to be disturbed. *Irving* v. *Ford*, 216.

2. Whatever may be the presumption as to the common law in this country concerning marriages between free persons, there is no presumption that the common law of Virginia in 1846 gave any effect to a ceremony of marriage between slaves performed by the master of one of them followed by a cohabitation of eight years. *Ibid.*

## MASTER AND SERVANT.

See AGENCY; NEGLIGENCE; EMPLOYERS' LIABILITY, 15–19.

## MECHANIC'S LIEN.

1. A mechanic's lien under Pub. Sts. c. 191, is created as soon as the labor is performed. The filing of the certificate required by § 6 is not necessary to create the lien. It merely keeps it alive and prevents its dissolution. *Wiley* v. *Connelly*, 360.

2. A mechanic's lien, under Pub. Sts. c. 191, is assignable and passes with an assignment of the debt which it secures. *Ibid.*

3. In a suit to enforce a mechanic's lien, it appeared, that the petitioner had contracted to build a house for a price named, one half to be paid when the shingles and clapboards were on and the other half when the house was finished. *Held*, that the contract did not stipulate for a credit inconsistent with the enforcement of the lien given by the statute and could not be construed as a waiver of it. *Osborne* v. *Barnes*, 597.

4. In a suit to enforce a mechanic's lien, it appeared, that in the same instrument in writing the petitioner agreed to build three houses one on each of three lots not contiguous, each for a price named. *Held*, that there were three contracts, one in respect to each of the houses, and the fact that they were contained in the same instrument was immaterial to the enforcement of the separate liens which the statute gave for each house. *Ibid.*

### *Priority as to Mortgage.*

5. In a suit to enforce a mechanic's lien, it was assumed, that where an owner of land makes a contract with a builder and then mortgages his

Mechanic's Lien (*continued*).

land, a subsequent change of plan by agreement between the builder and the owner of the equity cannot authorize the establishment of liens in favor of the builder for an amount in excess of that called for by the contract as it stood when the mortgage was made. In the particular case, it was not shown that the extra charges accrued after the making of the mortgage, so that no error appeared in a finding for the petitioner. *Osborne* v. *Barnes*, 597.

### Assignment of Contract.

6. On a petition by two petitioners to enforce a mechanic's lien, it appeared, that the labor and materials for which the lien was claimed were performed and furnished under a written contract between a builder, one of the petitioners, and the respondent ; that the work was begun and carried on by the builder up to a certain time, when he assigned his contract to the other petitioner. The assignee employed the builder to complete the contract, and from that date, until work upon the contract ceased, all labor and materials were furnished to the builder by the assignee. *Held*, that the assignment was not a bar to the lien ; that as to the respondent, there being no novation, the builder remained the contractor, and the assignee, in doing or furnishing the work after the assignment, acted under the authority which the contract gave to the builder, so that in effect the · builder performed the work, and his lien could be enforced for the benefit of his assignee. *Moore* v. *Dugan*, 153.

### Contract substantially performed.

7. On a petition to enforce a mechanic's lien, it appeared by the findings, that a contract for the erection of a building, made by the petitioner with the owner of the land, had been substantially but not completely performed, and also that extra work had been done in connection with the erection of the building at the request of the owner. A request to enter judgment for the respondent was refused. *Held*, that the refusal was right, there being clearly a lien for the extra work, and, also, that the petitioner might establish his lien for the amount due him in equity and good conscience for the benefit conferred by him on the landowner by placing the structure on the land, that the claim was within the language of Pub. Sts. c. 191, § 1, a debt for labor and materials furnished, and that the provisions of § 2 in regard to a lien for labor alone had no effect upon it. *Moore* v. *Dugan*, 153.

### Instantaneous Seisin.

8. In a suit to enforce a mechanic's lien, it appeared, that the alleged owner of the land on which the lien was claimed mortgaged it on the same day that he acquired title, but the deed to him bore date a number of days before it was delivered, and the mortgage was not a reconveyance to his grantor and was not shown to have been for the purchase money or to have been a part of the same transaction as his purchase. *Held*, that a finding of fact that the alleged owner's seisin was not instantaneous could not be disturbed. *Osborne* v. *Barnes*, 597.

*Issues for Jury.*

9. If a respondent to a petition to enforce a mechanic's lien wants further issues presented to the jury, he must ask for them under Pub. Sts. c. 191, § 21, and, having omitted to do so, he cannot object after a finding for the petitioner on each of the issues presented to the jury, that the findings are not sufficient to justify the establishment of the lien. If the issues and the answers thereto do not make out a case, the court will assume that the other necessary facts were conceded or found by the judge. *McAuliffe* v. *Dyme*, 214.

*Parties to Petition.*

10. A builder, who had partly constructed a house under a contract, assigned the contract, and the work thereafter was done by the builder for his assignee. A petition to establish a mechanic's lien was filed in the names of and verified and signed by both the builder and the assignee. The respondent took no objection to the form of the petition except by a request made at the trial to order judgment for the respondent. The judge ordered the lien established in the name of the builder. *Held*, that the respondent was not harmed by the fact that the petition was made in both names, that the respondent's relation to the builder was not changed by the assignment, and, if the assignee ought not to have joined in the petition, his joining was no ground for giving a judgment for the respondent. *Moore* v. *Dugan*, 153.

*Bond to dissolve.*

11. The holder of a mechanic's lien who takes a bond under Pub. Sts. c. 191, § 42, from one claiming to have an interest in the property on which the lien is to be enforced, is not estopped thereby from denying such interest or contesting the validity of the bond. *Taunton Savings Bank* v. *Burrell*, 421.

12. W., the owner of land on which there was a mechanic's lien, transferred it through a third person to his wife by a conveyance which was fraudulent and void as against creditors. Thereafter he gave to the mechanic a bond under Pub. Sts. c. 191, § 42, to dissolve the lien, purporting to release the land altogether therefrom. A mortgagee of the land brought a suit in equity against the mechanic to enjoin him from enforcing his lien. W. and his wife had a child. *Held*, that it was unnecessary to decide whether W. when he gave the bond had an interest in the property within the meaning of Pub. Sts. c. 191, § 42 ; that, if W. had such an interest as entitled him to give a bond under the statute, and if the bond was not invalidated by his attempt to release the land altogether instead of "his interest in such property," as authorized by the statute, the bond in any case could go no further than to release his interest, and the defendant could not be prevented from asserting his lien subject to W.'s tenancy by the curtesy initiate. *Ibid.*

Discharged by payment to assignee for benefit of creditors of lienor, see CONTRACT, 19.

Mechanic's Lien (*continued*).

Whether appeal from order establishing lien, on petition against landowner and his mortgagee, by owner alone brings up whole case, see PRACTICE, CIVIL, 2.

## MILLS.

1. The mill acts give the right to flow but not to excavate land. *Cobb* v. *Massachusetts Chemical Co.* 423.
2. The ownership of a mill privilege, giving the right to dam a certain stream and flood a certain meadow, does not give the right to withdraw all the water that collects in the pond thus formed and sell it to the inhabitants of a city. *Gloucester Water Supply Co.* v. *Gloucester*, 365.

Right of owner of raceway crossing land of another to remove obstructions therein, see EASEMENT, 2.

## MORTGAGE.

### *Of Real Estate.*

1. The provisions of St. 1888, c. 390, §§ 60–63, in regard to the payment by a mortgagee of a tax unpaid by the mortgagor, cannot operate to deprive a mortgagee of rights arising from the express terms of the mortgage. *Worcester* v. *Boston*, 41.
2. In a suit in equity against a mortgagee to have the surplus of the proceeds of a foreclosure sale applied to the plaintiff's claim, the mortgagee is entitled to be allowed for counsel fees incurred by him in preventing or removing an injunction to restrain the foreclosure proceedings, this being a reasonably necessary expense of those proceedings. *Bangs* v. *Fallon*, 77.
3. A mortgagee is entitled to be allowed a fee paid by him to an auctioneer for his services in conducting a foreclosure sale, if it appears that he paid in good faith no more than the usual price for such services, although there is a reasonable probability that by searching among auctioneers he might have found one who would have undertaken to conduct the sale for a smaller compensation. *Ibid.*
4. If a mortgagee, who holds a surplus from the proceeds of a foreclosure sale, keeps no special deposit of the balance in his hands after satisfying his claims, and there is nothing to show that he has not used the money in his business, he is chargeable with interest upon the surplus from the date of the sale when he received it. *Ibid.*
5. A mortgage note provided that interest thereon should be paid monthly at the rate of one and one half per centum per month. The mortgage stated the condition to be the payment of a certain sum of money, " with interest, as expressed in the note hereby secured," without naming any rate of interest. It was contended, that the mortgage stated the rate of interest only by reference to a private unrecorded document and thereby failed to comply with the registration laws, and that no rate of interest being named in the mortgage the rate must be six per cent per annum under Pub. Sts. c. 77, § 3. *Held*, that the mortgage deed gave notice that some interest was to be paid and the rate and times of payment were

stated in the note, and the reference to the note was sufficient to put persons having claims subject to the mortgage upon inquiry. *Bangs* v. *Fallon*, 77.

St. 1888, c. 390, § 57, giving mortgagee right to redeem from tax sale constitutional, see CONSTITUTIONAL LAW, 3.

Construction of agreement for building loan secured by mortgage, see CONTRACT, 8.

Mechanic's lien as affected by prior mortgage, see MECHANIC'S LIEN, 5.

Holder of tax title not disseised by conveyance under foreclosure sale, see TAX, 7.

" Owner " does not include mortgagee not in possession, see TAX, 8.

Equitable lien of mortgagee on surplus of proceeds of sale of mortgaged premises for taxes, see TAX, 8, 9.

Right of purchaser at foreclosure sale, or his assignee, to redeem from tax sale, see TAX, 11, 12.

Enforcement by mortgagee as claimant in trustee process of lien on surplus of proceeds of tax sale, see TRUSTEE PROCESS.

### Of Chattels.

6. A power of sale in a mortgage is a power coupled with an interest, which cannot be revoked by the mortgagor, and is not affected by a decree of a United States court, in a suit to which the mortgagee is not a party, enjoining the mortgagor from transferring any equitable or other interest in the mortgaged property. *Harvey* v. *Smith*, 592.

Holder of unrecorded bill of sale without delivery, as security, no title against trustee in bankruptcy, see BANKRUPTCY, 2.

Pledge or mortgage of chattels by unrecorded bill of sale without delivery, see PLEDGE.

## MUNICIPAL CORPORATIONS.

### Limitation of Indebtedness.

1. The city authorities of Boston desired to acquire certain land adjoining land of the city used for a hospital. The price of the land was $226,000. The borrowing capacity of the city under St. 1885, c. 178, limiting its indebtedness was but little over $24,000, and it had no money in its treasury available for the purchase of the land. It was arranged with the owners of the land that they should mortgage it to third parties for $202,000 and the city should buy it subject to the mortgages for $24,000. The mortgages were to be payable three years after the conveyance to the city, with a privilege to the owners, their grantees and assigns to pay them off before maturity. The city was not to be mentioned in the mortgages and the deeds to the city were to contain the statement, that the city was not to be held liable in any way for the payment of the mortgages or the interest thereon. Upon a petition of more than ten taxable inhabitants of Boston, under St. 1898, c. 490, to enjoin the city from carrying out the transaction, it was *held*, that the proposed action of the city must be enjoined as an attempted evasion of St. 1885, c. 178, and within its prohi-

Municipal Corporations (*continued*).

bition; that the transaction was in substance and effect a purchase of the land by the city for the sum of $226,000 of which it was to pay $24,000 in cash and the rest in three years with interest, with the privilege of paying sooner, and this notwithstanding the fact that the city could not be sued for the balance of the purchase money, the manner in which the indebtedness was created being immaterial, if the result was to subject the city to a present liability, direct or indirect, which the taxpayers eventually would be called upon to meet. *Browne* v. *Boston*, 321.

### Powers of City Council.

2. Under the charter of Everett, St. 1892, c. 355, the city council has no power to make an agreement of settlement of a pending petition for damages for land taken to widen a street under the betterment acts, where at the time of the taking no agreement was made under St. 1884, c. 226, and therefore a vote of the city council accepting a proposal of such an agreement of settlement is void and cannot be put in evidence by a petitioner for damages to show the value of his land taken for the widening. *Green* v. *Everett*, 147.

3. Section 23 of the charter of Everett, St. 1892, c. 355, gives the city council of that city the power to lay out and widen streets. *Semble*, that under this power the city council, in taking land to widen a street, could by a vote accepting a proposal in writing make an agreement under St. 1884, c. 226, with the owner of land taken, that the city should abate the betterments to be assessed upon the remainder of such owner's land upon a reduction of his claim for damages for land taken, notwithstanding §§ 21, 26 and 33 of the charter providing, that the city council shall take no part in the executive business of the city, that all the executive powers of the city shall be vested in the mayor, and that no liability shall be incurred by or in behalf of the city until the city council has voted an appropriation sufficient to meet it. These provisions were passed *alio intuitu* and do not limit the powers of the city council to lay out, alter or widen ways under general laws. *Ibid*.

4. In the amended charter of the city of Lowell, St. 1896, c. 415, § 3, creates a department of supplies, and § 7 prohibits the city council from taking part in the purchase of material or in the making of contracts for the city. In the year 1900 the city council of Lowell passed an ordinance approved by the mayor, providing, " That all printed matter for the city of Lowell shall hereafter bear the imprint of the Union Label of the Allied Printing Trades Council of Lowell, Mass.," and " That in calling for bids for city printing hereafter, the chief of the department of supplies shall make stipulation in accordance with " the foregoing requirement. The board of health of Lowell advertised for bids for printing certain blanks and letter heads, and accepted a bid of $24.50 from a bidder who had a right to use the union label, declaring by vote that they did so for that reason, and rejecting a bid of $16.55 from a bidder who had not the right to use the label. On a petition of more than ten taxable inhabitants under St. 1898, c. 490, to enjoin the payment of money by the city under the contract, it was *held*, that the ordinance was invalid,

as an attempt to interfere in the making of contracts for printing, by directing with whom the contracts should be made, and was in direct conflict with the provisions of the amended charter; that, whether the ordinance applied to the board of health or not or whether or not they called for bids in accordance with it, the fair inference was that in awarding the contract that board did not exercise their untrammelled judgment but were controlled by the illegal behest of the ordinance which they supposed to be binding upon them; so that the contract was void and the money of the city was about to be illegally expended, which brought the case within St. 1898, c. 490.    *Goddard* v. *Lowell*, 496.

### Officers and Agents.

5. If a city or town, instead of leaving the repair of its ways to the public officers designated by the statutes, undertakes to make the repairs by its own agents, it is liable for injuries caused by their negligence. *Butman* v. *Newton*, 1.

6. The city of Newton by ordinance provided, that, under the supervision of a joint standing committee of the common council and board of aldermen, the superintendent of streets should have the charge of the making, widening and altering of streets and ways. *Held*, that this made the superintendent of streets the agent of the city, and that the city was liable for an injury caused by the negligence of workmen under his direction operating a stone crusher to prepare material to be used in constructing a new street. *Ibid.*

Contract made by town with contractor also member of building committee of town and whose vote created majority which accepted his bid valid, or if voidable, may be ratified, see AGENCY, 8; CONTRACT, 6.

City estopped to rescind agreement relating to sewer assessment while retaining land conveyed as the consideration, and by statements of city officers, see ESTOPPEL, 1.

City of Boston held liable for flooding cellar constructed in violation of law, see NEGLIGENCE, 3.

Liability of city for negligence of its agents in operating stone crusher, see NEGLIGENCE, 14.

What constitutes reasonable notice of defect in way, see WAY, 1.

Powers of Gloucester Water Supply Company, see GLOUCESTER WATER SUPPLY, 1–3.

Liability of town not maintaining high school for tuition of child at high school in neighboring town, see SCHOOL.

Requirement that street railway shall water certain portion of street over which location is granted valid, see STREET RAILWAY, 3.

## NEGLIGENCE.

### Contributory Negligence and Due Care.

1. A tenant in a building having a right to use a water closet in the basement, who goes into the closet in the dark without a light and bumps his

Negligence (*continued*).

head against a protruding gas pipe which has been in the same place dur-
ing the whole of the two months that he has occupied his premises, is not
in the exercise of due care and cannot recover for an injury thus incurred.
*Kiander* v. *Brookline Gas Light Co.* 341.

2.  A coal shoveller, about to unload a team which is backing towards a pile
of coal, who places himself behind the wagon and walks backwards with
his hands on the doors at the end of the wagon, and in so doing is caught
between the wagon and a post which he knew was there and could have seen
by looking around, has voluntarily assumed the risk of injuries so caused
and is not in the exercise of due care.  *Neylon* v. *Phillips*, 334.

Of passenger leaving train standing elsewhere than at station, see *post*, 5.

Of passenger alighting from moving train, see *post*, 6, 7.

Of driver in open wagon approaching street railway crossing, see *post*, 11.

Of person anchoring boat in improper place, see *post*, 13.

Of person driving in street unfit for travel, see WAY, 2–4.

Not material in action for fire caused by locomotive engine, unless gross
or amounting to fraud, see RAILROAD, 4.

Assumption of risk,

By workman removing belt from rapidly revolving shaft, see *post*, 15.

By employee using oil governed air hoist, see *post*, 18.

### *Violation of Statutory Requirement.*

3.  The fact that a plaintiff has constructed his cellar in Boston below the
grade required by St. 1892, c. 419, § 31, does not prevent his recovering
damages from the city for injuries caused by the city negligently having
stopped the outlet of an arm of the sea, so that the water overflowed its
banks, crossed the street on which the plaintiff's house stood and poured
into his cellar, if the plaintiff's violation of the law did not contribute to
the injury.  *Semble*, otherwise, if the injury was caused by percolation, as
in that case the putting of the bottom of the cellar below the established
grade must have contributed to the injury.  *Biggio* v. *Boston*, 356.

Effect of plaintiff failing to observe regulations concerning fog signals, see
*post*, 13, SHIP.

### *On Railroad.*

4.  A passenger, who leaving a train walks along a station platform on which
other passengers are walking ahead of him and falls by stepping on a
banana skin and is injured, cannot recover from the railroad company, if
it does not appear how long the banana skin had been there or how it got
there.  *Goddard* v. *Boston & Maine Railroad*, 52.

5.  A railroad train after stopping at a station backed from the station for
the purpose of switching the rear cars upon another track, and stopped.
The plaintiff was a passenger and wished to pass through the train to the
rear car.  Finding one of the cars crowded, he stepped off the platform of
the car intending to go to the rear of the train on the outside.  It was
very dark and he could not see and did not know where he was stepping.
The train was on a bridge over a river, and the plaintiff fell through into
the water below and was injured.  The platform from which the plaintiff

stepped was about seven hundred feet from the station. The plaintiff was familiar with the station and the bridge. He knew that the train had backed toward the river, but did not know how far it had backed and underestimated the distance. *Held*, that the plaintiff did not use due care; that he took the chances and must abide the result. *Kellogg* v. *Smith*, 595.

6. A passenger who is injured in attempting to alight from a railroad train after it has stopped at a station and started again, knowing that the train is in motion when he steps off, is not in the exercise of due care and cannot recover from the railroad company. *La Pointe* v. *Boston & Maine Railroad*, 535.

7. In an action to recover for injuries sustained by the plaintiff, a woman sixty-one years old, in falling from a train when she was attempting to alight, after the train had stopped at her station and started again, it appeared, that the accident happened about three o'clock in the afternoon, that the plaintiff wore a veil and carried a handbag and a bundle containing some books tied with a string, that when she and other passengers started to leave the car one of the books slipped out, that she stooped and picked it up and while walking to the end of the car was trying to get the book under the string, that before reaching the end of the car she saw a brakeman come into the car, shut the door and sit down, that the other alighting passengers at this time were on the platform of the station, that she opened the door, stepped out on to the platform of the car, and began to descend the steps on the opposite side from the station platform, saw that the train was moving, either stepped off or fell off of the lower step after the train had started, and struck the ground some distance from the end of the station platform. *Held*, that a verdict should have been ordered for the defendant; that the plaintiff either stepped off the train when she knew it was in motion or, if she fell, descended the steps when if she had used her faculties she could not have failed to notice that the cars were moving, and in either case was not in the exercise of due care. *Ibid.*

### On Street Railway.

8. A passenger in a street car assumes the risk of collision with an obnoxious drunken passenger whom the conductor is removing by force in a reasonable manner. Following *Spade* v. *Lynn & Boston Railroad*, 172 Mass. 488. *Cobb* v. *Boston Elevated Railway*, 212.

Duty of street railway company towards employee of another using pole in common working upon its wires without its permission, see *post*, 20.

For case of person driving in open wagon run into by street car at crossing, see *post*, 11.

Duty of conductor of street car to remove intoxicated passenger, see STREET RAILWAY, 1.

### In Driving.

9. It is no evidence of negligence on the part of the driver of a coal team, backing it towards a pile of coal and knowing the plaintiff to be behind the wagon, that as the team approached the pile of coal the horses backed more quickly and that, from some unexplained cause, the wagon swerved

Negligence (*continued*).

and caught the plaintiff between it and a post and injured him. Horses backing as these were cannot be expected to move at the same rate of speed all the time. *Neylon* v. *Phillips*, 334.

10. In an action against a teamster for injuries to the plaintiff caused by being thrown from the back of a covered one horse wagon of the defendant, it appeared, that the defendant had been employed by a carpenter for whom the plaintiff worked, to transport some materials from a building to the carpenter's shop, and that the plaintiff got into the wagon at the invitation of the driver and of his employer, that the wagon stopped about five feet from the door of the shop, there being another team in the way, and the plaintiff was standing in the back of the wagon and was about to hand out a box to his employer, when the horse started and he was thrown out. The horse probably was started by the driver in trying to get his wagon to the right place in front of the shop door, the other team having moved away. *Held*, that there was no evidence of negligence on the part of the driver. The facts that the wagon moved and that the plaintiff, without the driver's knowledge, happened to be standing in such a way as to lose his balance when it started, would not justify a finding that the driver was negligent. There was nothing that required the driver to give notice that he was going to move forward five feet. *Firth* v. *Rich*, 206.

11. In an action against a street railway company for injuries caused by the plaintiff being run into by a car of the defendant, it appeared by the plaintiff's evidence, that the plaintiff was driving in an open wagon approaching a street along which the defendant's tracks ran; that when eighty feet distant from the tracks he had a clear view of the tracks for a distance of from three hundred to three hundred and fifty feet from the corner he was approaching; that he looked in both directions and no car was in sight; that from this point until his horse was actually upon the track his view was so obstructed by trees that he could not see a car coming from the right; that when on the track he saw a car ten or twelve feet away coming from the right at the rate of from ten to sixteen miles an hour; that the horse turned or was turned by the plaintiff to the left and was struck on his hind quarters by the car and the plaintiff thrown out and injured; that the plaintiff drove over the eighty feet intervening between his view of the tracks and the point of collision at the rate of from four to five miles an hour, which was the usual rate of speed of the defendant's cars at this place; that while so driving the plaintiff listened but heard no gong and no noise indicating the approach of a car; that it was shortly after seven o'clock on the evening of November 24, and a light snow was falling with a little rain. *Held*, that there was evidence to go to the jury that the plaintiff was in the exercise of due care; that it might have been more prudent, to drive over the eighty feet where the plaintiff's view to the right was obstructed at the usual rate of speed of the defendant's cars at that point, than to have driven more slowly and thus have given a car which was more than three hundred feet away when the plaintiff saw the tracks more time to get to the crossing, and the court could not say as a matter of law that the plaintiff should have got down

from his wagon, gone forward in advance of his horse and looked to see whether a car was coming before driving on to the crossing. *Kelly* v. *Wakefield & Stoneham Street Railway*, 542.

### In a Building.

12. In an action for personal injuries, there was evidence, that the plaintiff had come to the defendant's shop to purchase furniture and had followed a salesman and a friend through a doorway hung with portières into a room where the light was dim and less than in the room she had left, when her foot caught and she fell down a flight of stairs leading to the basement and was injured, that a rubber mat over which she passed was curled up at the edge, was of cheap material and much worn and had been in the same condition for two or three months previously, also that at the time of the accident the head of the staircase was unguarded although a desk was usually kept there. The plaintiff contended that her fall was due to the bad condition of the mat and the unguarded condition of the staircase. *Held*, that there was evidence for the jury of the defendant's negligence. *Toland* v. *Paine Furniture Co.* 501.

### Collision of Vessels.

13. In an action against a steamboat company to recover for injuries alleged to have been received from a steamboat of the defendant running down the plaintiff's fishing boat while at anchor, it appeared, that the plaintiff's boat was a fourteen foot boat propelled by oars, that the plaintiff and a companion anchored their boat close to the outer edge of the channel in Hull Gut in Boston harbor, and began to fish; that there was fog or haze in the Gut at the time; that the defendant's steamboat coming through the Gut on its regular trip when not far distant from its landing place at Hull came into collision with the plaintiff's boat or passed so near it as to cause the plaintiff to jump out and receive the injuries complained of; that the steamer was running at a low rate of speed and was giving the signals and warning prescribed by the United States statutory regulations in case of fog; and that the plaintiff gave no signal and had no means on board his boat of giving any signal. The regulations provide that in fog or mist, whether by day or night, a vessel when at anchor shall, at intervals of not more than one minute, ring the bell rapidly for about five seconds, and another provision requires, that " All rafts or other water craft, not herein provided for, navigating by hand power, horse power, or by the current of the river, shall sound a blast of the fog-horn, or equivalent signal, at intervals of not more than one minute." *Held*, that on all the evidence the plaintiff was not entitled to recover, as it was impossible to say that his violation of the statutory regulation by his lack of signals did not contribute to the accident. *Semble, also*, that the plaintiff was negligent in anchoring his boat in an improper place and in doing nothing when he saw the steamboat coming, he having made no effort to cut his anchor rope or to row out of danger, and that it could not be said that anchoring his boat in an improper place did not contribute to the collision. *Chesley* v. *Nantasket Beach Steamboat Co.* 469.

Effect of violation of statutory regulations on plaintiff's right to recover, see *ante*, 3, SHIP.

Negligence (*continued*).

### Of City operating Stone Crusher.

14. To dump a load of stone on the wooden platform of a stone crusher and start up the engine of the crusher letting off steam just as a horse which is being driven on a roadway twenty-five feet away and in plain sight is opposite to it, may be found to be a negligent act on the part of the agents of a city operating the crusher. *Butman* v. *Newton*, 1.

### Employers' Liability.

Assumption of risk.

15. In an action at common law by a workman in a factory against his employer for personal injuries, it appeared, that the plaintiff, a man of great experience and long service in the factory, was injured while attempting in a dim light to remove a belt from a rapidly revolving shaft. There was a safe way of removing the belt which he knew. He was using another way, when the belt caught in a space between the collar and a fixed pulley, and the plaintiff was carried up to the shafting and injured. *Held*, that if the way of removing the belt adopted by the plaintiff was dangerous, the risk was an obvious one which he must have known and chose to incur, and that he could not recover. *Cushman* v. *Cushman*, 601.

By coal shoveller about to unload team, see *ante*, 2.

By employee using oil governed air hoist, see *post*, 18.

Ways or works.

16. In an action under St. 1887, c. 270, § 1, by a plumber's helper against his employer, it appeared, that the defendant was doing the plumbing work of a building in process of construction. There were no stairs in the building, but access from floor to floor was had by means of ladders connecting stagings built in the elevator well on the level of each floor. The plaintiff was injured by one of these stagings giving way when he was upon a ladder resting on it. The defendant had nothing to do with the construction of the stagings. They were built before he began his work and were used by all the workmen of the different contractors. *Held*, that there was no evidence which would warrant a jury in finding that the ladders and stagings formed a part of the ways or works of the defendant within the meaning of the act. *Riley* v. *Tucker*, 190.

Duty to provide safe appliances.

17. In an action at common law by a workman in a factory against his employer for personal injuries, it appeared, that the plaintiff was injured while attempting to remove a belt from a revolving shaft. The plaintiff offered to show, that he told the defendant, that there ought to be a shipper on the belt, to ship it over the loose pulley and to hold it there, and also to show, that the belt would not stay on the loose pulley because there was no shipper to drop into a notch to hold it. The evidence was excluded. *Held*, that the exclusion of the evidence was right, as there was no evidence that the machine ever had a shipper, and the defendant was not bound to change the condition of the machine in this respect. *Cushman* v. *Cushman*, 601.

18. A superintendent in a factory changed the check valve of an oil governed air hoist, taking out the half inch valve that had come with it and inserting in its place a three quarters inch valve, which was guaranteed by its manufacturer to stand a pressure of three or four hundred pounds per square inch. If the whole air pressure of the hoist was turned on without a load being attached to the piston rod, the pressure would be from twenty-seven to twenty-eight hundred pounds per square inch. In about two weeks this valve split, and the superintendent replaced it by another three quarters inch valve of the same kind. He did this without ascertaining how much pressure the new valve would stand or how much it might be subjected to when the hoist was in use. He testified, that he did not consider himself an expert mechanic, and thought the preceding valve split because it had some flaw or defect in it. About ten weeks later, when the plaintiff was about to hook a load on the hoist, he was injured by an accident caused by the new valve splitting in the same way that the preceding one had done. The defendant showed, that the plaintiff had been told never to turn on the whole air pressure when no load was attached, and not to turn on any air pressure at all until it was needed to lift a load, but it appeared, that the only practical way of hooking on a load was to start the hoist slowly rising and to hook on the load as it ascended, that this required an opening of the air valve, that the apparatus in an oil governed air hoist prevents the operator from knowing immediately on opening the air valve how much air pressure has been turned on, and that in operating such a hoist it might happen that the whole pressure was on, without the operator necessarily having made an unreasonable use of the machine. The plaintiff testified, that he did not know whether he had the full head of air pressure on at the time of the accident or not though he " probably "·did have it on. *Held*, that these facts would warrant a finding that the defendant did not use due care in furnishing a safe hoist. *Held, also*, that the plaintiff did not assume the risk of the accident, that he was not chargeable with knowledge that the defendant's superintendent had substituted a three quarters inch check valve, not designed to stand the pressure to which it might be subjected, and had never taken the risk of such a hoist. *Held, also*, that the jury were warranted in finding that the plaintiff was in the exercise of due care. *Slattery* v. *Walker & Pratt Manuf. Co.* 307.

Acts of superintendence.

19. The proprietor of a factory is liable to an employee injured by an accident, caused by the breaking of the check valve of a hoisting machine, due to the act of the defendant's superintendent in negligently substituting an insufficient valve for the one which came with the machine. *Ibid.*

*Employee of another using Poles in common.*

20 A street railway company owning and maintaining poles supporting wires that hold and protect its trolley wires, which has granted to a telephone company for a consideration the right to use its poles for the purpose of supporting telephone wires, is not liable for negligence to an

employee of the telephone company who falls by reason of an electric shock received by him while attempting to tighten a slack span wire of the railway company. The highest duty owed by the railway company to a person thus at work upon its wires without its permission, is not wilfully or wantonly to injure him. *Sias* v. *Lowell, etc. Street Railway*, 343.

Municipal corporation liable for negligence of agents repairing streets, see MUNICIPAL CORPORATIONS, 5, 6.

## NEGOTIABLE INSTRUMENTS ACT.

As to construction of § 124 of negotiable instruments act, St. 1898, c. 533, relating to material alterations, see ALTERATION OF INSTRUMENTS, 3.

Degree of particularity in bill for relief by reason of material alteration, under St. 1898, c. 533, § 125, see ALTERATION OF INSTRUMENTS, 2.

## NUISANCE.

St. 1887, c. 348, providing that a fence unnecessarily exceeding six feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance, and giving a remedy for damages sustained thereby, does not apply to a fence which is not on or near a division line. A fence from three to ten feet from a division line and extending its entire length is not on or near it. *Brostrom* v. *Lauppe*, 315.

Extent of jurisdiction of town boards of health over nuisances affecting purity of water supply, see BOARD OF HEALTH, 2.

Summary proceedings of boards of health abating nuisances not subject to judicial examination, see BOARD OF HEALTH, 3; SUPERIOR COURT.

Construction of order of town board of health adjudging certain deposits on land of plaintiff to be nuisance, see BOARD OF HEALTH, 4.

Motive of town board of health in adjudging that nuisance exists immaterial, see BOARD OF HEALTH, 5, 6.

## ORDER.

### *Acceptance. Construction.*

The defendant, a real estate agent, procured for one H., who wished to build a house on a certain lot, a building loan and mortgage for $10,500. The mortgagee advanced under the mortgage $4,500 to the mortgagor, and $6,000 to the defendant. This sum the defendant deposited in a bank in his name as trustee, and drew checks upon it signed as trustee with which he made payments on account of the mortgagor for building materials, lumber and otherwise. H. delivered to the plaintiff, a lumber dealer, an order on the defendant to pay for lumber. The defendant accepted it in the words "Accepted as I am conveyancer for the mortgagee of Lot 5, Lancaster Terrace" and inserted a similar description after his name in

the body of the order.  The order contained the words " Charge the same to the $1,800 payment " and also the words " Said order to be paid on or before November 1st, '99."  The $1,800 payment referred to was the last payment to be made upon the building contract and did not become due until after November 1, 1899, and after the date of the writ.  The defendant when he accepted the order had in his hands enough of the trust fund to discharge the obligation.  In an action on the order, it was *held*, that the defendant was not an agent of the mortgagee but a trustee holding funds of the mortgagor to be applied to the building of the house, and by his acceptance bound himself personally.  Whether the words inserted by the defendant in the order, after its execution by the drawer, and the language of the acceptance, limited the defendant's liability to the amount of the trust fund in his hands, was not considered, as he had ample funds in his hands at the time.  *Held, also*, that the direction to " Charge the same to the $1,800 payment " merely indicated to what sum as between the drawer and acceptor the payment of the order should be charged, and that the defendant by his acceptance was bound to pay the order by November 1, 1899, at the latest.  *Shepard* v. *Abbott*, 300. .

## PARENT AND CHILD.

Loss of services necessary for recovery in action for seduction of child, see SEDUCTION.

## PARTIES TO ACTIONS.

Joinder of builder and his assignee in petition to enforce mechanic's lien, no error, see MECHANIC'S LIEN, 10.

Assignee for benefit of creditors may maintain action in his own name, see CONTRACT, 19.

## PARTITION.

Writs of partition, recognized by Pub. Sts. c. 178, § 1, still may be used in this Commonwealth, although abolished in England in 1834, and superseded here in practice by petitions for partition.  *O'Brien* v. *Mahoney*, 200.

Tenants in common entitled to partition as matter of right, see JOINT TENANTS, 1, 2.

Jurisdiction of Probate Court of petitions for partition, see PROBATE COURT, 2, 3.

## PAYMENT.

The rule in Massachusetts, in simple contract debts, is, that a promissory note given by a debtor to his creditor is presumed to be a payment, and the presumption is one of fact, which may be rebutted and controlled by evidence that such was not the intention of the parties.  *Semble*, that there is never a presumption that a note is intended to operate as payment in case of the insolvency of the maker before it is negotiated.  *Brewer Lumber Co.* v. *Boston & Albany Railroad*, 228.

## PHARMACY.

St. 1896, c. 397, § 9, provides that the license of a registered pharmacist shall not be revoked for a cause punishable by law until after conviction by a court of competent jurisdiction. A registered pharmacist pleaded guilty to a complaint in the Superior Court charging him with an unlawful sale of intoxicating liquor, and thereupon that court ordered the complaint placed on file, and there was no other order or proceeding in the case. *Held*, that this was a conviction within the meaning of the above clause and that the license of the pharmacist could be revoked on a charge of keeping intoxicating liquors for the purpose of unlawful sale. *Munkley* v. *Hoyt*, 108.

## PLEADING, CIVIL.

### *Demurrer.*

1. Under Pub. Sts. c. 167, § 12, it is sufficient to allege as a cause of demurrer for a defect of substance, that the declaration does not state a legal cause of action. The words "substantially in accordance with the rules contained in this chapter" need not be added unless the defect relied on is one of form. *Whiton* v. *Batchelder & Lincoln Corp.* 169.

### *General Denial.*

2. In replevin under our practice there may be a judgment for a return under a general denial, which is broader than the old plea of *non cepit* and puts in issue the plaintiff's right of possession. *D'Arcy* v. *Steuer*, 40.

### *In Tort.*

General denial : Justification:

3. In an action for trespass to the person, where assault and unlawful arrest and imprisonment are alleged, and the defence is a general denial not setting up a justification, whether the allegation in the declaration that the arrest and imprisonment were unlawful makes it an issue whether the arrest if proved was unlawful, *quære*. *Dixon* v. *New England Railroad*, 242.

4. In an action by a passenger against a railroad company for alleged unlawful arrest of the plaintiff by a police officer at the request of a conductor of the defendant, on the charge of evading the payment of fare, the defendant introduced evidence that the conductor, having come with the plaintiff into the presence of the police officer, demanded payment of the fare, which the plaintiff refused in the police officer's presence, that the police officer examined the ticket and said it was not good because it was punched, that the conductor then again demanded payment of the fare, which the plaintiff again refused, and that the police officer thereupon arrested the plaintiff. The plaintiff asked for a ruling, that the question of the good faith of the police officer in making the arrest, as testified to in the case, was not an element to be considered by the jury in determining the case. This ruling was refused. *Held*, that the refusal was right. The jury could find that the conductor did not himself assault or arrest the plaintiff and that his words and acts were not a direction to

make the arrest, but a demand that the officer snould exercise the jurisdiction which the statute had given him, and that the officer made the arrest upon his own authority and judgment in view of what he himself had seen and heard, and upon this aspect of the case the good faith of the officer and his belief, that a fraudulent evasion of fare had been consummated under his own eyes, could not be said to be immaterial. *Held, also,* that although the answer in this case was a general denial and did not set up the defence of a justification, which always must be pleaded, yet the evidence above stated in regard to the acts of the police officer was admissible, not merely in mitigation of damages, but could be considered upon the question whether the arrest was the act of the police officer alone, and, if this was found by the jury to be the fact, it was a defence, because in that case the allegations that the wrongs were done by the defendant and its officers were not proved. *Dixon* v. *New England Railroad,* 242.

## PLEDGE.

An owner of machinery attempted to pledge or mortgage it by giving an unrecorded bill of sale of it and retaining possession of the property. After the transaction, the pledgor paid the attempted pledgee a monthly rent for the use of the machinery. *Semble,* that the fact that the parties went through the form of paying and receiving the rent although evidence of a change of possession did not conclusively establish it. *Haskell* v. *Merrill,* 120.

## POWER.

### *Of Appointment.*

1. It is a familiar rule of law, that a donee of a power of appointment, who is given authority to choose and appoint an object of the power according to his judgment and discretion, cannot delegate the exercise of that discretion to another. But one having an estate with a power of appointment, under which he may give an absolute interest, or may put limitations on the use and enjoyment of that which otherwise would be such an interest, properly may exercise the power by giving one substantially the whole interest in the property and the whole control of it, in the form of a right of personal use and enjoyment during his life, with a right to appoint who shall have it after his death. *Thayer* v. *Rivers,* 280.

2. A will giving to the testator's children life estates with power of testamentary appointment contained this provision: "It is my will that my daughters and son shall have power of disposing of their respective shares of my estate among my lineal heirs, to have and enjoy the same upon such terms and provisions as may be prescribed by my children." A daughter of the testator, in attempted execution of this power, gave life estates to such of two nieces and a nephew as should survive her, and after their respective deaths the trustee was directed to convey the proportion or share of the trust fund which had been enjoyed for life by the decedent to such person or persons except the husband of one of the nieces as the

decedent might by will appoint; and, in default of such appointment, to convey the share to the issue of the decedent. The nephew survived his aunt and died leaving a widow and two children, and by his will appointed his share of the property to his wife for life and after her death to his children in equal shares. *Held*, that the appointment by the daughter of life estates to her two nieces and her nephew was good, but that the attempted gift to her nieces and nephew of the power to appoint anybody except the husband of one niece was void, because, whether or not it was void for other reasons, it purported to authorize an appointment to others than the lineal heirs of the original testator and thus exceeded the terms of the power under which she attempted to act. Therefore the attempted appointment in the will of the nephew under the invalid authority was as if it had never been made, and his share of the property went to his children under the appointment in his aunt's will providing that in default of appointment by him it should go to his issue. *Thayer* v. *Rivers*, 280.

Power of sale in mortgage a power coupled with an interest and irrevocable, see MORTGAGE, 6.

## PRACTICE, CIVIL.

### *Appeal.*

1. An appeal from an order or judgment of the Superior Court on an award, under Pub. Sts. c. 188, § 12, must be founded on matter of law apparent upon the record, and one wishing to object to the ground on which a judge of the Superior Court granted or denied a motion to confirm an award must raise the question by exception, and not by appeal, unless the ground of the decision appears upon the record. *Giles* v. *Royal Insurance Co.* 261.

2. A suit to enforce a mechanic's lien was brought in a district court against the owner of the land on which the lien was claimed and his mortgagee. The District Court ordered the lien established, and the owner appealed but the mortgagee did not. In the Superior Court both the owner and the mortgagee appeared and were represented at the trial and both excepted to the rulings of the judge of that court who ordered the lien established. The points raised involved the rights of the mortgagee. *Held*, in a decision sustaining the lien, that whether the appeal of the owner alone brought up the whole case was immaterial, as all parties had been fully heard. *Osborne* v. *Barnes*, 597.

### *Auditor's Report.*

Auditor's report as *prima facie* evidence, see AUDITOR, 1.
Presumption as to auditor's report after oral evidence, see EVIDENCE, 2.
As to objection that auditor's report contains inadmissible evidence, see AUDITOR, 2.

### *Charging Jury.*

3. Where the judge in charging a jury in an action for seduction used language which might seem to indicate that his opinion on the matters referred to was favorable to the plaintiff, and where it would have been

better if his expressions had been more guarded, yet if taking the charge as a whole no intentional argument or expression of opinion appears, there is not a violation of Pub. Sts. c. 153, § 5, nor such error as would justify disturbing a verdict for the plaintiff.   *Cook* v. *Bartlett*, 576.

### Double Costs.

4. In this case it was adjudged that the exceptions were frivolous and appeared to have been intended for delay, and double costs were awarded against the tenant from the time when the exceptions were alleged by him, with interest from the same time at the rate of twelve per cent a year upon the damages.   *Demelman* v. *Bristoll*, 163.

### Finding of Jury.

5. On a petition to enforce a mechanic's lien, the first issue was "Did the petitioners perform the labor and furnish the materials set forth in the petition under the contract therein set forth?" Upon this issue the jury answered "No," but their answers upon the other issues showed that they meant by this answer merely that the contract had not been fully performed. *Held*, that the answer should be thus interpreted and was no bar to the establishment of the lien.   *Moore* v. *Dugan*, 153.

### Election of Remedy.

6. The payee of an indorsed promissory note brought an action against the maker with counts on the note and for money lent and money had and received. While this action was pending he brought an action against the indorser. This court deciding that the note was void but that the payee had a cause of action on the common counts, the payee discontinued his suit against the indorser on the note and proceeded in his suit against the maker on the count for money lent. *Held*, that the plaintiff's concurrent pursuit of his alternate and inconsistent remedies waived neither of them, and that, by suing the indorser on the note while his suit against the maker was pending, he had not elected to rely on the note so as to prevent him from recovering on the common counts when the note was held to be invalid.   *National Granite Bank* v. *Tyndale*, 390.

### Exceptions.

7. If there has been no preliminary understanding or arrangement for saving a party's rights, it is too late to except to a finding as unwarranted by the evidence after it has been made. The rule is the same when the finding is made by a judge as when made by a jury.   *Keohane, petitioner*, 69.

8. A general exception to a portion of a judge's charge covering more than three pages of the printed record on a matter not pointed out to the judge by the excepting party is bad.   *Leverone* v. *Arancio*, 439.

9. A general exception " to the foregoing instructions " following nearly four printed pages of a judge's charge, dealing with different aspects of the case, in which no error was called to the attention of the judge at the trial, must be overruled.   *Dixon* v. *New England Railroad*, 242.

### Parties.

Joinder of builder and his assignee in petition to enforce mechanic's lien, no error, see MECHANIC'S LIEN, 10.

Assignee for benefit of creditors may maintain action in his own name, see CONTRACT, 19.

### Rulings and Instructions.

10. A judge properly may refuse to give a ruling which requires him to pick out particular facts and instruct the jury as to their effect. *Jaquith* v. *Rogers*, 192.

11. A request for a ruling not incorrect in law but put in such a form as to amount to an argument, and otherwise unnecessary, properly may be refused for that reason. *Wyman* v. *Whicher*, 276.

12. A request for a ruling sound in law should be refused if upon the evidence as it stands the ruling would have a tendency to mislead the jury. *Dixon* v. *New England Railroad*, 242.

### Verdict.

13. A general verdict on two counts for different causes of action one of which is good and the other bad must be set aside. *Leverone* v. *Arancio*, 439.

Sufficiency of delivery of written demand required by statute to enforce lien, see LIEN.

Assumption as to treatment by trial judge of evidence admissible for one purpose but inadmissible for another, see WITNESS, 2.

## PROBATE COURT.

### Jurisdiction.

1. The Probate Court has no jurisdiction to make a decree, under Pub. Sts. c. 142, § 1, against the administrator of a party to an agreement to convey real estate, for the specific performance of the agreement, without first giving notice to all persons interested. *Nazro* v. *Long*, 451.

2. Pub. Sts. c. 178, § 43, providing that where a party after partition of lands has been evicted from his share he is entitled to a new partition, applies to a partition made in the Probate Court, which under Pub. Sts. c. 178, § 45, has concurrent jurisdiction with the Supreme Judicial Court and Superior Court of petitions for partition in cases where the shares or proportions do not appear to be in dispute or uncertain. *O'Brien* v. *Mahoney*, 200.

3. Under Pub. Sts. c. 178, § 45, giving to the Probate Court concurrent jurisdiction with the Supreme Judicial Court and Superior Court of petitions for partition of lands in cases where the shares or proportions do not appear to be in dispute or uncertain, if the parties are heirs at law of an unsettled estate and their respective shares and proportions are ascertained, the Probate Court has jurisdiction, regardless of the fact that the estate of the ancestor is in course of settlement. *O'Brien* v. *Mahoney*, 200.

## RAILROAD.

### *Nature of Ticket.*

1. It is not correct to say, that a railroad ticket is only a symbol of the contract between the company and the passenger and a piece of evidence showing what the real contract is. A railroad ticket may be more than a symbol, and it may not show what the real contract is. Per BARKER, J. *Dixon* v. *New England Railroad*, 242.

2. A passenger may have a right to transportation between two stations on a railroad because of his purchase of a certain ticket, and yet if the ticket itself is not in órder, a conductor is not bound to take it in payment of fare. *Ibid.*

3. In an action by a passenger against a railroad company for alleged unlawful arrest of the plaintiff on the charge of evading the payment of fare, it appeared, that the plaintiff, without obtaining a stop-over check, got off at a station after his ticket, which entitled him to travel to a station beyond, had been punched twice by the conductor. He took the next train to continue his journey and offered the same ticket which the conductor of that train refused to accept. It was shown, that, under the rules of the railroad, the punching of the ticket twice by the first conductor cancelled it and made it unreceivable for passage on another train. *Held*, that on these facts it was right to instruct the jury, as matter of law, that under the circumstances the ticket was not good for the plaintiff's passage on that train at that time, and that it was not a ticket that the conductor was obliged to take in payment of fare. *Ibid.*

### *Liability for Fire.*

4. In an action against a railroad company under Pub. Sts. c. 112, § 214, to recover for the destruction óf the plaintiff's property by fire communicated by a locomotive engine of the defendant, the plaintiff is not bound to show ordinary care on his part. If the fire was caused by sparks from the defendant's engine, the plaintiff can recover unless his negligence was gross or such as to amount to fraud. *Bowen* v. *Boston & Albany Railroad*, 524.

5. The evidence in this case stated in the opinion was held to warrant a finding of the jury that the fire which destroyed the plaintiff's mill was caused by sparks from one of the defendant's locomotives. *Ibid.*

6. In an action under Pub. Sts. c. 112, § 214, to recover for the destruction of the plaintiff's mill by fire alleged to have been communicated by a locomotive engine of the defendant, the defendant introduced evidence tending to show that the engines which ran by the plaintiff's mill were equipped with spark arresters and extension fronts and standard netting, and would not and could not throw out sparks so as to set a fire. The plaintiff in rebuttal was allowed against objection, to introduce evidence tending to show that a certain kind of engine used by the defendant which ran by the plaintiff's mill when equipped with spark arresters and netting of the standard kind, all in good condition, would throw out sparks and set fires and had done so ; that there were no appliances that would prevent a locomotive under all circumstances from throwing out

live sparks and setting a fire ; and that an engine with an extension front and a spark arrester with a netting of the kind exhibited would sometimes give out live cinders so as to set a fire. *Held*, that the evidence in rebuttal rightly was admitted, as it bore directly upon the issue, whether an engine of the defendant caused or could have caused the fire. Whether the witnesses possessed the necessary experience and knowledge to qualify them to testify was for the presiding judge to say. *Bowen* v. *Boston & Albany Railroad*, 524.

Negligence on railroad, see NEGLIGENCE, 4–7.

## REAL ACTION.

1. Under Pub. Sts. c. 173, § 18, giving the tenant in a writ of entry compensation for improvements if he has held the premises under a title which he had reason to believe to be good, a tenant cannot be allowed for improvements made after the bringing of the writ. *Demelman* v. *Bristoll*, 163.
2. Under Pub. Sts. c. 173, § 14, a demandant prevailing is entitled to the net rental value of the premises during the time they are detained by the tenant, including their detention pending the tenant's motion for a new trial. *Ibid.*
3. A demandant in a real action claiming title under a sale on execution must prove that there was a valid judgment on which the execution issued, and the recital of the judgment in the execution is not the best or proper evidence to prove it as against a tenant who is a stranger to the proceedings on the execution, whatever might be the case if the judgment debtor were the tenant. *Frazee* v. *Nelson*, 456.

Seisin of tenant holding under tax sale, see TAX, 5, 7.

## REAL PROPERTY.

Articles of plumbing affixed to house part of realty, see FIXTURES.

## RECOUPMENT.

Recoupment of damages in action for conversion of articles of plumbing, see DAMAGES, 8.

## REPLEVIN.

1. *Semble*, that when in replevin there has been a judgment for a return upon a nonsuit followed by a breach of the replevin bond by a failure to return the property, a surety on the bond has a right to show that the defendant in replevin had no title. *Keohane, petitioner*, 69.
2. Where there has been a breach of a replevin bond by a failure of the plaintiff in replevin to return the goods on an order for a return, whether a surety on the bond by showing that the defendant in replevin was a bailee could reduce the damages recoverable to the value of his special interest, *quære*. *Keohane, petitioner*, 69.

General denial puts in issue plaintiff's right of possession, see PLEADING, CIVIL, 2.

## RESTRICTION.

What constitutes violation of restriction; waiver of right to enforce, see EASEMENT, 3, 4.

General restrictions enforceable if statement of them substantially the same in all the deeds, see EASEMENT, 5.

Effect of violation of restriction by plaintiff upon right to enforce against others, see EASEMENT, 6, 7.

Whether certain acts constitute defence of laches to bill to enforce equitable restriction, see EQUITY JURISDICTION, 8.

## SALE.

### *Validity.*

1. A dealer who sells intoxicating liquors in Massachusetts for transportation to the proprietor of a bar room in another State where the resale of the liquors by the purchaser would be illegal, and who correctly supposes that the purchaser intends to sell the liquors in his bar room in the other State but is wholly indifferent as to whether he does so or not, the purchaser knowing that the seller has no motive in making the sale except to sell his goods in Massachusetts in the usual course of business, may recover the price of the liquors in an action of contract. His divining correctly the defendant's intention does not connect the sale with the illegal consequences sufficiently to make it invalid. *Graves* v. *Johnson*, 53.

### *Indivisible Offer. Acceptance.*

2. The plaintiff covenanted to sell and deliver to the defendant the capital stock of a certain company he then owned consisting of two hundred shares and comprising in all $5,000 par value, and " in furtherance of this option " agreed to at once indorse the certificates in blank and deliver them to X. to be by him held in escrow and delivered to the defendant in the following manner: On payment of $1,000 within fifteen days from the date hereof X. to deliver to the defendant forty shares, and on payment of $2,000 within thirty days thereafter eighty shares, and on a further payment of $2,000 within thirty days after the second payment, the remainder of the shares. " It is understood and agreed that this option expires and becomes null and void if not accepted within fifteen days and in that event X. is to immediately return to me said certificates delivered to him in escrow." The defendant paid the first $1,000 and received the stock for it and afterwards refused to make further payments. There was evidence that the defendant said to the plaintiff's attorney " that he would not be forced to pay for the certificates; that he would pay for them when he got good and ready." *Held*, that the offer was an indivisible one to sell the whole lot of two hundred shares, and that there was evidence of its acceptance. Even if the defendant could make a payment and receive stock under the offer without accepting it, his statement to the plaintiff's attorney might be found to imply an admission that he bought the stock. *Held, also*, that evidence of the market value of the shares, offered by the

Sale (*continued*).

defendant to show that there was little change of value from the contract price, rightly was excluded, as the action was not for the breach of an executory contract but for goods bargained and sold and this action would lie. *Semble,* that even an action for goods sold and delivered might lie. *Obery* v. *Lander*, 125.

### Stoppage in Transitu.

3. The right of stoppage *in transitu* may be exercised in spite of the fact that the vendor has accepted the purchaser's promissory note and receipted his bill for the goods, if he produces the note in court and tenders it to the maker's assignee and trustee in bankruptcy. It is immaterial that the note was indorsed by the plaintiff to a bank for collection or was discounted by the bank, if the plaintiff has the note in his possession at the commencement of the suit and tenders it at the hearing. *Brewer Lumber Co.* v. *Boston & Albany Railroad*, 228.

4. The right of stoppage *in transitu* can be exercised as long as the goods are in the hands of the carrier either *qua* carrier or as warehouseman. The transit does not terminate until the goods are in the possession, actual or constructive, of the purchaser, and the purchaser is not in or entitled to possession until he has discharged the carrier's liens, unless the carrier makes an agreement with the purchaser to hold the goods as his bailee or agent. *Ibid.*

### Rescission.

5. The defendant in Gloucester gave to a salesman of the plaintiff, a corporation having a cash register factory in Ohio, a written order to ship to him one of the plaintiff's No. 14 cash registers as soon as possible, and agreed " on the fulfilment of the above " to pay $130, ten dollars in cash and the remainder in twelve notes for ten dollars each payble in successive months. The title was not to pass until the last payment was made. The plaintiff's Boston agent wrote to the defendant " This register will be shipped you as soon as received from the factory." Six days after this and eight days after the original order, the plaintiff's salesman delivered to the defendant one of the No. 14 cash registers, whereupon the defendant paid $10 in cash and gave twelve notes for $10 each as agreed. Three days later the defendant returned the register with a letter stating that it was not what he had ordered, which was true, and demanding the return of his money and notes, and bought elsewhere a cash register of another make. The plaintiff by letter then acknowledged that the register was sent by a mistake and added " This error we will correct in a few days." Whereupon the defendant refused to receive any register from the plaintiff and demanded the cancellation of the order and the return of the money and notes. Thereafter the plaintiff tendered to the defendant and the defendant refused to receive a register in all respects in accordance with the order. The plaintiff retained the money and notes, and sued the defendant in contract, alleging that default had been made on one or more of the notes whereby all of them had become due. At the trial by a judge without a jury, the plaintiff contended that the first delivery was intended by the plaintiff as a loan for temporary use until the register

ordered could be made at its factory and shipped. The judge found that, whether the first delivery was intended as a loan or not, the defendant did not so understand it but supposed the register was delivered in performance of the order, and, upon ascertaining that it was not such a machine as he had ordered, was justified in returning it and supplying his need elsewhere, and ruled, that the plaintiff did not have the right to compel the defendant to take and pay for the machine tendered later, and found for the defendant. *Held*, that this ruling was correct and the finding justified by the facts, and that, even upon the plaintiff's theory, it had no right upon the first delivery, which by its own account was either a mistake or a temporary loan, to receive the money and notes, and ought to have returned them upon request, and, if the defendant was liable at all for his refusal to receive the machine tendered later, his liability would be for a breach of the agreement to purchase, and not upon the notes which were without consideration. *Hallwood Cash Register Co.* v. *Lufkin,* 143.

SCHOOL.

St. 1898, c. 496, § 3, provides as follows: " No member of the school committee of a town in which a public high school or a school of corresponding grade is not maintained shall refuse to approve the attendance of any child residing in such town in the high school of some other town or city if such child has completed the course of instruction provided by the former town, and, in the opinion of the superintendent of schools or the school committee of said former town, is properly qualified to enter such high school. If the school committee of such town refuses to grant such approval such town shall be liable for the tuition of such child, in the same manner and to the same extent as if the parent or guardian of such child had obtained the approval of the school committee." Under this statute a parent made a request of the school committee of a town of the class described in the statute maintaining no high school or school of corresponding grade, for their approval of the attendance of his child at the high school of a neighboring town. The request was not granted and no reason was given for not granting it. The child had completed the course of instruction provided by the home town. The father sent his child to the high school in the neighboring town and sued the home town under the statute for the sum paid for tuition. It appeared, that the child might have gone on with his studies in the home town in some unusual way and probably have been as far advanced as he was by attending the high school in the neighboring town, and thus have been ready to enter the high school which was established the next year in the home town. *Held*, that these facts warranted, if they did not require, a finding that the school committee refused to grant their approval of the attendance, and that such refusal made the town liable under the statute. *Fiske* v. *Huntington,* 571.

Constitutionality of statute compelling payment by town of tuition of child at high school in neighboring town, see CONSTITUTIONAL LAW, 5.

## SEDUCTION.

In an action for seduction, the plaintiff cannot recover unless he shows a loss of services to which he was entitled, but, if his right to recover is established, his damages may include compensation for the injury to his feelings, and for the dishonor and disgrace brought upon him and his family.  *Cook* v. *Bartlett*, 576.

## SEISIN.

For case of instantaneous seisin, see MECHANIC'S LIEN, 8.
Seisin of tenant holding under tax title, see TAX, 5, 7.
Evidence to prove seisin, see EVIDENCE, 18.

## SHIP.

The statutory regulations enacted by Congress to prevent collision of vessels are to be interpreted in the same way in the common law courts of a State as they are in the courts of the United States, if the action is for a maritime tort committed upon navigable waters within the admiralty jurisdiction of the United States.   These are not mere prudential regulations, but binding enactments; and, when a vessel has committed a positive breach of statute, she must show, not only that her fault probably did not contribute to the disaster, but that it could not have done so.   *Chesley* v. *Nantasket Beach Steamboat Co.* 469.

Effect of plaintiff anchoring his boat in improper place and failing to give fog signals, see NEGLIGENCE, 13.

## SLAVE.

By the common law a disseisor got a title, although by wrong, and left only a right of action to the disseisee.   So, a runaway slave, so long as he was *de facto* free, though liable to recapture, had the civil rights of a free person in a free State to which he had escaped.   Per HOLMES, C. J.   *Irving* v. *Ford*, 216.

Exterritorial effect of law of Virginia for legitimation of child born of slave marriage, see CONFLICT OF LAWS, 1.

Marriage in this Commonwealth of fugitive slave lawful while he remained here, see MARRIAGE, 1.

No presumption that common law of Virginia in 1846 gave any validity to slave marriages, see MARRIAGE, 2.

## STABLE KEEPER.

For petition to enforce lien of, see LIEN.

## STATUTE.

Where a new right is created by statute which at the same time provides a remedy for any infringement of it, that remedy must be pursued. Quoted with approval from *Osborn* v. *Danvers*, 6 Pick. 98, 99. *Harrington* v. *Glidden*, 486.

Remedy given by §§ 58, 59 of St. 1888, c. 390, relating to redemption from tax sales not exclusive, see TAX, 12.

Construction of § 67 f of bankruptcy act relating to levies and liens, see BANKRUPTCY, 1.

Construction of statute authorizing lease of Fitchburg Railroad, see CORPORATION, 4, 5.

Construction of statute changing time for levying assessments on policy holders of mutual fire insurance companies, see INSURANCE, 1.

Owner of easement in fee not " person having a freehold estate " under St. 1889, c. 442, see INCUMBRANCE; nor owner of a legal estate within meaning of land registration act, see LAND REGISTRATION ACT.

As to rule of construction for statutes of limitation, see LIMITATIONS, STATUTE OF, 1.

## STATUTE OF FRAUDS.

See FRAUDS, STATUTE OF.

## STATUTE OF LIMITATIONS.

See. LIMITATIONS, STATUTE OF.

## STATUTES CITED AND EXPOUNDED.

See page 699.

## STREET RAILWAY.

### Duties of Conductor.

1. It is the duty of a conductor of a street car to remove at once an intoxicated passenger who is vomiting profusely, and he need not wait until a woman passenger who has just entered the car has taken her seat and left the aisle clear. *Cobb* v. *Boston Elevated Railway*, 212.

### Restrictions in Grant of Location. ·

2. Restrictions imposed by the aldermen of cities and the selectmen of towns in granting locations to street railway companies under Pub. Sts. c. 113, § 7, are not affected by St. 1898, c. 578, relating to street railways, it being expressly provided by § 11 of that act that the companies shall remain subject to such restrictions. *Newcomb* v. *Norfolk Western Street Railway*, 449.

3. A requirement, in a location granted under Pub. Sts. c. 113, § 7, by the selectmen of a town to a street railway company, that the company shall

water the street over which it is granted a location from curb to curb between April 15 and November 15 in each year, is a lawful restriction, and will be specifically enforced in equity by this court under Pub. Sts. c. 113, § 63. *Newcomb* v. *Norfolk Western Street Railway*, 449.

Passenger assumes risk of collision with drunken passenger being properly removed by conductor, see NEGLIGENCE, 8.

Duty of street railway company towards employee of another using pole in common and working upon its wires without its permission, see NEGLIGENCE, 20.

For due care of one driving open wagon approaching street railway crossing, see NEGLIGENCE, 11.

## SUPERIOR COURT.

The Superior Court has no power, either under its general equity jurisdiction or under Pub. Sts. c. 80, § 26, to grant an injunction to restrain a town board of health from exercising the summary jurisdiction to abate nuisances given to it by Pub. Sts. c. 80, §§ 20–27. *Stone* v. *Heath*, 385.

## SUPREME JUDICIAL COURT.

Jurisdiction under St. 1900, c. 426, § 3, authorizing lease of Fitchburg Railroad, see CORPORATION, 4.

## SURETY.

Effect of judgment in action on bond given on petition to vacate judgment, see JUDGMENT, 1.

Surety on replevin bond can show that defendant in replevin was mere bailee, see REPLEVIN, 1, 2.

## TAX.

*Assessment.*

1. Under Pub. Sts. c. 11, § 41, which requires assessors to ascertain as nearly as possible the particulars of the estate of any person who has not brought in a list as required by them, and to make an estimate thereof at its just value, according to their best information and belief, an objection, that the description of the personal property assessed is insufficient, is not tenable. *Harrington* v. *Glidden*, 486.

Statutes relating to assessment of taxes constitutional, see CONSTITUTIONAL LAW, 4.

*Remedy for Overvaluation.*

2. Where a tax is for a legal purpose and the assessors have jurisdiction and proceed in accordance with the statutes, their decision as to the nature and amount of the taxable property of a person who has not brought in a list under Pub. Sts. c. 11, § 72, cannot be attacked in any collateral proceeding, and can be changed only in a proceeding under the statute for an abatement. *Harrington* v. *Glidden*, 486.

3. A resident of a certain city, who had taxable personal property there in his individual name and also had in his name as trustee for a New York corporation of which he was a director certain shares of corporations organized in other States, was assessed and taxed both on the property held by him as an individual and on that held as trustee. He presented no sworn list of his individual property, but, several months after the warrant had been committed to the collector, filed a sworn statement purporting to relate only to the property held by him as trustee, alleging that he had as trustee no property in his hands liable to taxation. In an action brought against him as trustee to recover the tax, the jury found that the assessors "ascertained as nearly as possible the particulars of the personal estate held by the defendant as trustee for the purposes of making this assessment," and that "having obtained those particulars they estimated such property at its just value according to their best information and belief." The court being of opinion that the evidence fully justified the findings of the jury, *held*, that the defendant could not question the valuation of the assessors, his grievance, if any, being one of overvaluation for which his only remedy was by the statutory proceeding for an abatement. *Harrington* v. *Glidden*, 486.

*Collection.*

4. Under St. 1889, c. 334, § 7, which provides, that if a tax remains unpaid for three months after it is committed to the collector, he may sue in his own name to collect it, the statute of limitations does not begin to run until the expiration of the three months, as the collector has no right of action except that given him by the statute. *Harrington* v. *Glidden*, 486.

*Sale.*

5. A deed under a valid tax sale passes a paramount and new title, and a seisin from the moment of conveyance. *Perry* v. *Lancy*, 183.

6. In case of a conveyance under a tax sale it will be presumed that possession followed the tax title, especially in the case of marsh land probably not occupied by any one. *Ibid.*

7. A conveyance, on foreclosure sale, of land that has been sold for taxes and is in possession of the purchaser at the tax sale, although under St. 1891, c. 354, it passes the rights of entry and of action, does not disseise the holder of the tax title. *Ibid.*

8. St. 1888, c. 390, § 40, provides, that in case of a tax sale the collector may sell the whole or any part of the land and after satisfying the taxes and charges shall pay the balance "to the owner of the estate" upon demand. *Held*, that the word "owner" as used in this clause does not include a mortgagee not in possession, unless his interest as mortgagee has been taxed to him as real estate under Pub. Sts. c. 11, § 14. The mortgagee, however, has an equitable lien on the proceeds of the land, which he may enforce in equity against the grantee of the mortgagor or his assignee with notice. *Worcester* v. *Boston*, 41.

Mortgagee's lien on surplus of proceeds.

9 A mortgage of land provided, that the mortgagor should pay all the taxes and assessments upon the premises and that in default thereof he

Tax (*continued*).

should pay to the mortgagee all sums that the mortgagee should reasonably pay for such taxes, and that in case of a sale under the power contained in the mortgage the mortgagee should retain from the proceeds all sums secured by the deed. The mortgagor failed to pay a tax and the land was sold for taxes under St. 1888, c. 390. The mortgagee on learning of the sale redeemed the land from it under the provisions of the same statute. In a suit in equity by the mortgagee to recover the surplus of the proceeds from the tax sale, it was *held*, that, in enforcing his lien on such proceeds against the grantee of the mortgagor, the mortgagee was entitled to have the amount paid by him to redeem from the tax sale treated as part of the mortgage debt. *Worcester* v. *Boston*, 41.

Enforcement by mortgagee as claimant in trustee process of lien on surplus of proceeds of tax sale, see TRUSTEE PROCESS.

Redemption.

10. If a tender to redeem from a tax sale under St. 1888, c. 390, § 57, has been prevented by the conduct of the holder of the tax title in wilfully and successfully eluding a mortgagee of record having the right to redeem, who has been searching for him for the purpose of paying him and has written to him repeatedly offering to pay, the mortgagee is in the same position, as against the person eluding him, as if the tender had actually been made, and if his attempt to make the tender was made in good faith within two years after he had actual notice of the sale, the lien is discharged, and he can maintain a writ of entry for the land. *Perry* v. *Lancy*, 183.

11. The right of a purchaser at a foreclosure sale and of his assignee to redeem from a tax sale is settled; and this right exists although the mortgage was given after the lien for taxes had attached and the foreclosure was before the tax sale. *Barry* v. *Lancy*, 112.

12. Where the holder of a tax title has evaded one holding under a mortgagee and thus prevented a redemption, a bill in equity to redeem the land may be brought under St. 1888, c. 390, § 76, at any time within five years from the tax sale. The remedy, by paying the city treasurer, given by §§ 58, 59 of the same chapter, is cumulative and does not exclude the right to equitable relief. Following *Clark* v. *Lancy*, 178 Mass. 460, on both points. *Ibid.*

St. 1888, c. 390, § 57, giving mortgagee right to redeem from tax sale constitutional, see CONSTITUTIONAL LAW, 3.

Right of redeeming mortgagee to pay taxes not exclusive remedy, see MORTGAGE, 1.

### On Collateral Legacies.

13. St. 1895, c. 307, exempting from the tax on collateral legacies bequests not exceeding $500, does not apply to legacies to which persons became entitled before it took effect. *Howe* v. *Howe*, 546.

14. Collateral legacies of future and contingent interests are taxable under St. 1891, c. 425. The tax is to be paid when the contingency occurs and the determination of the value of the future interest is to be postponed until the happening of the event. It is then to be valued as of the time of the testator's death. *Ibid.*

15. In valuing future and contingent interests for taxation as collateral legacies under St. 1891, c. 425, when the contingency has happened, a preceding life interest to be deducted must be valued as of the time of the death of the testator and is to be determined by the actuaries' combined experience tables and four per cent compound interest, as required by the last sentence of § 13 of the act, without regard to the actual length of life in the particular case. *Howe* v. *Howe*, 546.

16. St. 1891, c. 425, imposing a tax on collateral legacies and successions, provides in § 4 that all taxes imposed thereby shall be payable by executors, administrators or trustees "at the expiration of two years from the date of their giving bond," and in § 18 provides that "The treasurer of the Commonwealth shall within six months after the same shall be due and payable, bring suit in his own name for the recovery of all taxes remaining unpaid." *Held*, that the provision in regard to the treasurer bringing suit is directory merely, and does not limit the right of recovery to two years and six months after the giving of bonds by executors, administrators or trustees. *Whether* the general statute of limitations would be applicable to a suit brought by the treasurer after six years from the time when the tax was due and payable, was not before the court and was not considered. *Ibid.*

17. A testator directed his trustees to pay to his sister quarter yearly during her life such sums as with the rents and income of her own property would give her a net annual income of $10,000, and left remainders which were subject to taxation as collateral legacies under St. 1891, c. 425. The net annual income of the testator's sister from her own property at the time of the testator's death was $1,453.20, leaving $8,546.80 to be paid to her by the executors and trustees. For the purpose of deducting the sister's life interest in valuing the collateral legacies, the Probate Court ruled, that she was to be regarded as entitled to an annuity of $8,546.80 during her life. The treasurer of the Commonwealth objected that the amount that was to be paid to her was not an annuity or life estate that could be appraised by the combined experience tables, as required by § 13 of the act, because it was of uncertain amount and might fluctuate from year to year. *Held*, that for aught that appeared the net income from the sister's own property had remained and would remain substantially the same from year to year and, if that was so, the annuity fairly might be said to be $8,546.80 during her life, or, as the intention of the testator manifestly was that his sister should receive a net income of $10,000 during her life, the annuity might be regarded as one of $10,000 a year, subject to reduction by the amount of the net income if any received from her own property, so that in computing the value of her interest the annuity properly might be reckoned as one of $10,000 a year, and that in any case the treasurer had no ground for complaint. *Ibid.*

*On Corporate Franchise.*

18. A corporation having a capital stock divided into shares cannot relieve itself from liability to the franchise tax imposed by Pub. Sts. c. 13, §§ 38–40, by omitting to do business, nor by failing to file the certificate that

Tax *(continued)*.

its capital stock has been paid in, required by Pub. Sts. c. 106, § 46, before it can do business. *Attorney General* v. *Mass., etc. Gas Co.* 15.

What constitutes corporation "having a capital stock divided into shares," see CORPORATION, 1.

Expenditure by town of money raised by taxation for tuition of child at high school in neighboring town, see CONSTITUTIONAL LAW, 5.

Word "taxes" may include sewer assessment, see CONTRACT, 7.

### TENANTS IN COMMON.

Tenants in common entitled to partition as matter of right, see JOINT TENANTS, 1, 2.

### TENDER.

Tender in redemption from tax sale dispensed with by conduct of defendant, see TAX, 10.

### TRADE–MARK.

A trade-mark does not give the proprietor the right to control the sale by others of articles of his manufacture. It is merely to secure him and the public from deception and fraud as to the origin and source of his goods and of similar goods sold in the market. *Garst* v. *Hall & Lyon Co.* 588.

### TRESPASS.

For restraint of continuing trespass, see EQUITY JURISDICTION, 4.

Where equity will not compel defendant to restore land of plaintiff to its original condition, see *Ibid*.

Duty towards mere licensee, see NEGLIGENCE, 20.

### TRUST.

#### *Powers of Trustee.*

1. A testatrix having one son and four daughters devised all her real estate to her son, in trust, to hold, manage and improve the same for twenty years, to distribute the net income equally among all her children, and at the termination of the twenty years to divide the property equally among her children. The will also contained this clause : "And I hereby further authorize and empower my said trustee at any time before the said period of distribution, if he deems it for the best interest of all concerned so to do, to divide the trust property of whatsoever consisting, or the same or any portion thereof to sell at public or private sale and the proceeds to divide equally among my said children and their respective heirs and assigns, and to terminate this trust." The will, after naming the son as devisee of the residue of the estate in trust, did not mention him again by name as trustee, but gave the powers thereunder to " my trustee," " my said trustee,". "such trustee," or " the trustee under the trust." The

will contained numerous other powers attached to the trust and not personal to the trustee named in the will. The son died nearly ten years before the testatrix, who died without making any change in her will. Trustees under the will, appointed by the Probate Court, asked for instructions as to their power to divide the property before the expiration of the twenty years, alleging that they deemed it for the best interest of all concerned to make the division, the children being all of age and all but one desiring it. *Held*, that the trustees had the power to make immediate distribution of the property, having, under Pub. Sts. c. 141, § 6, the same powers, rights, and duties as if they had been originally appointed. The cases holding, that a power given to the executor of a will cannot be exercised by an administrator *de bonis non* with the will annexed, have no application to this case. *Stanwood* v. *Stanwood*, 223.

*Administration cy pres.*

2. A testatrix left an estate called Seven Oaks to the Sisters of St. Margaret, a Protestant Episcopal charitable and religious society, to be used for the maintenance of a temporary home for poor and invalid women, only so long as these sisters should choose to occupy and use it for these or similar purposes, or on the termination of such use then to any similar religious or charitable association of sisters of the Protestant Episcopal faith in the United States that will use and occupy the estate for the above named charitable purposes, and, if none such be found, then to the Massachusetts General Hospital for the above named or similar charitable purposes. The Sisters of St. Margaret, other associations of sisters and the Massachusetts General Hospital successively declined to accept the estate for the purposes named in the will. Other charitable and religious corporations, not associations of sisters or of the Protestant Episcopal church offered to accept the property and administer the trust under the terms of the will. Seven Oaks was upon the seashore, and the establishment of a seashore home was a prominent feature of the plan of the testatrix. If Seven Oaks could be sold and about a third of the proceeds invested in a house and lot at the seashore, the Sisters of St. Margaret were willing to put one of the sisters in charge of such house and to use the income of the remainder of the proceeds in carrying out the wishes of the testatrix so far as they could with this and such other funds as they could obtain. The Massachusetts General Hospital was willing, in case Seven Oaks was sold, to accept the proceeds for the purpose of applying the income in the maintenance of its Convalescent Home at Waverly, where men as well as women are admitted. Upon a bill filed by the trustees under the will for instructions, it was *held*, that there was a good gift to charity, that it had not failed, and that a sale was necessary, and the following scheme reported by a master was approved by the court, namely, that Seven Oaks be sold and the trustees invest the proceeds and pay the net income therefrom to the Sisters of St. Margaret to be by them devoted to their general charitable work; *provided*, that the trustees may invest not more than a certain sum named, in the purchase of a house and land on or near the seashore, and hold it for the sisters, whenever the

trustees are satisfied, that, with the aid of the income of the remainder of the fund and such other resources as the sisters may have, the sisters are able and willing to establish and maintain there a temporary home for women in accordance with the directions in the will of the testatrix. This scheme was approved by the court on the ground, that, having money to deal with instead of land, the order of preference of beneficiaries established by the will for the land should be followed in dealing with the money. *Amory* v. *Attorney General*, 89.

Construction of agreement to provide for carrying out of trust, see CONTRACT, 11.

When owner of non-negotiable security indorsed in blank not estopped from asserting title against *bona fide* purchaser, see CONVERSION, 2, 3.

As to resulting trust after lapsed legacy, see DEVISE AND LEGACY, 3.

### TRUSTEE PROCESS.

A mortgagee of land sold for taxes may enforce as claimant in a trustee process his equitable lien upon the surplus proceeds of the sale in the hands of the city or town. If the mortgage does not cover the whole of the proceeds, an attaching creditor of the mortgagor, plaintiff in the trustee process, is entitled to the balance in the hands of the trustee after the claim of the mortgagee is satisfied. *Cummins* v. *Christie*, 74.

### VERDICT.

General verdict on two counts, when set aside, see PRACTICE, CIVIL, 13.

### VETERAN.

Holding "an office or employment in the public service of any city or town," see CIVIL SERVICE ACT.

### WAIVER.

By grantor of right to enforce restriction on land, see EASEMENT, 3.

### WAKEFIELD.

Construction of order of board of health of Wakefield adjudging certain deposits on land of plaintiff to be nuisance, see BOARD OF HEALTH, 4.

### WATER SUPPLY AND WATERWORKS.

Jurisdiction of State board of health under St. 1897, c. 510, not exclusive, see BOARD OF HEALTH, 1.

Extent of jurisdiction of town boards of health over nuisances affecting purity of water supply, see BOARD OF HEALTH, 2.

Motive of town board of health in adjudging certain deposits on land to be

nuisance affecting purity of water supply of town immaterial, see BOARD OF HEALTH, 5, 6.

Construction of taking of land for reservoir, see EMINENT DOMAIN, 1.

Whether temporary use of water in pond constitutes taking, see EMINENT DOMAIN, 2.

Whether water rights can be taken by eminent domain without a writing, see ESTOPPEL, 4.

Construction of St. 1895, c. 451, enabling city of Gloucester to supply itself and its inhabitants with water, see GLOUCESTER WATER SUPPLY, 1-3.

## WAY.

### *Notice of defect.*

1. In an action under Pub. Sts. c. 52, § 18, against a city for injuries caused by the caving in of a sidewalk on which the plaintiff was walking, it appeared, that the earth beneath the sidewalk might have been undermined by an escape of water from a water pipe of the city, that, three or four days before, complaint had been made to the water department, that water came from the street into the cellar adjoining the sidewalk where the accident occurred, and that employees of the water department examined the cellar and saw the water coming in through the foundation wall of the building then took up the pavement in front of the sidewalk and did some work there, and the flow of water stopped. *Held,* that there was no evidence that the city had reasonable notice of the defect or might have had such notice by the exercise of proper care and diligence, as the appearance of the ground at the point where the water department stopped work might have given no indication that the earth beneath the sidewalk had been washed out. *Brummett v. Boston,* 26.

### *Undergoing Repairs.*

2. One, who in the daytime enters a street which he knows is not graded or fit for public travel, does so at his peril. The fact that other persons before he entered drove wagons over the street, choosing to take the same risk for the sake of making a short cut, does not help him. *Compton v. Revere,* 413.

3. When the condition of a street is such as in itself to give notice that the way is not open to public travel, it is not necessary to place barriers there to warn the public that it is unsafe to proceed. *Ibid.*

4. When city authorities are repairing or constructing a street, one who drives between wooden horses bearing the sign " No passing through," which have been placed across the way or are temporarily standing lengthwise at the side of the road in such a position as plainly to indicate that it is not open to travel, does so at his own risk. In this case, however, the evidence was conflicting and would justify a finding that the part of the way on which the plaintiff was driving was open to travel. *Butman v. Newton,* 1.

Amount of betterments for widening street assessed upon remaining land immaterial to show value of land taken, see DAMAGES, 1.

Powers of city council of Everett as to laying out and widening streets, see MUNICIPAL CORPORATIONS, 2, 3.

Municipal corporation liable for negligence of agents repairing street, see MUNICIPAL CORPORATIONS, 5, 6.

## WILL.

For cases on construction of wills, see DEVISE AND LEGACY.

Sufficiency of letter constituting agreement to leave property by will, see FRAUDS, STATUTE OF, 1.

Execution of power of appointment, see POWER, 1, 2.

New trustee appointed by court has powers of original trustee, see TRUST, 1.

Construction of devise as gift to charity, see TRUST, 2.

## WITNESS.

*Cross-examination.*

1. On the issue of the soundness of mind of a testatrix who had been a domestic servant, a niece of the testatrix who was a servant in the same house testified as a witness for the contestants to many peculiar actions of the testatrix, and as to her using disrespectful language in the presence of her employer and disobeying his orders. She was asked on cross-examination " Did you ever hear Dr. G. find any fault with your aunt during all the time you were there, and if so, what did he say ?" The question was admitted for the purpose of contradicting the story told by the witness on her direct examination. The witness in answer testified to a number of times when the employer had found fault with the testatrix. *Held,* that the question was admissible. *Hogan* v. *Roche*, 510.

2. When evidence admissible for one purpose is inadmissible for another, upon which it would have a bearing if not excluded by rules of law, it must be assumed that a justice passing upon the facts considers it only upon those issues which it legitimately affects. Thus expressions of opinion as to the sanity of a testator at the time he did certain acts, admitted on cross-examination for the purpose of showing the improbability of the statements made by the same witnesses on their direct examinations, will be assumed to have been taken into account, by the justice who allowed the will, only so far as they tended to contradict premises seeming to lead to a different conclusion, and not as evidence tending in itself to establish sanity. *Ibid.*

3. On the issue of the soundness of mind of a testatrix, a witness for the contestants testified to peculiar actions of the testatrix. It had appeared in evidence that six years before the date of the will, the testatrix made a present of $1,000 to a son of the witness. On cross-examination the witness was asked " Do you think that at that time — did you at that time think that the testatrix had sufficient mental capacity to give that money to your son?" He answered " I suppose she had." Another witness, who had testified to peculiar actions of the testatrix, was asked on

cross-examination about a certain remark made to the witness by the testatrix, and was then asked "Do you think she knew what she was about when she said that?" and answered "I don't know," and then being asked "What is your opinion?" answered "I think she was all right at that time." To the further question "Did you think at that time she knew what she was talking about?" the witness answered "I think she did," and to the question "Do you think so now?" gave an affirmative answer. *Held*, that in spite of the rule that a witness, who is not an expert or a subscribing witness to the will is not allowed to give his opinion as to the soundness of mind of a testator, the questions put in this case afforded the contestants no ground for exception ; that the whole object of the questions was to show how the testatrix appeared to the witnesses at the times in question and thus to show the improbability of the previous statements made by the witnesses, and that for this purpose the cross-examination was legitimate, although the result might have been reached in a less questionable manner. *Hogan* v. *Roche*, 510.

## WORDS.

"Taxes." See *Williams* v. *Monk*, 22, 25.
"Owner." See *Worcester* v. *Boston*, 41, 46.
"Conviction." See *Munkley* v. *Hoyt*, 108, 109.
"Legally." See *Bigelow* v. *Pierce*, 331, 333.

## WRIT OF ENTRY.

What constitutes equitable defence to, under St. 1883, c. 223, § 14, see EQUITY JURISDICTION, 1.
See also REAL ACTION, 1–3.

# STATUTES.

## STATUTES CITED AND EXPOUNDED.

### ENGLISH STATUTES.

| | | |
|---|---|---|
| 31 Hen. VIII. c. 1. | Partition | 203, 205 |
| —————————— § 3. | " | 205 |
| 32 Hen. VIII. c. 32. | " | 203 |
| 3 & 4 Wm. IV. c. 27, § 36. | Statute of Limitations | 203 |
| 45 & 46 Vict. c. 61, § 64. | Bills of Exchange | 508 |

### STATUTES OF THE UNITED STATES.

| | | |
|---|---|---|
| June 7, 1897, c. 4, art. 15. | Fog Signals | 471 |
| July 1, 1898, c. 541. | Bankruptcy | 540 |
| —————————— § 67 f. | " | 460 |
| —————————— § 70. | " | 125 |

### STATUTES OF CONNECTICUT.

| | | |
|---|---|---|
| Gen. Sts. §§ 1591, 2002, 3541, 3607. | Evasion of Fare | 246 |

### STATUTES OF NEW HAMPSHIRE.

| | | |
|---|---|---|
| 1889, c. 5. | Railroad | 68 |
| Pub. Sts. c. 156, § 28. | " | 68 |

### STATUTES OF VIRGINIA.

| | | |
|---|---|---|
| February 27, 1866, c. 18, § 2. | Slave Marriage | 220 |

### PROVINCIAL STATUTES.

| | | |
|---|---|---|
| 1692–93, c. 14. | Estates of Deceased Persons | 205 |
| 1693, c. 8. | Partition | 203 |
| 1748–49, c. 12. | " | 203 |
| 1753–54, c. 18. | " | 203 |
| 1760–1761, c. 13. | Estates of Deceased Persons | 205 |

### STATUTES OF THE COMMONWEALTH.

| | | |
|---|---|---|
| 1783, c. 36, § 4. | Estates of Deceased Persons | 205 |
| —— c. 41. | Partition | 203 |
| 1785, c. 50, § 6. | Tax | 494 |
| —— c. 62, § 2. | Partition | 203 |

| | | |
|---|---|---|
| 1785, c. 70, §§ 6, 7. | Tax | 45 |
| 1788, c. 4. | " | 494 |
| 1817, c. 190, § 24. | Partition | 205 |
| 1823, c. 133. | Tax | 549 |
| 1827, c. 88. | Nuisance | 388 |
| 1834, c. 182, § 5. | Statute of Frauds | 180 |
| 1839, c. 114. | Salem and Danvers Aqueduct | 375 |
| 1842, c. 34. | Tax | 494 |
| 1845, c. 90. | Worcester Aqueduct | 375 |
| 1846, c. 167. | Boston Water Supply | 376 |
| 1848, c. 235. | Tax | 494 |
| 1850, c. 192. | Springfield Aqueduct | 375 |
| —— c. 198. | Worcester Aqueduct | 375 |
| —— c. 273. | Salem and Danvers Water Supply | 375 |
| 1852, c. 210. | Pittsfield Water Supply | 375 |
| 1854, c. 206. | Contracts by County Commissioners | 240 |
| 1856, c. 111. | Gary's Wharf | 565 |
| —— c. 241. | Lebanon Springs Aqueduct | 375 |
| 1857, c. 135. | Jamaica Pond Aqueduct | 375 |
| 1859, c. 171. | Tax | 494 |
| 1862, c. 101. | Bribery | 240 |
| 1865, c. 132. | Lynn Aqueduct | 376 |
| 1866, c. 175. | Newburyport Water Supply | 376 |
| —— c. 294, § 1. | Street Railway | 450 |
| 1867, c. 73. | Haverhill Aqueduct | 375 |
| —— c. 84. | Easthampton Aqueduct | 376 |
| —— c. 272. | Marlborough Aqueduct | 376 |
| —— c. 275. | Statute of Limitations | 565 |
| 1868, c. 182. | Jamaica Pond Aqueduct | 376 |
| 1869, c. 121. | Partition | 205 |
| 1870, c. 337, § 2. | Boston | 60 |
| 1871, c. 218. | Lynn Water Supply | 376 |
| —— c. 307. | Woburn Water Supply | 376 |
| 1872, c. 274. | Bribery | 240 |
| —— c. 282. | " | 240 |
| —— c. 318, § 1. | Mechanic's Lien | 157 |
| —— c. 345. | Springfield Water Supply | 376 |
| 1873, c. 242. | Arlington Lake Water Co. | 376 |
| —— c. 326, § 2. | Newton | 8 |
| —— —— § 24. | " | 7 |
| 1874, c. 191. | Danvers Water Supply | 376 |
| —— c. 266. | Partition | 205 |
| 1875, c. 232. | City and State Contracts | 240 |
| 1876, c. 42. | Sturbridge Aqueduct | 376 |
| 1878, c. 189, § 4. | Tax | 494 |
| 1880, c. 127. | Berkshire Water Co. | 376 |
| —— c. 179. | Amherst Water Co. | 376 |
| —— c. 203. | Gloucester Water Supply | 376 |

| | |
|---|---|
| 1881, c. 167, § 2. | Gloucester Water Supply Co.                 378 |
| —— —— § 3. | "          "          "          373, 377 |
| —— c. 304. | Tax                                              49 |
| 1882, c. 119. | Spencer Water Co.                       375, 376 |
| —— c. 142. | Revere Water Co.                             376 |
| —— c. 175. | Tax                                              49 |
| —— c. 192, § 3. | Northborough Water Supply               377 |
| —— c. 210, § 2. | Newton                                        8 |
| 1883, c. 73. | Mortgage                                     124 |
| —— c. 223, § 10. | Equity Jurisdiction         .               468 |
| —— —— § 14. | "              "                       455 |
| —— c. 226. | Betterment Agreements              150, 152 |
| —— —— § 1. | "                    "                151 |
| 1884, c. 309, § 23. | Waltham                                        8 |
| 1885, c. 178, §§ 2, 3. | Boston                                       322 |
| 1887, c. 270, § 1, cl. 1. | Employers' Liability Act                191 |
| —— c. 348. | Fence                                        317 |
| —— c. 392. | Intoxicating Liquors                    110 |
| 1888, c. 372. | Will                                          30 |
| —— c. 390, § 40. | Tax                                   45, 46, 75 |
| —— —— § 57. | "                                 113, 186 |
| —— —— §§ 57, 76. | "                                       185 |
| —— —— §§ 58, 59, 76. | " ·                                      114 |
| —— —— §§ 60–63. | "                                        51 |
| —— c. 405. | Special Judgments                        541 |
| —— —— §§ 1, 2. | "              "                   540 |
| —— c. 431. | Superintendent of Schools               575 |
| 1889, c. 334, § 7. | Tax                                          494 |
| —— c. 442. | Determination of Incumbrances           325 |
| —— —— § 1. | "              "              "        327 |
| —— c. 454, §§ 1, 5. | Dog                                          581 |
| 1890, c. 127. | Tax                                          491 |
| —— c. 265. | Appointment of Administrator            221 |
| —— c. 428, §§ 3, 5, 6. | Grade Crossing                           521 |
| —— —— §§ 3, 5. | "          "                       523 |
| —— —— §§ 5, 8. | "          "                       522 |
| —— c. 441. | Pollution of Water Supply               388 |
| 1891, c. 354. | Tax Sale                             186, 222 |
| —— c. 370, § 12. | Gas                                          382 |
| —— c. 425. | Collateral Inheritance Tax               552 |
| —— —— §§ 1, 4–6, 18. | "                "                "        548 |
| —— —— §§ 1, 13, 17, 18. | "                "                "        551 |
| —— —— § 13. | "                "                "        550 |
| —— —— § 14. | "                "                "        547 |
| —— —— § 16. | "                "                "        549 |
| 1892, c. 355, §§ 21, 23, 26, 33. | Everett                                      151 |
| —— —— §§ 26, 33. | "                                         152 |
| —— c. 419, § 31. | Boston                                       356 |

| | | |
|---|---|---|
| 1893, c. 200. | Superintendent of Schools | 575 |
| —— c. 271, §§ 1, 2. | Bribery | 240 |
| —— c. 340, § 1. | Quieting Title | 327 |
| 1894, c. 309. | Dog | 581 |
| —— c. 436. | School | 575 |
| —— c. 450, § 1. | Gas and Electric Light Companies | 20· |
| —— c. 498, §§ 6–8. | School | 575 |
| —— c. 522, § 48. | Insurance | 13 |
| —— —— § 60. | " | 266, 435 |
| —— —— § 91. | " | 437 |
| 1895, c. 94. | School | 575 |
| —— c. 212. | " | 575 |
| —— c. 234, § 4. | Vacation of Judgments | 107 |
| —— c. 307, § 1. | Collateral Inheritance Tax | 552 |
| —— c. 451. | Gloucester Water Supply | 384 |
| —— —— § 16. | "      "      " | 380, 381, 382 |
| 1896, c. 397, §§ 5, 7–9. | Registered Pharmacist | 110 |
| —— —— § 9. | "      " | 109 |
| —— c. 415, §§ 2, 3. | Lowell | 499 |
| —— —— § 7. | " | 500 |
| —— c. 445. | Evidence | 395 |
| —— c. 517, § 5. | Civil Service | 411 |
| —— c. 537. | Massachusetts Pipe Line Gas Co. | 18 |
| —— —— §§ 1, 3. | "      "      " | 20 |
| 1897, c. 137, § 2. | County Commissioners | 240 |
| —— c. 197. | Insurance | 13 |
| —— —— § 2. | " | 12, 14 |
| —— c. 402. | Assigned Claims | 365 |
| —— c. 510, § 7. | Pollution of Water Supply | 388 |
| 1898, c. 266. | Corporation | 20 |
| —— c. 434, § 4. | Boston | 322 |
| —— c. 490. | Abuse of Corporate Powers | 241, 322, 500 |
| —— c. 496, § 3. | School | 573 |
| —— c. 533, § 124 | Alteration of Instruments | 508 |
| —— —— § 125 | "      " | 507 |
| —— c. 535. | Declarations of Deceased Persons | 246, 395 |
| —— c. 562, § 19. | Registration of Title | 327 |
| —— c. 578, § 11. | Street Railway | 450 |
| 1900, c. 119. | County Commissioners | 240 |
| —— c. 345. | Guardian | 133 |
| —— —— §§ 1, 5 | " | 134 |
| —— c. 426. | Fitchburg Railroad Lease | 66 |
| —— —— § 3. | "      "      " | 68 |
| 1901, c. 44. | School | 575 |

### Revised Statutes.

| | | |
|---|---|---|
| c. 7, § 7. | Tax | 48 |
| —— §§ 7, 29, 31. | " | 46 |

c. 8, §§ 1, 7, 11, 18, 24, 25, 32.    Tax                              46
—— §§ 28, 29.                         "                               45
c. 74, § 3.                           Statute of Frauds               180
c. 79, § 9.                           Guardian                        134
c. 103, § 1.                          Partition                       203
—— § 42.                              "                               205

GENERAL STATUTES.

c. 12, §§ 18–20.                      Tax                             494
—— § 33.                              "                               46
c. 17, § 23.                          County Commissioners            240
c. 105, § 4.                          Statute of Frauds               180
c. 109, § 8.                          Guardian                        134
c. 136, § 1.                          Partition                       203

PUBLIC STATUTES.

c. 11, § 14.                          Tax                           50, 76
—— §§ 14–16.                          "                               49
—— §§ 38–42.                          "                              490
—— §§ 69–72.                          "                              491
c. 12, §§ 21–23.                      "                              494
—— § 35.                              "                               46
c. 13, §§ 38–40.                      "                               18
—— § 39.                              "                               21
c. 22, § 22.                          County Commissioners            240
c. 27, § 111.                         Town Treasurer                  240
—— § 128.                             Abuse of Corporate Powers         7
—— § 129.                             Fines and Forfeitures           241
c. 44, § 3.                           School                          575
—— § 44.                              Superintendent of Schools       575
c. 49, §§ 68, 75.                     Way                               7
c. 52, §§ 1, 3, 13                    "                                 7
—— § 3.                               "                              6, 8
—— § 18.                              "                                26
c. 73, § 6.                           Carrier                         330
c. 77, § 3.                           Interest of Money                88
—— § 6.                               Bond                            351
c. 78, § 1, cl. 4.                    Statute of Frauds               431
—— § 2.                               "        "                      431
—— § 4.                               "        "                      180
—— § 5.                               "        "                      407
c. 80, §§ 20, 26.                     Nuisance                        388
—— §§ 20–27, 28.                      "                               387
c. 106, § 24.                         Corporation                      61
—— § 46.                              "                          18, 19, 20
—— § 60.                              "                                20
c. 112, § 214.                        Railroad                        524

| | | |
|---|---|---|
| c. 113, §§ 7, 27, 63. | Street Railway | 450 |
| c. 115. | Beneficiary Association | 61 |
| c. 130, § 1, cl. 3. | Appointment of Administrator | 221 |
| c. 136, § 9. | Statute of Limitations | 548 |
| —— § 10. | " " | 336 |
| —— §§ 22, 23. | Payment of Legacies | 333 |
| c. 139, § 7. | Guardian | 134 |
| c. 141, § 6. | Powers of Trustee | 227 |
| c. 142, § 1. | Probate Court Jurisdiction | 455 |
| —— § 4. | " " " | 451 |
| —— § 22. | Executor curing Irregularity | 456 |
| c. 153, § 5. | Charging Jury | 580 |
| c. 159, § 51. | Auditor | 155 |
| c. 161, § 66. | Attachment | 537 |
| —— §§ 126, 128. | " | 540 |
| —— § 128. | " | 541 |
| c. 165, § 1. | Actions which survive | 585 |
| c. 167, § 12, cl. 2. | Demurrers | 172 |
| —— §§ 49 et seq. | Interrogatories | 505 |
| —— § 53. | " | 501 |
| c. 171. | Judgment and Execution | 540, 541 |
| —— § 23. | Special Judgments | 537 |
| c. 172, § 30. | Levy by Sale | ·462 |
| —— § 46. | Notice | 461 |
| c. 173, § 14. | Writ of Entry | 164 |
| —— § 18. | " " | 163 |
| c. 176, § 1. | Quieting Title | 327 |
| c. 178, § 1. | Partition | 203, 204 |
| —— § 43. | " | 204, 205 |
| —— §§ 43, 45–47. | " | 206 |
| c. 184, § 13. | Replevin | 41 |
| c. 188. | Arbitration | 265 |
| —— § 1. | " | 266 |
| —— § 3. | " | 267 |
| —— § 12. | " | 262 |
| c. 191, §§ 1, 2. | Mechanic's Lien | 157 |
| —— § 6. | " " | 360 |
| —— §§ 6, 21. | " " | 215 |
| —— § 19. | " " | 601 |
| —— § 42. | " " | 422, 423 |
| c. 192, § 24. | Lien | 587 |
| c. 196, § 11. | Statute of Limitations | 565 |
| c. 197, § 1. | " " | 548 |
| c. 205, §§ 11–13. | Bribery | 240 |
| c. 207, § 29. | Rogues and Vagabonds | 533 |